**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

TAMMY J. BOYD,
On behalf of herself and on behalf of
all others similarly situated,

            Plaintiff,

   v.

MERITER HEALTH SERVICES
EMPLOYEE RETIREMENT PLAN and
MERITER HEALTH SERVICES, INC.,

            Defendants.

Case No. 10-cv-426

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 3

    A.   Plaintiff's Allegations, As Set Forth In the Amended Complaint ......................... 3

    B.   Conflicts and Individualized Issues Related to Class Certification ...................... 5

    C.   Plaintiff's Counsel Has Taken Irreconcilable Positions In Court Papers On
         Whether Plaintiff Boyd Can Represent the Entire Class Or Only 55
         Participants.................................................................................................... 9

    D.   Adequacy Facts Related to Plaintiff Boyd's 2004 Chapter 13 Bankruptcy......... 12

III. ARGUMENT .................................................................................................... 13

    A.   Plaintiff and Her Counsel Fail To Satisfy The Adequacy Requirements Of
         Rule 23(a) ................................................................................................... 15

         1.   Conflicts Among and Within the Respective Subclasses Render
              This Action Inappropriate For Class Certification ................................... 15

         2.   Proposed Class Counsel Is Not An Adequate Class Representative
              Under Rule 23(a)(4). ......................................................................... 17

         3.   Ms. Boyd Is Not Adequate Under Rule 23(a)(4) .................................... 20

    B.   Plaintiff Has Not Met Her Burden of Demonstrating That This Case is
         Suitable For Class Treatment Under Rule 23(b) ................................................ 28

         1.   Certification Under Rule 23(b)(1) ......................................................... 29

              a.   Separate Adjudications Would Not Prejudice Defendants
                   Within The Meaning Of Rule 23(b)(1)(A). ................................. 30

              b.   Separate Adjudications Would Not Prejudice Absent Class
                   Members Within The Meaning Of Rule 23(b)(1)(B). ................. 31

         2.   Certification Under Rule 23(b)(2) ......................................................... 31

         3.   Certification Under Rule 23(b)(3) ......................................................... 32

         4.   To The Extent Common Questions Exist, They Do Not
              Predominate Over Individualized Questions and, Thus, Class
              Certification Should Be Denied. ........................................................... 33

IV.  CONCLUSION ................................................................................................ 40

## TABLE OF AUTHORITIES

Page

CASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................................13, 15, 32, 33

*Anderson v. Acme Markets, Inc.*,
    287 B.R. 624 (E.D. Pa. 2002) ..................................................................................24

*Ballan v. Upjohn Co.*,
    159 F.R.D. 473 (W.D. Mich. 1994) ..........................................................................20

*Becker v. Verizon North, Inc.*,
    No. 06-2596, 2007 WL 1224039 (7th Cir. Apr. 25, 2007)..................................24, 25

*Bickel v. Sheriff of Whitley County*,
    No. 08-102, 2010 WL 883654 (N.D. Ind. Mar. 5, 2010).........................................30

*Biesek v. Soo Line R.R. Co.*,
    440 F.3d 410 (7th Cir 2006) ....................................................................................24

*Brown v. Yellow Transportation, Inc.*,
    No. 08-C-5908, 2011 WL 1838741 (N.D. Ill. May 11, 2011).................................17

*Cable v. Ivy Tech State Coll.*,
    200 F.3d 467 (7th Cir. 1999) ...............................................................................22, 24

*Calabrese v. McHugh*,
    170 F. Supp. 2d 243 (D. Conn. 2001).......................................................................24

*Cannon-Stokes v. Potter*,
    453 F.3d 446 (7th Cir. 2006) ...............................................................................22, 25

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) ...............................................................................21, 28

*Coleman v. GMAC*,
    296 F.3d 443 (6th Cir. 2002) ....................................................................................33

*Culver v. City of Milwaukee*,
    277 F.3d 908 (7th Cir. 2002) ....................................................................................18

*Cunningham v. Sears, Roebuck & Co.*,
    854 F.2d 914 (6th Cir. 1988) ....................................................................................19

*Davis v. Caseyville*,
    No. 05-455, 2007 WL 551584 (S.D. Ill. Feb. 20, 2007)..........................................26

**TABLE OF AUTHORITIES**

Page

*Davis v. Mitsubishi Motors of N. Am.*,
 2011 U.S. Dist. LEXIS 100933 (C.D. Ill. Sept. 8, 2011)...................................22, 26

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
 431 U.S. 395 (1977)...........................................................................................15

*EEOC v. J.D. Streett & Co.*,
 No. 05-4186, 2006 WL 3076667 (S.D. Ill. Oct. 30, 2006)....................................23

*Frahm v. Equitable Life Assurance Soc'y of U.S.*,
 137 F.3d 955 (7th Cir. 1998) ..............................................................................33

*General Tel. Co. of Southwest v. Falcon*,
 457 U.S. 147 (1982)...........................................................................................13

*Gilpin v. American Fed'n of State, County, and Municipal Employees, AFL-CIO*,
 875 F.2d 1310 (7th Cir. 1989) ............................................................................16

*Gomez v. St. Vincent Health, Inc.*,
 No. 10-2379, 2011 WL 3559924 (7th Cir. Aug. 15, 2011) ............................15, 20

*Grimes v. Pitney Bowes Inc.*,
 100 F.R.D. 265 (N.D. Ga. 1983)..........................................................................20

*Hamilton v. State Farm Fire & Casualty Co.*,
 270 F.3d 778 (9th Cir. 2001) ..............................................................................22

*Harriston v. Chicago Tribune Co.*,
 992 F.2d 697 (7th Cir. 1993) ..............................................................................23

*Heartland Direct, Inc. v. Chevron U.S.A., Inc.*,
 No. 06-C-1029, 2006 WL 2524139 (N.D. Ill. Aug. 30, 2006) ..............................24

*In re Am. Med. Sys., Inc.*,
 75 F.3d 1069 (6th Cir. 1996) ........................................................................13, 15

*In re Bendectin Prods. Liab. Litig.*,
 749 F.2d 300 (6th Cir. 1984) ..............................................................................17

*In re Brooks*,
 No. 04-13685, 2010 Bankr. LEXIS 1473 (Bankr. E.D. Va. Apr. 27, 2010)...........24

*In re Waldron*,
 536 F.3d 1239 (11th Cir. 2008) ..........................................................................22

*In re Wetzel*,
 381 B.R. 247 (Bank. E.D. Wis. 2008) ..................................................................22

## TABLE OF AUTHORITIES

**Page**

*In re Willet*,
    544 F.3d 787 (7th Cir. 2008) ................................................................22

*J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*,
    628 F.2d 994 (7th Cir. 1980) ................................................................21

*Langbecker v. Electronic Data Systems Corp.*,
    476 F.3d 299 (5th Cir. 2007) ................................................16, 18, 29

*Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*,
    221 F.3d 1235 (11th Cir. 2000) ............................................................16

*McIntyre v. Household Bank*,
    No. 02-1537, 2004 U.S. Dist. LEXIS 25629 (N.D. Ill. Dec. 21, 2004) ..................................38

*Meisinger v. The Prudential Insurance Co. of Am.*,
    No. 2:10-cv-05885, 2011 WL 2036508 (D.N.J. May 23, 2011) ..............................26

*N.N. ex rel. S.S. v. Madison Metropolitan School District*,
    No. 08-581, 2009 WL 3126383 (W.D. Wis. Sept. 24, 2009) ..................................18

*Ned-Sthran v. Methodist Hospital*,
    No. 08-0072, 2008 WL 5420601 (N.D. Tex. Nov. 25, 2008) ..................................33

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................25

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................17, 31

*Oshana v. Coca-Cola Co.*,
    225 F.R.D. 575 (N.D. Ill. 2005) ................................................................31

*Piazza v. EBSCO Industries, Inc.*,
    273 F.3d 1341 (11th Cir. 2001) ............................................................16

*Randall v. Rolls-Royce Corp.*,
    637 F.3d 818 (7th Cir. 2011) ................................................................20

*Retired Chicago Police Ass'n v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ................................................15, 16, 17, 36

*Robinson v. Tyson Foods, Inc.*,
    595 F.3d 1269 (11th Cir. 2010) ............................................................22, 27

*Rozema v. Marshfield Clinic*,
    174 F.R.D. 425 (W.D. Wis. 1997) ................................................30, 31

## TABLE OF AUTHORITIES

**Page**

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
  No. 08-127, 2010 WL 5464196 (W.D. Wis. Dec. 29, 2010) ................................................ 5, 6

*Secretary of Labor v. Fitzsimmons*,
  805 F.2d 682 (7th Cir. 1986) ........................................................................................ 16

*Spano v. The Boeing Co.*,
  633 F.3d 574 (7th Cir. 2011) ..................................................................................... passim

*Thompson v. S.C. Johnson & Sons, Inc.*,
  2011 WL 2463550 ....................................................................................................... passim

*Thompson v. S.C. Johnson & Sons, Inc.*,
  No. 07-1047, 2010 WL 4723410 (E.D. Wis. Nov. 18, 2010),
  *rev'd in part by* -- F. 3d --, 2011 WL 2463550 (7th Cir. June 22, 2011) ....................... passim

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) ................................................................................. 36, 37, 38

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
  309 F.3d 978 (7th Cir. 2002) ........................................................................................ 15

*Wachtel v. Guardian Life Ins. Co.*,
  453 F.3d 179 (3d Cir. 2006) ..................................................................................... 1, 15

*Wal-Mart v. Dukes*,
  -- U.S. --, 131 S. Ct. 2541 (2011) .............................................................................. passim

*Walsh v. Principal Fin. Group, Inc.*,
  266 F.R.D. 232 (S.D. Iowa 2010) ................................................................................. 32

*White v. Employee Ret. Plan of Amoco Corp.*,
  No. 96-C-4298, 2001 U.S. Dist. LEXIS 16380 (N.D. Ill. Oct. 9, 2001) ................................ 19

*Williams v. Balcor Pension Investors*,
  150 F.R.D. 109 (N.D. Ill. 1993) .................................................................................... 20

*Williams v. Hainje*,
  375 F. App'x 625 (7th Cir. 2010) ................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**STATUTES**

11 U.S.C. § 521(a)(1)(B)(i) .................................................................................22

11 U.S.C. § 522(a)(1) ...........................................................................................27

11 U.S.C. § 522(l) .................................................................................................27

11 U.S.C. § 541(a)(1) ...........................................................................................22

11 U.S.C. § 544(d) ...............................................................................................24

11 U.S.C. 1303 .....................................................................................................24

11 U.S.C. 1306 .....................................................................................................22

29 U.S.C. § 1024(b)(1) ...........................................................................................4

29 U.S.C. § 1054(b)(5)(ii) .......................................................................................3

29 U.S.C. § 1054(b), (g), and (h) ............................................................................3

29 U.S.C. § 1104(a)(1)(A), (a)(1)(B) and (a)(1)(D) ...............................................4

**REGULATIONS**

26 C.F.R. § 1.411(d)-4, Q&A-1(c)(1) ...............................................................8, 34

**RULES**

Fed. R. Bankr. P. 6009 .........................................................................................24

Fed. R. Civ. P. Rule 17(a) ....................................................................................23

Fed. R. Civ. P. 23(a)(4) ................................................................................. passim

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................17

Fed. R. Civ. P. 23(g)(1)(B) ..................................................................................20

Fed. R. Civ. P. 23 .......................................................................................... passim

Fed. R. Civ. P. 23(a) .................................................................................3, 14, 15

Fed. R. Civ. P. 23(a)(2) ........................................................................................32

Fed. R. Civ. P. 23(b) ..................................................................................... passim

## TABLE OF AUTHORITIES

**Page**

Fed. R. Civ. P. 23(b)(1)................................................................................................29, 31

Fed. R. Civ. P. 2(b)(1)(A).............................................................................................29, 30

Fed. R. Civ. P. 23(b)(1)(B) ...............................................................................................31

Fed. R. Civ. P. 23(b)(2)................................................................................................31, 32

Fed. R. Civ. P. 23(b)(3)......................................................................................................32

## OTHER AUTHORITIES

5 Moore's Fed. Practice § 23.41[3][a]................................................................................30

18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ......................................25

Rev. Rul. 92-66, issued August 20, 1992 ......................................................................9, 34

Section 541 of the Bankruptcy Code ............................................................................21, 22

Section 1306(a)(1) of the Bankruptcy Code .......................................................................22

Defendants Meriter Health Services Employee Retirement Plan ("the Plan") and Meriter Health Services, Inc. ("Meriter") (collectively, "Defendants"), by and through their attorneys, respectfully submit this Response In Opposition to Plaintiff's Motion For Class Certification And Appointment of Class Counsel ("Plaintiff's Motion").

## I.   **<u>INTRODUCTION</u>**

The Amended Complaint asserts a variety of ERISA claims, including "cash balance" and anti-cutback claims.  Considered separately, any one of these claims is complex and, if prosecuted on a class basis, has the potential for generating class conflicts, thereby rendering even a single claim unsuitable for class treatment.  Because Plaintiff's claims are alleged in combination, the actual conflicts (as demonstrated below) are even more pronounced.  In addition, the claims asserted are alleged to be interrelated and contingent upon moving target proofs that, depending on how the evidence comes out, places different class members in different, conflicting positions.  (*See* Section I-A *infra* for a summary of the claims being asserted).

Because of these conflicts, under the controlling authorities, this case is not suitable for class treatment.  *Wal-Mart v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2550 (2011); *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011); *Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 188-89 (3d Cir. 2006).

On the day she moved for class certification (August 11, 2001), Plaintiff identified ten new parties (from whom Defendants have not yet obtained depositions and other discovery) and eleven subclasses.  Based on the Court's Order of September 2, this brief addresses Plaintiff's suitability as a class representative and the conflicts inherent in the eleven subclasses Plaintiff proposes.  Defendants also reassert that their ability (without depositions) sufficiently to oppose class certification in this posture is prejudiced.  The overlap between whether a given individual

is suitable to represent a subclass, and whether the nature of the claims being asserted by these subclasses can be properly dealt with in a class action are nearly impossible to separate.

As things currently stand, Defendants are opposing a class of approximately 4490 individuals even though the only named plaintiff, Ms. Boyd, now only seeks to represent 55 of those people.  To the extent that further analysis and discovery adds to Defendants' arguments, Defendants will supplement in the October 12, 2011 sur-reply provided for in the Court's September 2, 2011 Order.[1]

A class can be certified only after a rigorous analysis of the elements of Plaintiff's claims, how the claims will be proven and tried, and whether the requirements of Rule 23 have been satisfied.  Plaintiff at all times bears the burden of offering *evidence* and *proving* that all of the requirements of Rule 23 are met.  As set forth below, however, Plaintiff's Motion is unsupported.  Plaintiff offers no evidence why these eleven subclasses should be certified, and no evidence that the eleven identified individuals can adequately represent them.

---

[1] Plaintiff's Reply Brief in Support of her Motion to Add New Plaintiffs argued that Judge Crocker told Defendants to file a motion that would somehow force her to identify new plaintiffs even though the deadline to amend had already expired, and that Defendants failure to file such a motion excuses her violation of the Court's scheduling order.  (Dkt. 98).  This is not an accurate description of what Judge Crocker ordered.

First, Judge Crocker merely declined to address Defendants' request during oral argument that Plaintiff identify any proposed new plaintiffs as soon as possible because there was no pending motion on the issue. (Dkt. 53).  Second, it would have been impossible for Defendants to file such a motion before Plaintiff identified the proposed new plaintiffs in a motion seeking to show "good cause" that attached a proposed amended complaint.  Plaintiff had not identified who the new plaintiffs were.  She did not definitively say if she was adding new plaintiffs.  She was told that she would have to show "good cause" to add new plaintiffs by Judge Crocker because the deadline to amend expired, and Defendants were entitled to rely on that standard governing whether leave to amend to add these new plaintiffs would be granted.  Under Plaintiff's argument, Defendants should have filed a motion that argued that Plaintiff needed to comply with her obligations under the scheduling order before Plaintiff violated it, and when Defendants did not definitively know whether Plaintiff would seek to add new parties, who she would try to add, and the grounds under Rules 15 and 16 she would offer for trying to add them after the deadline expired.

To the contrary, inherent conflicts and individualized issues within and between the proposed subclasses preclude these claims from being certified as a class action under Rule 23(a). The varying interest crediting rates that would benefit one class member to the detriment of another, the requirement that each class member show they had a "reasonable expectation" that certain benefits were an ongoing feature of the plan, and the varying conflicts that arise from Plaintiff's alternative type pleading as to whether and when the Plan was effectively amended all militate against certification.

In addition, both Boyd and proposed class counsel are inadequate under Rule 23 for additional reasons. Boyd cannot represent any class (whether 55 or 5000 people) because she is subject to defenses unique to her. She failed to disclose the claims she asserts here, and the entirety of her interest in her ERISA Plan benefits, during her bankruptcy proceedings from 2004 through 2010. Also, class counsel's inaccurate representations in pleadings filed with this Court preclude them from representing the class.

Lastly, while Plaintiff's Motion does not offer evidence to show how the requirements of Rule 23(b)(1), (b)(2), and (b)(3) are met, she seeks to certify a class under each of these subsections. As explained below, many of the same conflicts and individualized issues referenced above also foreclose certification under Rule 23(b)(1), (b)(2), and (b)(3). Plaintiff has not carried her burden that this class (or any of its subclasses) should be certified.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Allegations, As Set Forth In the Amended Complaint.

While the Amended Complaint does not contain "Counts" delineating Ms. Boyd's claims, she alleges various violations of ERISA throughout it, including Sections 204(b), (g), and (h), 29 U.S.C. §§ 1054(b), (g), and (h). Boyd also alleges that Defendants violated the anti-wear away provisions of the Pension Protection Act ("PPA") 29 U.S.C. § 1054(b)(5)(ii), the Summary

Plan Description ("SPD") requirements of ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1), and breach of fiduciary duties under ERISA § 404(a)(1)(A), (a)(1)(B) and (a)(1)(D), 29 U.S.C. § 1104(a)(1)(A), (a)(1)(B) and (a)(1)(D).  Plaintiff alleges that Defendants:

- miscalculated and/or underpaid participants' pension benefits throughout the class period by failing to properly determine employees' accrued benefits for benefits from October 1987 to January 2003;

- failed to properly pay lump sums or properly determine accrued benefits during that same period;

- failed to properly pay benefits after January 1, 2003, or the date of the adoption of the plan conversion amendment, in an amount not less than the properly determined accrued benefit;

- misstated the Plan's true "Indexing Rate" from the period of October 1987 through at least January 2003;

- misrepresented the Plan to employees from the period of October 1987 through at least January 2003 as being a "cash balance" account-based plan;

- failed to amend the Plan in accordance with ERISA requirements or in accordance with the terms of the indexed annuity career average pay plan to convert it to a cash balance plan; and

- failed to properly implement the amendment to the Plan in 2003 by issuing allegedly deceptive or non-compliant participant communications.

(Dkt. 39,  ¶¶ 38-43, 44-53, 54-69, 70-77, 78, 81-89, 101-102, 106-115, 126.)

**B.**   **Conflicts and Individualized Issues Related to Class Certification.**

Plaintiff proposes eleven subclasses, represented by the same counsel, compromised of approximately 4490 individuals, some of whom took their benefit from the Plan more than 23 years ago, (Dkt. 83, pp. 5-14; Dkt. 98, pp. 5-6), and others who still actively participate in the Plan.

**Index/Projection Interest Crediting Rate Conflicts.**  A central theory of liability being asserted here, regardless of the alternative dates being alleged as to when the Plan was amended, is that the Plan did not properly apply indexing rates (projection crediting rates).  While Plaintiff has yet to specify what interest crediting rate should have been used, for Plan driven and economic reasons, the proposed 11 subclasses, which span more than 23 years, will benefit from (and unquestionably want to advocate for) different methods of calculating future interest credits under the controlling Plan documents.  Class counsel would then be in the position of having to argue for interest rate positions that benefit some subclasses and hurt others.  This is shown by two cases in which the same attorneys representing Plaintiff here represented classes in those cases.  *See Ruppert v. Alliant Energy Cash Balance Pension Plan*, No. 08-127, 2010 WL 5464196 (W.D. Wis. Dec. 29, 2010) and *Thompson v. S.C. Johnson & Sons, Inc.*, No. 07-1047, 2010 WL 4723410 (E.D. Wis. Nov. 18, 2010), *rev'd in part by* -- F. 3d --, 2011 WL 2463550 (7th Cir. June 22, 2011).[2]

In *Ruppert*, the Court had to decide which variable interest rate would be applied for calculating the future value of the class members' accrued benefits.  The Court ultimately decided to apply a fixed rate of 8.2%, which was a factor "biased" toward the rate advocated by Plaintiffs' expert, because "it reasonably reflect[ed] the unusual wealth preservation feature of

---

[2] The classes certified in *Ruppert* and *S.C. Johnson* were much shorter in duration than the 23 years at issue here and had a much more uniform, economic and interest rate environment.

the plan, which provided every participant a rate of 75% of the actual rate of earnings of the fund's assets but never less than 4% of the participant's account balance." *Ruppert*, 2010 WL 5464196, at *2.  In *S.C. Johnson*, in contrast, the Court determined that the future interest credits for lump-sum distributees should be calculated using a five-year rolling average of actual interest credits.  *S.C. Johnson*, 2010 WL 4723410, at *2.[3]

The Court should not decide the appropriate projection rate at class certification. However, applying the varying interest crediting rates adopted by courts in this district to claims by the proposed class representatives here shows conflicts between and within the proposed subclasses.  For example, Madge English, the proposed representative of subclass B, took her lump sum in February, 2000.  (Ex. A to the Sturgeon Decl.).   Given Plaintiff's allegations, Ms. English would achieve a greater recovery if a five year rolling average was applied to her lump sum benefit in comparison with a fixed 8.2% rate.  (Sturgeon Decl. at ¶ 2.)  Another putative class member in the same subclass, I.D. 1189,[4] who commenced her benefit in 1994, would prefer that the fixed 8.2% rate be applied, because that would yield her a higher recovery. (Sturgeon Decl. at ¶ 3.)  Similarly, Ms. Boyd, the proposed representative of subclass E2, and Stephen Hansen, the proposed class representative for subclass E1, would prefer that a fixed

---

[3] The Seventh Circuit remanded the district court's decision so that issues relating to any deference showed to the plan administrator's preferred rate could be properly reconsidered, but did not reject the Court's application of a true five-year average of crediting rates to determine the value of underpayments made to certain plaintiff subclasses.  *See Thompson v. S.C. Johnson & Sons, Inc.*, 2011 WL 2463550, at *9, n. 17 ("This is not to say that we perceive any problem with the five-year average methodology the district court adopted . . . Although we do not decide the question, we note that the Treasury 'safe harbor' regulations and several precedents support the use of such an average.").

[4]  Pursuant to Plaintiff's instructions, putative class members' names were redacted and replaced with unique identification numbers prior the production of data to Plaintiff.  "I.D. __" refers to those unique identification numbers.

8.2% rate be applied because that would result in a higher recovery for them than the five-year average that would apply to them under *S.C. Johnson*. (Sturgeon Decl. at ¶ 4.).

There are additional conflicts. Phyllis Johnson, the proposed class representative for sublcass A, was over the age of 65 when she took her benefit. (Ex. B to the Sturgeon Decl.). Accordingly, she is indifferent as to what interest crediting rate is applied as it will not affect her recovery. However, two putative class members in subclass A, I.D. 3091 and I.D. 4355, share a similar conflict to the one described above. 3091 would prefer that a five-year rolling average be applied, and 4355 would achieve a greater recovery if a fixed 8.2% approach was adopted. (Sturgeon Decl. at ¶ 6.). Thus, Ms. Johnson would be in the impossible situation of picking between the divergent interests of two class members she is tasked with representing when she has no stake in the outcome.

**Repeated Plan Amendment and Anti-Cutback Conflicts.** Plaintiff's alternative allegations as to when the Plan was amended compounds the conflicts. Boyd's claim is a prime example. Starting in 2003, the Plan began to project a participant's 12/31/2002 accrued benefit to normal retirement date using a 4% rate. (Ex. C to the Sturgeon Decl.). Boyd benefitted by that plan amendment as did many, but not all, other class members. As a result, if the court finds that the Plan's administration prior to 2003 was lawful, Boyd (and many other putative class members) are actually made better off if the Plan changes took effect in 2003, something that the Amended Complaint and Plaintiff's Motion affirmatively allege did not occur. (Sturgeon Decl. at ¶ 10; Dkt. 83 at p. 2). Putative class member I.D. 2547, who appears to be in the same subclass Ms. Boyd seeks to represent, and putative class member I.D. 4117, who appears to be in subclass F, would prefer the opposite result, if this Court finds that their benefits were calculated correctly up through January 1, 2003. (Sturgeon Decl. at ¶ 11.). Again, various putative class

members within and between subclasses have conflicting interests in advocating if and when the Plan was properly amended.

Plaintiff also asserts an anti-cutback claim based on the so-called repeated plan amendment rule, 26 C.F.R. § 1.411(d)-4, Q&A-1(c)(1), entitling participants to certain benefits. In her First Amended Class Action Complaint, Plaintiff alleges that a series of purported amendments were made to the Plan between 1988 and 2002, which Plaintiff says set the Plan's interest crediting rate annually to 75% of the prior year's investment returns on the Plan's assets, subject to a 4% minimum. (Dkt. 39, ¶ 66-67). Through these so-called Plan amendments, Plan participants allegedly developed a protected right to continued indexing based on a Plan returns-based interest crediting rate. (Dkt. 39, ¶ 109).

At the outset, any analysis of whether a "pattern" of amendments exists depends on the year in which someone commenced, and ceased, their participation in the Plan. For example, putative class members who received lump sums in 1988 cannot demonstrate a pattern of amendments, because the 1988 rate was not established until 1989 – after they ceased participating in the Plan. (Ex. E to the Sturgeon Decl.). Likewise, putative class members who received lump sums in 1989 would only have one year of alleged "amendments" to point to, and there was no alleged amendment in 1990 (even under Plaintiff's allegations), because the Plan's 4% rate applied that year. (Dkt. 39, ¶ 66). And participants who joined the plan in 2003, for example, would have no series of amendments that ever applied when they participated in the Plan.[5] Of course, these issues bear on the merits (or lack thereof) of Plaintiff's claims, but they also bear on class certification, because different evidence and arguments apply to different class

---

[5] Plaintiff does not allege any annual amendments to the indexing/interest rate starting in 2003, nor has she offered any evidence of such amendments.

members depending on the specific years they participated in the Plan, and what the alleged "pattern" of amendments looked like in those specific years.

Moreover, interpreting the "pattern" regulation, the I.R.S. explains that "plan amendments that make benefits available for a limited period of time do not automatically result in the elimination of a participant's valuable right once that period of time has ended."  Rev. Rul. 92-66, issued August 20, 1992.  Rather, "the regulations preclude a pattern of plan amendments that would make benefits available only for a limited period of time if the plan amendments give rise to a *reasonable expectation* that the benefit is an ongoing feature of the plan, and therefore a valuable right."  *Id.*

Thus, Plaintiff must show that each participant had an actual and reasonable expectation that the continued indexing based on the Plan's returns-based interest crediting rate was an ongoing feature of the Plan.  This necessarily involves an individualized inquiry of each putative class member.  Indeed, Boyd's testimony shows that she had no expectation – reasonable or otherwise – regarding the indexing rate notwithstanding the purported amendments.  She worked for Meriter from July 1985 to April 2006 and received her lump sum in June 2006.  (Ex. D to Sturgeon Decl.).  She testified, however, that through 2006 she did *not* have an expectation that the interest crediting rate was an ongoing feature of the Plan.  (Excerpts of the Deposition of T. Boyd attached as Ex. E to the Sturgeon Decl., at 163:23-167-7.).

**C.   Plaintiff's Counsel Has Taken Irreconcilable Positions In Court Papers On Whether Plaintiff Boyd Can Represent the Entire Class Or Only 55 Participants.**

According to the Motion for Class Certification, Plaintiff's counsel has devoted "the past 12 years [] almost exclusively to the representation of current and former participants in ERISA-governed pension plans."  However, the complexity of the issues to be addressed on class

certification is complicated based on the irreconcilable pleadings filed by counsel as to Plaintiff's personal adequacy to represent a class.

Boyd currently is the only named plaintiff.  Plaintiff's July 30, 2010 Complaint (Dkt. 1) defined the proposed class as "All persons who accrued a vested benefit under the Meriter Health Services Employee Retirement Plan between October 1, 1987 and December 31, 2002, and the beneficiaries and estates of such persons."  (*Id.* at ¶ 23).  The Complaint alleged that Boyd could adequately represent the entire class because her interests "are *identical* to those of the proposed Class."  (*Id.* at ¶ 27) (emphasis added).  Plaintiff's April 7, 2011 Amended Class Action Complaint (Dkt. 39) did not add any new parties nor did she identify subclasses but continued to assert a class period dating back to 1987.  (*Id.* at ¶ 25) ("All persons who accrued a vested benefit under the Meriter Health Services Employee Retirement Plan since October 1, 1987, and the beneficiaries and estates of such persons.").  As to Boyd's adequacy, Plaintiff, through her counsel, again alleged that "Plaintiff is an adequate representative of the proposed Class, and therefore satisfies the requirements of Fed. R. Civ. P. 23(a)(4).  Plaintiff's interests are *identical* to those of the proposed Class.  Defendants have no unique defenses against Plaintiff that would interfere with her representation of the Class.").  (*Id.* at ¶ 29) (emphasis added).

However, Plaintiff's counsel took a contrary position on Boyd's adequacy in a letter written on February 11, 2011 – two months before the Amended Class Action Complaint was filed on April 7.  In a letter soliciting a former Plan participant (Brickner) to join this case, Plaintiff's counsel wrote that Boyd could *not* adequately represent most individuals in the twenty-three year proposed class because she "personally lacks a direct interest in disputing the defense's statute of limitations argument."  (Ex. F to the Sturgeon Decl.).  (*See Thompson v. Retirement Plan for Employees of S.C. Johnson & Sons, Inc*., -- F.3d -- , 2011 WL 2463550 (7th

10

Cir. June 22, 2011) (claims of cash balance plaintiffs accrue, at the latest, upon distribution of

benefits; claims accruing more than 6 years earlier are time-barred)).  Unlike all members of the

proposed class who had distributions of benefits before July 30, 2004 (more than 6 years before

the original complaint was filed on July 20, 2010), Boyd took her distribution from the Plan in

2006.  Plaintiff's letter to Brickner stated as follows:

> The defense has raised (*as expected*) a statute of limitations defense.  That defense
> asserts that persons like you, who received a distribution from the Plan more than
> six (6) years before the date the law suit was filed (July 31, 2010, **so before July
> 31, 2004**), "waited" too long to file suit (or have someone like Ms. Boyd file suit
> on their behalves) and so even if you are otherwise due more than you received,
> you have no claim to anything more now.  We strongly disagree that the statute of
> limitations "clock" began running on your claim through the Plan's mere act of
> paying you an amount you had no cause to dispute was the correct amount (based
> on the Meriter's and the Plan's own descriptions to you and others as to how the
> Plan worked) but the fact is that until the defense is addressed by the Court,
> *persons like yourself need a spokesperson other than Ms. Boyd, who received her
> benefit within the applicable statute of limitations period (and hence personally
> lacks a direct financial interest in disputing the defense's statute of limitations
> argument).*  That's where you come in.

(Ex. F to Sturgeon Decl.) (bold/italics in original).

In addition, Boyd's counsel also represents the class in *S.C. Johnson*.  (Dkt. 83, p. 26).

The six-year statute of limitations, which counsel wrote Brickner could disqualify Boyd from

representing most class members, was first raised in *S.C. Johnson* in the defendants' March 3,

2008 motion to dismiss the complaint, (07-cv-1047 (E.D. Wis.), Dkt. 22, pp. 27-28) and was

eventually applied by both the district court and the Seventh Circuit.  2008 WL 4964714 (E.D.

Wis. Nov. 14, 2008); No. 10-3917, 2011 WL 2463550 (7th Cir. June 22, 2011).

Thus, Plaintiff's counsel's representations that Boyd could represent the entire class

(through at least April 11, 2011) are irreconcilable with his statements to Brickner and *S.C.*

*Johnson*.  In fact, Boyd has now retreated and only seeks to represent 55 of the 4490 class

members.

**D.**     **Adequacy Facts Related to Plaintiff Boyd's 2004 Chapter 13 Bankruptcy.**

Ms. Boyd filed a Chapter 13 voluntary bankruptcy petition on June 14, 2004, in the U.S.

Bankruptcy Court for the Western District of Wisconsin.[6]  (*See* Bankruptcy Case No. 3-04-

14351-rdm ("BR"), Dkt. 1).  She filed her proposed bankruptcy plan on July 19, 2004.  (BR Dkt.

9).  In her schedules submitted to the court on July 2, 2004, Plaintiff did not list her interests in

her pension plan when asked to identify "Interests in IRA, ERISA, Keogh, or other pension or

profit sharing plans."[7]  (BR Dkt. 6, p. 4, 7).  Nor did she list any claim against Defendants under

"[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims

of the debtor, and rights to setoff claims."  (Dkt. 6, p. 8).  Plaintiff signed these schedules under

penalty of perjury.  (Dkt. 6, p. 28).  The court confirmed the plan on October 25, 2004.  (Dkt.

25).

On June 5, 2006, Plaintiff requested and received a full withdrawal from the Meriter

Employee Retirement Plan in the amount of $65,508.31.  (Ex. D to Sturgeon Decl.).[8]  A little

over one year later, on July 9, 2007, Plaintiff filed an Amended Chapter 13 Plan.   (BR Dkt. 37).

On July 30, 2007, she submitted amended Schedule I (current income) and amended Schedule J

(current expenditures) to accompany her proposed modified plan.  (BR Dkt. 42).  On amended

Schedule I, Plaintiff did not list any pension or retirement income when prompted to disclose

---

[6] This is Plaintiff's most recent bankruptcy petition.  Plaintiff was represented by counsel, Joel
Winnig, throughout this bankruptcy.  (Ex. E to the Sturgeon Decl. at 168:11-13).  Plaintiff has
filed for bankruptcy on at least three previous occasions.  (Ex. E to the Sturgeon Decl. at 167-
171); *see also* BR 3-02-14351, Dkt. 1.

[7] Plaintiff failed to disclose her interests in the Meriter Employee Retirement Plan during any of
her previous bankruptcies when specifically asked to identify such interests under penalty of
perjury.  (BR 3-02-14351, Dkt. 6; BR 3-02-10128, Dkt. 1; BR 3-02-14452, Dkt. 1).

[8] $3,703.53 of the distribution was a return of her employee contributions.  (Ex. D to Sturgeon
Decl.).  $61,804.78 was a payment of Meriter's matching contributions and investment credits on
all portions of the account.  (*Id.*)  Plaintiff placed the matching contributions in an IRA.  (*Id.*).

such income, even though she had just received a lump sum distribution of $65,508.31 from her

retirement fund, which she rolled over into an IRA, in June 2006.  (BR Dkt. 42, p. 1).  She also

did not disclose that she withdrew the funds from her IRA between 2006 and 2008, or that she

had potential claims against Defendants.  (Ex. E to the Sturgeon Decl. at 98:6-10; 103:19-

104:17).  Plaintiff also filed a declaration affirming that Amended Schedule I & J were "true and

correct to the best of [her] knowledge, information, and belief" and signed the declaration under

penalty of perjury.  (BR Dkt. 41).  Plaintiff was represented by counsel throughout the

bankruptcy proceedings.  (Ex. E to the Sturgeon Decl. at 167:18-22).

Relying on Plaintiff's disclosures, the Bankruptcy Court approved the modified plan on

June 5, 2008.  (BR Dkt. 51; BR Dkt. 37).  Plaintiff completed the plan on July 9, 2009, (BR Dkt.

53), and the court ordered discharge of Plaintiff's debt on July 10, 2009. (BR Dkt. 54).  The

trustee issued his final report on February 26, 2010, (BR Dkt. 56), and the case was closed on

March 24, 2010.  (BR Dkt. Entry dated 3/24/2010).  Four months later, Plaintiff filed the instant

suit on July 30, 2010.  (Dkt. 1)  Under Plaintiff's bankruptcy plan, she paid $3,300, $1,994.54 of

which was disbursed to creditors.  (BR Dkt. 56, p. 4).  Plaintiff received a discharge of

$28,648.79, the amount of unsecured claims discharged without full payment.  (BR Dkt. 56, p.

1).  She paid less than twenty cents on the dollar to her creditors while concealing significant

assets.

## III.   ARGUMENT

Plaintiff's Motion does not present evidence sufficient to satisfy the required "rigorous

analysis" under Rule 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *General

Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982); *see also In re Am. Med. Sys., Inc.*, 75

F.3d 1069, 1078-79 (6th Cir. 1996) (District court, while having broad discretion over

certification, must "conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are

met before certifying a class.").   Instead, Plaintiff merely offers citations to the Amended

Complaint, Defendants' Answer, her own filings in this case, a single page of the Plan, and

documents showing when a proposed class representative took his or her lump sum benefit.

(Dkt. 83, pp. 1-14).  She addresses none of the intra-class conflicts identified above that are

inherent in the myriad substantive ERISA claims she also insists on maintaining.  Nor does she

explain how she can be an adequate class representative as to all class members until August

2011, and thereafter only able to represent 55.  *See Spano*, 633 F.3d at 591 ("[S]hort-cuts in the

class certification process are not permissible.").

 "The class action is 'an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only.'"  *Wal-Mart v. Dukes*, -- U.S. --, 131 S. Ct. 2541,

2550 (2011) (citations omitted).  To justify a departure from that rule, a court must find, first,

that the action meets all of the prerequisites for class action treatment under Rule 23(a) –

numerosity, commonality, typicality and adequacy – and, second, that it is one of the three types

of cases for which class action treatment is available under Rule 23(b).  *See* Fed. R. Civ. P. 23.

These requirements "effectively limit the class claims to those fairly encompassed by the named

plaintiff's claims."  *Dukes*, 131 S. Ct. at 2550 (internal citations and quotation omitted).  In this

way, Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class

whose claims they wish to litigate," i.e. that they are "part of the class and 'possess the same

interest and suffer the same injury' as the class members."  *Id.* (quoting *E. Tex. Motor Freight*

*Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

 In other words, "Rule 23 does not set forth a mere pleading standard."  *Dukes*, 131 S. Ct.

at 2551.  Rather, "[a] party seeking class certification must affirmatively demonstrate his

compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently

numerous parties, common questions or law or fact, etc." *Id.*; *see also Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993); *Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 184-86 (3d Cir. 2006). "'[A] judge should make whatever factual and legal inquiries are necessary under Rule 23.' If some of the determinations required by Rule 23 cannot be made without a look at the facts, then the judge must undertake that investigation." *Spano*, 633 F.3d at 583 (citations omitted).

### A. Plaintiff and Her Counsel Fail To Satisfy The Adequacy Requirements Of Rule 23(a).

Rule 23(a)(4) requires Plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry under Rule 23(a)(4) consists of two parts: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, No. 10-2379, 2011 WL 3559924, at *8 (7th Cir. Aug. 15, 2011). The first component of the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. The requirement of adequate representation "is essential to due process, because a final judgment in a class action is binding on all class members." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citations omitted).

### 1. Conflicts Among and Within the Respective Subclasses Render This Action Inappropriate For Class Certification.

In order to certify a class, a court must find that the proposed class representative will fairly and adequately protect the interests of the class members that the proposed class representative purports to represent. *See E. Tex. Motor Freight Sys., Inc.*, 431 U.S. at 403 ("Proposed class representatives must at a minimum "possess the same interest and suffer the same injury' as the class members"); *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,

15

309 F.3d 978, 985 (7th Cir. 2002); *Retired Chicago Police Ass'n*, 7 F.3d at 598-99 (affirming district court's denial of class certification where there were potential conflicting interests that may exist among the putative class members); *Gilpin v. American Fed'n of State, County, and Municipal Employees, AFL-CIO*, 875 F.2d 1310 (7th Cir. 1989) (affirming district court's refusal to certify a class action because of class conflicts); *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (reversing and remanding district court's decision approving proposed settlement agreement in a pension fund case brought by union members against the fund's trustees, in part, because the district court failed to properly consider the "clear conflicts" that existed among the named plaintiffs and certified members of the certified settlement class).

In addition, a class should not be certified when the legal theories alleged and relief sought by class representatives are at odds with other class members. *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 315-16 (5th Cir. 2007) (reversing district court's certification of class in ERISA fiduciary duty action alleging that company unlawfully continued to offer its own stock as a plan investment option where "[p]lan Participants were affected in dramatically different ways" by the alleged unlawful conduct); *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (in ERISA cash balance whipsaw case, finding the named plaintiff an inadequate representative for class members because "[w]e cannot expect [plaintiff] to assert with forthrightness and vigor those interests of other class members that he does not share and in which he has no stake.  Indifference as well as antagonism can undermine the adequacy of representation."); *Piazza v. EBSCO Industries, Inc.*, 273 F.3d 1341, 1353 (11th Cir. 2001) (reversing district court's decision certifying class action in stock undervaluation case because of "irreconcilable conflicts among the members of the class" including the "fact that Plan participants…actually benefitted" from the alleged undervaluation).

16

As set forth above in Section I-B , class members within the same subclass, class members in different subclasses, and the class representatives seeking to represent them, have varying and competing interests as to the interest crediting rate that they want.  Because certain class members will be advantaged and/or harmed based on which interest crediting rate their proposed counsel seeks to assert, this results in intraclass conflicts that preclude class certification.  (Sturgeon Decl. at ¶¶ 1-8.).  Moreover, class representatives and the subclass they seek to represent have contradictory interests as to (1) when the Plan was effectively amended, and (2) whether they are entitled to rely on the repeated plan amendment rule and the evidence that would apply to them under that rule.   (Sturgeon Decl. at ¶¶ 9-12.).  Thus, the proposed subclasses cannot be certified because Boyd and the other proposed representatives have claims that conflict with those of the classes they seek to represent.

### 2.  Proposed Class Counsel Is Not An Adequate Class Representative Under Rule 23(a)(4).

Given the conflicts within and between the proposed subclasses, proposed class counsel cannot "adequately protect the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n,* 7 F.3d at 598 (citation omitted); *see also, Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (each subclass requires separate class representatives and counsel in order to eliminate conflicts of interest where they exist); Fed. R. Civ. P. 23(g)(1)(A), Advisory Committee Note of 2003 ("Class counsel must be appointed for all classes, including each subclass that the court certifies to represent divergent interests."); *Brown v. Yellow Transportation, Inc.*, No. 08-C-5908, 2011 WL 1838741, at *4 (N.D. Ill. May 11, 2011) (noting that the court may certify subclasses with separate representation if actual conflict of interest becomes apparent) (citing *Kohen v. Pacific Inv. Mgmt. Co.*, *LLC*, 571 F.3d 672, 680 (7th Cir. 2009)) (emphasis added); *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984).

Plaintiff or her counsel cannot avoid this conflict by waiting to identify how Boyd will claim the indexing rate should be calculated until after a class has been certified.  Regardless of what she and her counsel argue, it will necessarily reduce potential recovery for some putative class members who have no voice in this litigation in order to benefit others.  (Sturgeon Decl. at ¶¶ 1-8.)  The same problem exists with Plaintiff's alternative type pleading, and refusal to assert when she believes the Plan amendments became effective: some putative class members benefited by the Plan's amendments and others did not.  (Sturgeon Decl. at ¶¶ 9-12.)Each member of every subclass is entitled to class counsel that will represent his or her interests with undivided loyalty, not compromise or sacrifice his or her claims, or potential recovery, to benefit others.  *See Langbecker*, 476 F.3d at 315-16 (vacating class certification order where different class members had conflicting economic interests in arguing about the date on which a particular investment became imprudent under ERISA; also recognizing that "these conflicts have implications not only for dividing the pie at recovery but also for discovery and preparation for trial").  Given the inherent conflicts explained above, the proposed subclasses cannot be represented by Ms. Boyd's counsel.

In addition to the disqualifying conflicts of Plaintiffs' counsel, this motion also presents the difficult question whether the Court in its discretion should also disqualify Plaintiff's counsel because of counsel's misrepresentations in Court papers.  "Although lawyers always have a duty of adequate representation to their clients, these duties are heightened in a class action."  *N.N. ex rel. S.S. v. Madison Metropolitan School District*, No. 08-581, 2009 WL 3126383, at *2 (W.D. Wis. Sept. 24, 2009); *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) ("All [of plaintiff's] moves in this suit were almost certainly the lawyer's. Realistically, functionally, practically, she is the class representative, not [the plaintiff]. 'Experience teaches that it is

counsel for the class representative and not the named parties, who direct and manage these actions….") (citing *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 n.9 (3d Cir. 1973)).

Plaintiff's counsel certified in two complaints – filed on July 30, 2010 and April 7, 2011 – that Ms. Boyd was an adequate representative of the entire Class of all persons who accrued a vested benefit under the Plan since October 1, 1987.  (Dkt. 1, ¶ 27; Dkt. 39, ¶ 29) ("Plaintiff is an adequate representative of the proposed Class, and therefore satisfies the requirements of Fed. R. Civ. P. 23(a)(4).  Plaintiff's interests are identical to those of the proposed Class.").  However, counsel wrote a *February 10, 2011* letter to putative class member Brickner (whom counsel was attempting to solicit), explaining that "persons like yourself need a spokesperson other than Ms. Boyd, who received her benefit *within* the applicable statute of limitations period (and hence personally lacks a direct financial interest in disputing the defense's statute of limitations argument)."  *See* (Ex. F to the Sturgeon Decl.) (emphasis in original).

Because the adequacy of Boyd to serve as a class representative is a core consideration on class certification, the Court may deem such misstatements sufficiently serious to disqualify counsel from this role.  *See Cunningham v. Sears, Roebuck & Co.*, 854 F.2d 914, 916 (6th Cir. 1988) ("Although we recognize that counsel has a duty to zealously represent his client, there is a degree of candor necessary for effective disposition of cases in this Court that counsel owes as an officer of the court.  His failure in this regard suggests bad faith."); *White v. Employee Ret. Plan of Amoco Corp.*, No. 96-C-4298, 2001 U.S. Dist. LEXIS 16380, at *10 (N.D. Ill. Oct. 9, 2001) ("Candor with the court is not only an ethical obligation, it is a necessity for the proper administration of justice.").  Now, in Plaintiff's Motion for Class Certification filed on August,

12 2011, counsel avers that Boyd is only qualified to represent 55 of the 4490 class members.

Whatever their intended tactical use, these irreconcilable positions are inconsistent with the obligations of class counsel.  Fed. R. Civ. P. 23(g)(1)(B) (in deciding whether to certify a class, a court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class"); *Spano*, 633 F.3d at 586-87 (adequacy of representation implicates more than the competence of lawyers who are representing the class; absentee members of a class will not be bound by the final result if they were represented by someone who had a conflict of interest with them or who was otherwise inadequate) (citations omitted).  "A court's experience with a particular counsel – even if that experience is not reflected in designated evidence – may be relevant to its determination of the counsel's adequacy to represent a proposed class."  *Gomez*, 2011 WL 3559924, at *9.[9]

### 3.    Ms. Boyd Is Not Adequate Under Rule 23(a)(4).

**Boyd Is Subject to Unique Defenses.**   The Seventh Circuit has made clear that a proposed class representative is not adequate under Rule 23(a)(4) if she is subject to a defense not applicable to the class as a whole.  *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818 (7th Cir.

---

[9] Additionally, while counsel for plaintiff may have performed adequately in other actions, "it is not reputation built upon past practice, but rather competence displayed by present performance, which demonstrates the adequacy of counsel in a class action."  *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 487 (W.D. Mich. 1994); *see also Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 112 n.1 (N.D. Ill. 1993) (holding that proposed class counsel had proven inadequate in the case at bar after noting that proposed class counsel had performed adequately in other actions before the same judge and that "of course, any decision about whether counsel for the putative class is adequate must be based on its handling of this case"); *Grimes v. Pitney Bowes Inc.*, 100 F.R.D. 265, 271 (N.D. Ga. 1983) ("The court knows the professional abilities of plaintiffs' counsel and knows of other occasions when their advocacy has been more thorough.  It is, however, immaterial as to why their performance did not live up to their past practice, for the issue is whether or not it is fair that other members of the class be bound by their achievements in this case.").

2011) ("[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives."). Thus, to preclude class certification, a defendant need not establish that the class representative's claim ultimately would be defeated by the unique defenses. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011); *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 998-99 (7th Cir. 1980). Rather, class certification should be denied if unique defenses are arguably present. *See CE Design*, 637 F.3d at 725 (considering "whether, however meritorious the suit itself may be, the claim of the class representative may be subject to a defense . . . that makes it an inappropriate representative of the class because other class members may not be subject to the same defense, or perhaps to any defense.").

Here, Plaintiff dishonestly failed to disclose that she had an interest in any ERISA Plan benefits during the five years her bankruptcy was pending. She also failed to disclose the claims asserted here as an asset in her bankruptcy proceedings. In addition, Plaintiff took a lump sum of $65,508.31 from the Plan in June, 2006 and dishonestly withheld that information from her creditors even though her bankruptcy was pending at the time. Plaintiff's concealments deprived her creditors of the opportunity to assert a claim for these funds.

Accordingly, Plaintiff is not an adequate class representative because she is subject to two unique defenses: (1) Plaintiff lacks standing to pursue her claim against Defendants because her unscheduled claim remains part of her bankruptcy estate; and (2) even if Plaintiff has standing to sue, she is judicially estopped from pursuing the instant action because she concealed her claim during the pendency of her bankruptcy and now is asserting an inconsistent position for her personal benefit in this litigation.

21

**Boyd Lacks Standing To Pursue an ERISA Claim.**  Section 541 of the Bankruptcy Code broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case."  11 U.S.C. § 541(a)(1). "The phrase 'legal or equitable interests . . . in property' includes choses in action and other legal claims that could be prosecuted for benefit of the estate."  *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472-73 (7th Cir. 1999) (noting that §541 includes all legal or equitable interest of the debtor in property, including legal claims); *see also Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006) (finding that debtor's causes of action "were part of her bankruptcy estate, *see* 11 U.S.C. § 541(a)(1)").[10]

Section 1306(a)(1) of the Bankruptcy Code further provides that property the debtor acquires during the pendency of a Chapter 13 bankruptcy (like Plaintiff's) is property of the bankruptcy estate.  *See In re Willet*, 544 F.3d 787, 791 n.3 (7th Cir. 2008) (property acquired after commencement of bankruptcy "becomes part of the estate if acquired while the estate is still open") (citing § 1306(a)(1))); *In re Waldron*, 536 F.3d 1239 (11th Cir. 2008) (post-petition cause of action is property of estate under § 1306(a)); *In re Wetzel*, 381 B.R. 247, 254 (Bank. E.D. Wis. 2008) ("The estate is not extinguished by confirmation, but rather is comprised of new property acquired by the debtor post-confirmation.").  In addition, "[t]hat [a debtor] may not

---

[10] Debtors in bankruptcy have an express and affirmative duty to schedule all assets and liabilities.  *See* 11 U.S.C. § 521(a)(1)(B)(i).  This is a continuing obligation.  *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010) ("[U]nder the established law of this circuit, a Chapter 13 debtor has a statutory duty to disclose changes in assets."); *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 785 (9th Cir. 2001) ("The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding."); *Davis v. Mitsubishi Motors of N. Am.*, 2011 U.S. Dist. LEXIS 100933, at *10 (C.D. Ill. Sept. 8, 2011) ("11 U.S.C. § 1306 establishes that potential claims or property acquired by the debtor after the commencement of the bankruptcy case but before the case is closed, dismissed, or converted is property of the estate and are subject to a continuing duty to disclose.").

have been aware of her cause of action or failed to list it in her bankruptcy schedule d[oes] not prevent it from inclusion in the estate, for the estate includes 'every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative.'" *EEOC v. J.D. Streett & Co.*, No. 05-4186, 2006 WL 3076667, at *2 (S.D. Ill. Oct. 30, 2006) (quoting *Lincoln Office Supply Co. v. Taylor*, 89 F.3d 359, 362 (7th Cir. 1996)).

Here, Plaintiff's ERISA claim accrued before Plaintiff's Chapter 13 bankruptcy was "closed, dismissed or converted," and thus, the claim became property of her bankruptcy estate. Plaintiff filed her Chapter 13 bankruptcy petition on June 14, 2004.  (BR Dkt. 1).  On October 25, 2004, the Bankruptcy Court confirmed Plaintiff's Chapter 13 Plan.  (BR. Dkt. 25).  Plaintiff's ERISA claims accrued, at the latest, when she received her lump sum distribution of her pension benefits in June, 2006.  *See Thompson v. Retirement Plan for Employees of S.C. Johnson & Sons, Inc.*, -- F.3d --, 2011 WL 2463550 (7th Cir. June 22, 2011).  The Bankruptcy Court did not discharge Plaintiff's debts until July 10, 2009, and her bankruptcy case remained open until March 24, 2010.  Plaintiff was represented by counsel during this entire period.  (Ex. E to the Sturgeon Decl. at 168:11-13.).

Plaintiff lacks standing to pursue her claims and is not an adequate representative because she failed to schedule her claim against Defendants on her bankruptcy petitions, and, as such, her claim remained property of the bankruptcy estate even after discharge.  A party has standing to prosecute a suit in federal court only if she is the "real party in interest" as that term is defined under Rule 17(a) of the Federal Rules of Civil Procedure.  A named plaintiff who lacks standing to assert a particular claim is precluded from asserting that claim on behalf of a class.  *See Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 704 (7th Cir. 1993) (affirming denial of class certification where plaintiff was not properly a member of the class she described).

Even though a Chapter 13 debtor retains "standing to file, prosecute and appeal" causes of action belonging to the estate for the benefit of her creditors, a Chapter 13 debtor is precluded from bringing a claim that is part of the bankruptcy estate for *her own benefit* unless the trustee has abandoned the claim or the claim is exempt.  *See Cable*, 200 F.3d at 470, 472-74 ("Under the reorganization chapters [Chapter 13], the debtor-in-possession steps into the role of trustee and exercises concurrent authority to sue and be sued on behalf of the estate.); *Becker v. Verizon North, Inc.*, No. 06-2596, 2007 WL 1224039, at *2-4 (7th Cir. Apr. 25, 2007) (holding that plaintiff, who failed to disclose her suit against defendant on her Chapter 13 bankruptcy petition, lacked standing to pursue claims for her own benefit because they were part of her bankruptcy estate, and since nothing in the record suggested that trustee abandoned claims, they belonged to trustee for benefit of creditors); *Biesek v. Soo Line R.R. Co*., 440 F.3d 410, 413 (7th Cir 2006) (same); *In re Brooks*, No. 04-13685, 2010 Bankr. LEXIS 1473, at *8, n.5 (Bankr. E.D. Va. Apr. 27, 2010) (same); *see also* 11 U.S.C. § 1303; Fed. R. Bankr. P. 6009.[11]

Here, Plaintiff lacks standing to prosecute this cause of action due to her failure to disclose her claims against Defendants during the pendency of her bankruptcy.  Notwithstanding her failure to disclose this asset, her cause of action became property of her bankruptcy estate.  Because the claims were not scheduled and administered and there is no indication that the

---

[11] A cause of action never scheduled cannot be abandoned by the trustee, *see Anderson v. Acme Markets, Inc*., 287 B.R. 624, 629 (E.D. Pa. 2002), and "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate," 11 U.S.C. § 544(d).  Accordingly, "a cause of action is part of the estate even if the debtor failed to schedule the claim" and "claims not abandoned by the trustee . . . remain part of the estate even after closure of the bankruptcy case, and the debtor loses all rights to those claims in his own name."  *Calabrese v. McHugh*, 170 F. Supp. 2d 243, 256 (D. Conn. 2001) (citing 11 U.S.C. § 554(d)); *see also Heartland Direct, Inc. v. Chevron U.S.A., Inc.*, No. 06-C-1029, 2006 WL 2524139, at *4 (N.D. Ill. Aug. 30, 2006) ("Because Plaintiff did not list the breach of contract cause of action against Defendant in its schedule of assets, the trustee could not have abandoned the asset and Plaintiff has no standing to bring the cause of action.").

trustee abandoned Plaintiff's claims – a step that requires notice to creditors and the opportunity for a hearing – the claims remained part of the estate even after the bankruptcy was closed. *See Becker,* 2007 U.S. App. LEXIS 9879, at *2-4. As such, the claims belong to the estate and Plaintiff lacks standing to prosecute this claim for her own benefit. Plaintiff therefore is not an adequate representative for this reason as well.

**Judicial Estoppel Also Bars Boyd From Serving As A Class Representative.** To redress the problems of nondisclosure during bankruptcy proceedings, the Seventh Circuit applies the doctrine of judicial estoppel. Importantly, the doctrine applies even if a party has standing to pursue an undisclosed cause of action for her own benefit and is the real party in interest. *See Cannon-Stokes*, 453 F.3d at 448 (finding that where trustee abandoned litigation and creditors were out of picture, debtor had standing to sue on his own behalf, but court held he was judicially estopped from doing so). "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000)) (internal quotations omitted).[12]

The Seventh Circuit has applied judicial estoppel in bankruptcy nondisclosure cases, holding that judicial estoppel prevents a debtor from obtaining an unfair advantage by failing to disclose a cause of action but later recovering on the same claim after the debts have been discharged. *See Becker*, 2007 WL 1224039, at *5; *Cannon-Stokes*, 453 F.3d at 447-448.

---

[12] "The primary aim of judicial estoppel . . . is to protect the integrity of the judicial process." *Williams v. Hainje*, 375 F. App'x 625, 628 (7th Cir. 2010) (citing *New Hampshire*, 532 U.S. at 753). "By making [litigants] choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying" and "prevent[s] the perversion of the judicial process." *Cannon-Stokes*, 453 F.3d at 448 (citations and internal quotations omitted).

As a result, judicial estoppel prevents a debtor from later recovering on a cause of action that arose either before, or during the pendency of, the Chapter 13 bankruptcy. *See, e.g.*, *Davis*, 2011 U.S. Dist. LEXIS 100933, at *10 (finding plaintiff judicially estopped where he failed to amend his bankruptcy schedules to reflect his employment discrimination claims against his employer that accrued during his Chapter 13 bankruptcy despite his continuing duty of disclosure); *Rushforth v. Bank of America*, N.A., 4-11-cv-00035, slip op. at 6-7 (S.D. Tex. June 23, 2011) (dismissing putative collective action because judicial estoppel barred plaintiff from bringing suit since "plaintiff did not disclose the FLSA claim to the bankruptcy court either before the plan was confirmed or since[]"), *adopted by* Dkt. No. 27 (July 13, 2011) (attached hereto as Exs. G and H to the Sturgeon Decl.); *Meisinger v. The Prudential Insurance Co. of Am.*, No. 2:10-cv-05885, 2011 WL 2036508, *1-2, (D.N.J. May 23, 2011) (holding that judicial estoppel barred plaintiff's claim that accrued during the pendency of his Chapter 13 bankruptcy because plaintiff did not list potential cause of action against defendant as an asset in his bankruptcy filings); *Davis v. Caseyville*, No. 05-455, 2007 WL 551584, at *2-3 (S.D. Ill. Feb. 20, 2007) (finding that judicial estoppel barred plaintiff's claim because plaintiff did not amend his bankruptcy pleadings to reflect the cause of action that accrued during his Chapter 13 bankruptcy, and as such, he obtained a benefit of the bankruptcy discharge on the basis of the false representation).

Plaintiff's filing of the instant lawsuit just four months after her bankruptcy proceedings were closed constitutes an irreconcilably inconsistent position with regard to her position to the Bankruptcy Court that no such claims existed. First, Plaintiff represented that she had no claims or potential claims against Defendants on her bankruptcy schedules. (BR Dkt. 6, p. 8). As discussed above, Plaintiff filed a Chapter 13 bankruptcy petition on June 14, 2004. (BR Dkt. 1).

Her bankruptcy remained open until March 24, 2010. (BR Dkt. Entry dated 3/24/2010). At no time during the entire bankruptcy process did Plaintiff disclose the existence of her potential claims against Defendants. Despite the opportunity – and indeed, the ongoing obligation – to list potential claims by amending her schedules, Plaintiff failed to do so. *See Robinson*, 595 F.3d at 1274.

Worse, Plaintiff failed to list her interest in the Plan as an asset. (BR Dkt. 6, 42). She had a statutory duty to schedule all of her assets, 11 U.S.C. § 522(a)(1), and was required to do so in order to claim an exemption. *See* 11 U.S.C. § 522(l); *see also* Fed. R. Bank. P. 4003(a). Also, when asked if she had an "interest in [an] IRA, ERISA, Keogh, or other pension or profit sharing plan," Plaintiff dishonestly listed "none" in all three of her bankruptcy filings. In addition, despite receiving her lump sum of $65,508.31 from the Plan in June, 2006, Plaintiff also never sought to modify her bankruptcy plan and disclose the receipt of this payment. Nor did she inform the court when she withdrew these funds from her IRA between 2006 and 2008. Indeed, she filed a proposed Amended Chapter 13 Plan in July 2007, approximately one year after she received her lump sum, and failed to list any pension or retirement income when she was prompted to disclose such income. (BR Dkt. 42, p. 1).[13]

Second, Plaintiff's misrepresentations prevailed. The Bankruptcy Court confirmed Plaintiff's modified Chapter 13 plan after her cause of action accrued based on representations on her amended schedules, including what assets she had, and what assets she did not.

Third, Plaintiff obtained a personal financial benefit in the discharge of her debts by representing that she had no valuable claims. In dishonestly failing to disclose her pension, she minimized the income and assets reported, which lowered the overall debt included in the

---

[13] Plaintiff even amended her schedules after she received her lump sum from the Plan, but she still failed to disclose the existence of this pension or her claims in this lawsuit. (BR Dkt. 42).

27

payment schedule.  At the completion of her bankruptcy, Plaintiff had paid $3,300 under her bankruptcy plan, and she received a discharge on $28,648.79 in debts.  (BR. Dkt. 56).  She derived an unfair advantage in that she received a discharge of her debts without giving her creditors the opportunity to assess the effect of her claim against Defendants on her bankruptcy plan.

Lastly, Plaintiff wants to assert a position inconsistent with her representations to the Bankruptcy Court in order to succeed in this proceeding by attempting to secure relief against Defendants.  Any inadvertence on the part of Plaintiff is irrelevant.  She is bound by the dishonest representations she made to the Bankruptcy Court.  In sum, because judicial estoppel blocks any attempt by Plaintiff to realize on this claim for her personal benefit, she is not an adequate class representative under Rule 23(a)(4).

In sum, the Court need not determine at this stage that Boyd's failure to disclose her claims in bankruptcy definitively preclude her from bringing the claims she asserts here or that Defendants will prevail on Boyd's claims as a matter of law.  But the defenses are unique to Boyd and render her an inadequate representative.  *See CE Design*, 637 F.3d at 726. ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation.").

### B.  Plaintiff Has Not Met Her Burden of Demonstrating That This Case is Suitable For Class Treatment Under Rule 23(b).

For the reasons discussed next, Plaintiff's claims are not suitable for class treatment under any provision of Rule 23(b).  Rule 23(b) "describes the additional elements which in varying situations justify the use of a class action."  Fed. R. Civ. P. 23 (adv. comm. notes).  As the Supreme Court recently explained in *Dukes v. Wal-Mart, Inc*.:

Classes certified under (b)(1) and (b)(2) share the most traditional justifications for class treatment – that individual adjudications would be impossible or unworkable, as in a (b)(1) class, or that the relief sought must perforce affect the entire class at once, as in a (b)(2) class. For that reason, these are also mandatory classes: The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action. Rule 23(b)(3), by contrast, . . . allows class certification in a much wider set of circumstances but with greater procedural protections. Its only prerequisites are that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." And unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory; class members are entitled to receive "the best notice that is practicable under the circumstances" and to withdraw from the class at their option.

131 S. Ct. at 2558 (citations omitted). Plaintiff's proposed classes do not meet any of these standards.

### 1.    Certification Under Rule 23(b)(1)

Rule 23(b)(1) only allows a class to be maintained where prosecuting separate actions by or against individual class members would create a risk of either "(A) inconsistent or varying adjudications . . . that would establish *incompatible standards of conduct* for the party opposing the class," or "(B) adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impeded their ability to protect their interests." Fed. R. Civ. P. 23(b)(1) (emphasis added). "[T]he Supreme Court [has] cautioned strongly against overuse of (b)(1) classes." *Spano*, 633 F.3d at 587 (citing *Ortiz*, 527 U.S. at 841-48). Specifically, due process concerns dictate that class actions under Rule 23(b)(1)(A) are not appropriate when "intraclass conflicts pertinent to significant monetary outcomes" would potentially lead to unfair treatment of class members. *Langbecker*, 476 F.3d 318; *see also Spano*, 633 F.3d at 587 ("Too liberal an application of the mandatory-class device risks depriving people of one of their most important due process rights: the right to their own day in court."). Further, it is not enough for the class

29

representatives to say they have a common interest that was harmed by defendants for certification under (b)(1)(B). *Spano*, 633 F.3d at 588. "Saying so does not make it so." *Id.*

### a. Separate Adjudications Would Not Prejudice Defendants Within The Meaning Of Rule 23(b)(1)(A).

Plaintiff cannot establish that separate adjudications would risk establishing "incompatible standards of conduct" for Defendants. *See* Fed. R. Civ. P. 23(b)(1)(A).

It is well settled that the fact "that some plaintiffs may ultimately be successful against a defendant while others may not is simply not a ground for invoking Rule 23(b)(1)(A)." *Rozema v. Marshfield Clinic*, 174 F.R.D. 425, 441 (W.D. Wis. 1997). Likewise, the "possible precedential effect of individual actions does not justify certification under Rule 23(b)(1)(A) either." *Pettrey*, 241 F.R.D. 268, 282 (N.D. Ohio 2006) (citing *Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 483 (S.D. Ohio 2001), *aff'd*, 370 F.3d 565 (6th Cir. 2004)). Instead, Rule 23(b)(1)(A) "is concerned with the risk of inconsistent or varying adjudications that might establish incompatible standards of conduct for the defendant." *Spano*, 633 F.3d at 588; *see also Bickel v. Sheriff of Whitley County*, No. 08-102, 2010 WL 883654, at *6 (N.D. Ind. Mar. 5, 2010) ("Even if the Defendant is required to pay damages to some class members but not to others because of factual differences or different rulings regarding liability, this does not satisfy the incompatible standards element."). Thus, "[f]or purposes of certification under Rule 23(b)(1)(A), a plaintiff must demonstrate that potential rulings are inconsistent by placing 'the party opposing the class in a position of being unable to comply with one judgment without violating the terms of another judgment.'" *Bickel*, 2010 WL 883654, *6 (quoting 5 Moore's Federal Practice § 23.41[3][a]).

Here, there is no risk that Defendants could be affirmatively ordered to something in one case that they would be specifically prohibited from doing in another case. Instead, Plaintiff

seeks additional interest credited to participants' accounts. Paying additional interest to some participants and not others would not force defendants to comply with one judgment while violating the other. *See Rozema*, 174 F.R.D. at 441. Certification pursuant to Rule 23(b)(1) is therefore inappropriate and should be denied.

> **b.     Separate Adjudications Would Not Prejudice Absent Class Members Within The Meaning Of Rule 23(b)(1)(B).**

There will also be no prejudice to absent class members if class certification is denied and separate adjudications occur, so certification under Rule 23(b)(1)(B) is inappropriate. Subsection (b)(1)(B) typically applies where the defendants have limited funds, i.e., "aggregating claims . . . made by numerous persons against a fund insufficient to satisfy all claims." *Ortiz*, 527 U.S. at 834 (internal quotation marks omitted); *see also Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 584 (N.D. Ill. 2005) (finding that in light of the requirement that Rule 23(b)(1)(B) be construed narrowly, certification must be denied because plaintiff failed to demonstrate a valid rationale, including a limited fund theory where the fund was insufficient to satisfy all claims). There is no such allegation of limited resources here. Nor is there any other legitimate claim to any "shared" right or relief. Instead, Plaintiff seeks to apply subsection (b)(1)(B) merely to aggregate individual claims for benefits – claims that depend on what documents participants received and read, and what they relied upon.

> **2.     Certification Under Rule 23(b)(2)**

As to Rule 23(b)(2), "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 131 S. Ct. at 2558. Thus, certification under

Rule 23(b)(2) is proper only where injunctive relief may issue to the class as a whole, or where the declaration will apply to the entire class in a way that resolves the case and does not require further individualized determinations.

Here, Plaintiff does not seek injunctive or declaratory relief – she merely seeks additional pension benefits. Moreover, "the same individualized inquiries that preclude Fed. R. Civ. P. 23(b)(3) certification would also impede class certification under R. 23(b)(2)." *See Walsh v. Principal Fin. Group, Inc.*, 266 F.R.D. 232 (S.D. Iowa 2010) (citing *In re St. Jude Med. Inc.*, 425 F.3d 1116, 1121-22 (8th Cir. 2005)). Because some class members may prevail, or lose, depending on their own circumstances, "reasonable expectations," and related statute of limitations issues, there is no right to injunctive or declaratory relief to the class as a whole. Class certification should be denied.

### 3.   Certification Under Rule 23(b)(3).

A class can only be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The language in Rule 23(b)(3) is divided into two requirements referred to as the predominance and superiority requirements. The predominance and superiority requirements are meant "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem,* 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) adv. comm. note (1966)).

Although similar to the commonality requirement under Rule 23(a)(2), the predominance requirement is "far more demanding" because it "tests whether [a] proposed class [is]

sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. In evaluating superiority, "class treatment of claims is most appropriate where it is not 'economically feasible' for individuals to pursue their own claims." *Coleman v. GMAC*, 296 F.3d 443, 449 (6th Cir. 2002). By contrast, "[i]ndividual rather than class litigation is the best way to resolve person specific contentions when the stakes are large enough to justify individual suits." *Frahm v. Equitable Life Assurance Soc'y of U.S.*, 137 F.3d 955, 957 (7th Cir. 1998); *see also Szabo*, 249 F.3d at 678 (holding that "it is unnecessary to certify a nationwide class. Each [class member] has a substantial claim, of the sort that could be, and often is, pursued independently."). Furthermore, the "promot[ion] of judicial economy is not sufficient to overcome procedural unfairness." *Ned-Sthran v. Methodist Hospital*, No. 08-0072, 2008 WL 5420601, at *6 (N.D. Tex. Nov. 25, 2008).

> **4.     To The Extent Common Questions Exist, They Do Not Predominate Over Individualized Questions and, Thus, Class Certification Should Be Denied.**

Plaintiff has failed to carry her burden to show that individualized determinations are not required under Rule 23(b). Whether analyzed under Rule 23(b)(1), (b)(2), or (b)(3), class certification should be denied due to the conflicts discussed above and because Plaintiff's claims will require individualized inquiries in at least two separate areas. First, to rely on the Internal Revenue Code Pattern Regulation to support her anti-cutback claim, Plaintiff must show that each participant had an actual expectation that the continued indexing based on the Plan's returns-based interest crediting rate was an ongoing feature of the Plan. Second, individualized determinations regarding what each participant knew to be an unequivocal repudiation of any entitlement to a benefit beyond his or her account balance is necessary to determine when a participant's claim accrued and, thus, whether each claim is barred by the statute of limitations.

**Plan Amendment Expectations.**  The Pattern Regulation only protects plan participants' "reasonable expectations."  *See* 26 C.F.R. § 1.411(d)-4, Q&A-1(c)(1); *supra* at pp. 8-9.  Similar to causes of action where "reliance" is an element of proof,[14] Plaintiff's claims requires proof that each participant had an actual expectation that the continued indexing based on the Plan's returns-based interest crediting rate was an ongoing feature of the Plan, and that this expectation was reasonable.  This requires individualized determinations as to each participant's knowledge of the indexing rate thus making class treatment of this claim improper under Rule 23(b).  See Blades, 400 F.3d at 566 ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.").

Any analysis of whether a "pattern" of amendments exists depends on the year in which someone commenced, and ceased, their participation in the Plan.  Because different evidence and arguments apply to different class members depending on the specific years they participated in the Plan, and what the alleged "pattern" of amendments looked like in those specific years, a class cannot be certified.  Moreover, interpreting the "pattern" regulation, the I.R.S. explained that "plan amendments that make benefits available for a limited period of time do not automatically result in the elimination of a participant's valuable right once that period of time has ended."  Rev. Rul. 92-66, issued August 20, 1992.  Rather, "the regulations preclude a pattern of plan amendments that would make benefits available only for a limited period of time if the plan amendments give rise to a *reasonable expectation* that the benefit is an ongoing feature of the plan, and therefore a valuable right."  *Id*.

---

[14] *See, e.g., Spano*, 633 F.3d at 589 (noting in a suit under ERISA for breach of fiduciary duty that some evidence of reliance for misrepresentations may be different for every participant and "would require precisely the kind of individualized attention that would make it difficult to find a class representative with claims typical of enough people to justify class treatment").

Thus, Plaintiff must show that each participant had an actual and reasonable expectation that the continued indexing based on the Plan's returns-based interest crediting rate was an ongoing feature of the Plan.  This necessarily involves an individualized inquiry of each putative class member.  The proposed class representatives and putative class members were employed by Meriter and took their lump sum distributions from the Plan at different times over the twenty-three year class period.  They would not have the same individualized expectations based on Plan terms in effect at the time, account statements, Plan communications, and the number and content of purported indexing rate amendments.  Furthermore, this inquiry requires individualized legal determinations because amendments occurring before a participant joined the Plan, and after a participant has retired are immaterial and cannot establish a "pattern" under the Regulation.[15]

The individualized nature of the inquiry is exemplified in Plaintiff's own deposition testimony.  Boyd worked for Meriter from July 1985 to April 2006 and received her lump sum in June 2006.  (Ex. D to Sturgeon Decl.).  Boyd's testimony shows that she had no expectation that a returns-based interest crediting rate was an ongoing feature of the Plan.   She testified that she had no expectation as to what interest crediting rate would be applied in the future beyond that it would be "[n]o less than 4%."  (Ex. E to Sturgeon Decl. at 163:23-164:25).  This fundamentally demonstrates why determinations of participants' actual expectations are necessary, and the case law makes clear that such inquiries are not appropriate under Rule 23(b)(1), (b)(2), or (b)(3).

---

[15] Where the anti-cutback rule does not protect pension benefits granted after a plan participant has permanently separated from employment, amendments occurring after a participant has retired are immaterial and cannot establish a "pattern" under the regulation.  *See Thornton*, 566 F.3d at 614.

Because all of Plaintiff's claims turn on her "pattern" allegations, class certification should be denied.

**Individual Statute of Limitations Inquiries**.  Class certification should also be denied because when the claims asserted here accrued also requires individualized determinations not proper under Rule 23(b).  "A claim to recover benefits under § 502(a) accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary."  *S.C. Johnson*, 2011 WL 2463550, at *4 (citations and internal quotations omitted). In *S.C. Johnson*, the Seventh Circuit held that the receipt of the lump sum distributions "served as an unequivocal repudiation of any entitlement to benefits beyond the account balance," so as to bar the claims of all class members who cashed out of the plan more than six years before the lawsuit commenced.  *Id.* at *5.  The Seventh Circuit also considered the issue of whether communications sent to Plan participants prior to their receipt of a lump sum could cause claims to accrue.  The Court held that it was "a very close question" given the Plans' communications in that case, and concluded "with some difficulty" that the communications were insufficient to bar the claims because they did not serve as a "clear and unequivocal repudiation of the participants' rights to future interest credits under ERISA."  *Id.* at *4-5.

Plaintiff has failed to meet her burden under Rule 23(b) and cannot shift this burden of proof to Defendants.[16]  The Seventh Circuit's opinion in *S.C. Johnson* will guide this Court's

---

[16] "It is not the defendant who bears the burden of showing that the proposed class does not comply with Rule 23, but that it is the plaintiff who bears the burden of showing that the class does comply with Rule 23."  *Thorn*, 445 F.3d at 321; *see also Retired Chicago Police Ass'n*, 7 F.3d at 598.  Significantly, "even assuming that [defendants have] the burden of proving its statute of limitations defense on the merits," defendants do not "bear the burden of demonstrating that resolution of that defense cannot occur on a class-wide basis."  *Thorn*, 445 F.3d at 321.  "It is not enough, therefore, for [plaintiffs] to argue that [defendants] failed to show that its statute of limitations defense presents individual issues.  Instead, the record must affirmatively reveal that resolution of the statute of limitations defense on its merits may be

statute of limitations analysis, and Defendants will argue that pursuant to *S.C. Johnson*, claims by putative class members accrued, at the latest, when they received their lump sum payment. Moreover, Defendants will also contend that participants' claims accrued at some earlier date and determining when each participant's claim accrued requires an individualized inquiry. Plaintiff has not shown that resolution of this issue can be accomplished on a class-wide basis. Rather, in her motion for class certification, Plaintiff merely argues that predominance is established under (b)(3) for example, because the "claims in this case do not present any issues that are individual to class members other than objectively calculating and administering individual relief after the correct indexing and other actual factors are established."  (Dkt. 83, p. 25).

Here, and particularly in light of *S.C. Johnson*, Defendants also intend to demonstrate that every class member's claims are time-barred based on their written communications of the Plan.  No doubt, Plaintiff will argue to the contrary, and claim that Defendants communications were not sufficient under *S.C. Johnson*.  Even if true, however, Defendants will be able to demonstrate that the claims of particular class members are time-barred because those class members actually understood that they would not receive more than the account balance that was disclosed to them on an annual basis.[17]

"Examination of whether a particular plaintiff possessed sufficient information such that he knew or should have known about his cause of action will generally require individual examination of testimony from each particular plaintiff to determine what he knew and when he

---

accomplished on a class-wide basis."  *Id.* (emphasis added); *see also id.* at 321-22 ("[T]the relevant inquiry is not whether [defendant] has shown that the statute of limitations defense requires individualized adjudications . . . .").

[17]  In *S.C. Johnson*, the defendants apparently did not rely on testimony from class members to demonstrate that those class members' claims were time-barred.

knew it." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 320 (4th Cir. 2006) (citing

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (noting, in

holding that a state statute of limitations defense presented individual issues, that "[w]hether and

when each [plaintiff] received, read, and understood [the information that could have alerted

them to the existence of a cause of action] is crucial to whether their . . . claim against [the

defendant] is time-barred by [the] statute of limitations")); *McIntyre v. Household Bank*, No. 02-

1537, 2004 U.S. Dist. LEXIS 25629 (N.D. Ill. Dec. 21, 2004) (finding that individual questions

of fact and law predominate in this case because whether class members who claim they did not

receive periodic statements can overcome defendant's statute of limitations defense can only be

determined by an individualized fact inquiry).

Boyd's claim, for example, is untimely because it accrued outside the six-year statute of

limitations based on her individual understanding of the Plan communications.  Her knowledge

based on Plan documents (under *S.C. Johnson*) amounted to an unequivocal repudiation

sufficient to trigger the statute of limitations.  More specifically, Boyd testified that she received

an account statement on an annual basis since 1987.  (Ex. E to Sturgeon Decl. at 142:2-4).  She

testified that it was "[her] practice to read everything" she received, including her account

statements, regarding the Plan.  (Ex. E to Sturgeon Decl. at 117:15-17; *see also id.* at 66:23-24,

68:16-18, 106:1-2, 121:20-24, 125:19-20, 162:22-25).  Based on those annual account

statements, Boyd testified that she understood that she was only entitled to a benefit equal to her

account balance.  She testified:

> Q  Okay.  Did you have an understanding as you were looking at this account
> statement and again, we're back to Boyd deposition Exhibit 5.  What was your
> understanding of what this document was telling you?
> A  What I had accrued in my retirement plan.
> Q  What does accrued mean to you?
> A  What the current balance is.

> Q   Why was it important to you to know the current balance?
> A   To watch it grow.
> Q   Why was that important?
> A   Because it was an investment.
> Q   You wanted to know how much you had?
> A   Yes.
> Q   And if you looked at this account statement, did it tell you, excuse me, at that point in time how much you believed you were entitled to?
> A   Yes.
> Q   And if you look at this statement here, what was your understanding of how much you would have been entitled to as of January 1, 1988?
> A   $669.17.
> Q   Okay.
> (Exhibit No. 6 marked for identification)
> Q   I'm going to hand you what's been marked as Boyd deposition Exhibit 6. Take a minute to look at that document.  Do you have that in front of you?
> A   Yes, I do.
> Q   Okay.  And this is the individual account statement for the Meriter Health Services employee retirement plan for you, correct?
> A   Yes.
> Q   For 1988?
> A   Yes.
> Q   And it shows your total account balance as of December 31, 1988?
> A   Yes.
> Q   Okay.  So what does this document tell you about what you were entitled to as of December 31, 1988?
> A   I was entitled to $1,684.49.

(Ex. E to Sturgeon Decl. at 55:1-56:19; Dep. Exs. 5 and 6).

Not only did Boyd understand, on the basis of Plan communications, that she was entitled to nothing more than her account balance, but she also understood "the whole time that one of the [distribution options available under the Plan] was to take [her] account balance as a lump sum[.]"  (Ex. E to Sturgeon Decl. at 124:21-125:4.).  Consistent with this testimony, Boyd explained that she likely received and would have read the Summary Plan Description bearing a date stamp of December 1, 1993, which states unequivocally that a participant "may elect to receive [their] **account balance** in a single lump sum payment."  (Ex. E to Sturgeon Decl. at p. 12 (Section 6.3.2.(i) (emphasis added)).

Consistent with the other individualized inquires explained above, Plaintiff has failed to carry her burden to show that resolution of Defendants' statute of limitations defense can occur on a class-wide basis.  Accordingly, class certification is improper under Rule 23(b).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Class Certification.

Respectfully submitted,

By: <u>/s Jeffrey A. Sturgeon</u>
Jeffrey A. Sturgeon

Dated:  September 12, 2011

Todd G. Smith
Godfrey & Kahn S.C.
One East Main Street
Madison, WI 53703
(608) 257-3911
(608) 257-0609 (fax)
Tsmith@gklaw.com

Charles C. Jackson (pro hac vice)
Jeffrey J. Kmoch (pro hac vice)
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
(312) 324-1000
(312) 324-1001 (fax)
charles.jackson@morganlewis.com
jkmoch@morganlewis.com

Jeremy P. Blumenfeld (pro hac vice)
Jeffrey A. Sturgeon (pro hac vice)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
(215) 963-5001 (fax)
jblumenfeld@morganlewis.com
jsturgeon@morganlewis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September, 2011, a true and correct copy of the foregoing Defendants' Brief in Opposition to Plaintiff's Motion for Class Certification was electronically filed with the Clerk of the Court using the Court's CM/ECF, which will send notification to the following:

> Eli Gottesdiener
> Steven D. Cohen
> Gottesdiener Law Firm, PLLC
> 498 7th Street
> Brooklyn, NY 11215
> (718) 788-1500
> (718) 788-1650 (fax)
> eli@gottesdienerlaw.com

/s Jeffrey A. Sturgeon
*Attorney for Defendants*