IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TAMMY J. BOYD,

|  |  |
|---|---|
| Plaintiff, | OPINION AND ORDER |
| v. | 10-cv-426-wmc |
| MERITER HEALTH SERVICES EMPLOYEE RETIREMENT PLAN and MERITER HEALTH SERVICES, INC, | |
| Defendants. | |

Plaintiff Tammy J. Boyd seeks certification of a class action challenging defendants' administration of a defined benefits plan as violating certain provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1002 *et seq.* ("ERISA"), and of the plan itself. Defendants are Meriter Health Services Employee Retirement Plan (the "Plan"), and Meriter Health Services, Inc., the Plan's sponsor and fiduciary. Acknowledging that the positions of various members of the putative class will differ and at least potentially conflict, plaintiff has taken the unusual step of seeking the certification of eleven subclasses. Each subclass is defined to account for possible, perceived or, in some cases, purely theoretical conflicts that may arise given the discrete claims of some participants in the Plan, as well as asserted defenses to those claims.

After analyzing plaintiff's motion in light of each of the proposed subclasses, the court finds that all of the requirements of Federal Rule of Civil Procedure 23(a) are met as to each subclass, except subclass E2. The court finds plaintiff Tammy Boyd is not an adequate class representative because her prior bankruptcy proceeding presents defenses

unique to her alone, including at the outset challenges to her standing to sue.  As to this subclass, plaintiff may propose either a different subclass representative or consolidation with an approved subclass.  Barring the court's approval of one of these two options, however, members of the E2 subclass will not be part of this lawsuit.  The court further finds that the class as a whole is seeking declaratory relief, with some subclasses seeking damages incidental to that relief, and therefore certification of the subclasses under Rule 23(b)(2) is appropriate.


PRELIMINARY MATTERS

Before turning to the class certification motion itself, three related, preliminary motions need to be addressed.  First, defendants seek leave to file a sur-reply regarding the suitability of plaintiff Tammy Boyd as a class representative.  (Dkt. #119.)  As more fully addressed below, defendants challenge Boyd's adequacy as a class representative in light of a past bankruptcy petition.  Defendants first raised these arguments in their opposition brief, to which plaintiff replied, in part, with averments that she relied on advice of her bankruptcy counsel in failing to disclose:  (1) her interest in the Plan, including her lump sum distribution, and (2) the claims she made against the Plan in this lawsuit.  The court will grant defendants' motion in part, allowing the submission of the sur-reply brief only to the extent it specifically responds to the statements in Boyd's affidavit that she relied on her counsel's advice and their impact, if any, on defendants' judicial estoppel argument.  The court will strike and in no way consider submissions outside this narrow window.

2

Second, plaintiff seeks to strike defendants' sur-reply brief concerning the adequacy of the other class representatives (dkt. #117) and an expert report of Lawrence Sher (dkt. #130). (Mot. to Strike (dkt. #131).) Plaintiff contends that defendants' brief exceeds the scope of the sur-reply, defined by this court as "limited to the suitability of the additional named plaintiffs to act as class representatives." (*Id.* at 1.) Specifically, plaintiff complains that in addition to raising discrete adequacy arguments with respect to some of the proposed class representatives, defendants' sur-reply brief contains arguments in support of their claim that certain conflicts of interest between and within the proposed subclasses render class certification inappropriate. In response to plaintiff's motion to strike, defendants argue that these claimed conflicts of interest bear on the suitability or adequacy of the proposed class representatives, thereby falling within the allowable scope of their sur-reply brief. The court agrees with defendants. As discussed below, possible conflicts of interest between proposed class representatives and the respective subclasses are material to determining whether the adequacy requirement is met. Moreover, as plaintiff is aware, the court allowed a sur-reply in an attempt to ameliorate any prejudice to defendants caused by plaintiff's delayed disclosure of ten additional class representatives.[1]

Third, on the same day plaintiff moved for class certification, she filed a motion for leave to amend her complaint to add named plaintiffs, specifically to add as named plaintiffs the newly-proposed subclass representatives. (Dkt. #82.) The court modified the class certification briefing schedule to provide additional time for defendants to

---

[1] The expert report of Lawrence Sher, too, concerns possible conflicts of interest, and therefore falls within the acceptable scope of defendants' sur-reply.

conduct discovery on these proposed class representatives, and reserved further ruling on the motion. (Dkt. #102.) Finding good cause for the amendment, the court will also grant this motion.

## BACKGROUND

### I.  Summary of Plaintiff's Allegations

This case is a putative ERISA pension benefits class action covering the period October 1987 to the present. Defendants are Meriter Health Services Employee Retirement Plan, a defined benefit plan, and Meriter Health Services, Inc., the Plan's sponsor and administrator.

From the Plan's inception in October 1987 until sometime not earlier than January 2003 (the exact date being in dispute), Meriter employees accrued benefits under an indexed-annuity formula. Plaintiff contends that defendants miscalculated and misrepresented participants' benefits under this formula. Specifically, plaintiff alleges that the indexed-annuity formula provided participants with certain benefits, which they did not receive, namely:

- The right to have their annuity benefit under the Plan indexed every year through age 65, whether or not they continued in service for Meriter at a Plan asset return-based indexing rate equal to the greater of (i) 4% or (ii) 75% of the Plan's asset returns for the year;

- A subsidized lump sum that guaranteed participants the greater of their accrued benefit calculated using an 8.0 lump sum factor or certain statutorily-required ERISA factors;

- A subsidized, early-retirement annuity form of payment for participants between age 55 and 65 using the Plan's actuarial equivalent factors.

Defendants contend that the Plan was converted to a cash balance formula on January 1, 2003.   Plaintiff argues that the Plan was not properly converted and defendants did not provide certain disclosures to plan participants as required by ERISA. Plaintiff also argues that, even if properly converted, defendants' post-conversion determination of participants' indexed-annuity formula benefits violated ERISA § 204(g), the anti-cutback rule.

## II.  Proposed Subclasses

Plaintiff proposes eleven subclasses, categorized into three groups.   Roughly, group 1 concerns those with claims regarding the administration of the Plan before its alleged conversion to a cash-balance formula.   Group 2 consists of participants with claims regarding pre- and post-2003 plan administration, plus claims arising out of the alleged conversion itself.   Lastly, Group 3 consists of one subclass comprising participants who entered the Plan after January 1, 2003, with claims to additional benefits due to the Plan's failed conversion.   While this grouping provides the court with an overarching organizational scheme, plaintiff's request that the court certify discrete subclasses necessitates an examination of each subclass individually.[2]

### A.  Subclass A: Certain 1987-2002 Lump Sum Recipients

Proposed subclass A consists of participants who allegedly received lower lump sums between October 1987 and December 31, 2002, than they should have under 26

---

[2] The court's attempt at a rough table of subclasses by issue and time frame is also attached at the end of this opinion.

U.S.C. § 417(e) and the Plan's use of its 8.0 "Actuarial Equivalent" factor contained in Plan § 4.3. Plaintiff further alleges that defendants failed to make corrective payments to subclass A members. Plaintiff proposes Phyllis Johnson as the subclass A representative. Johnson is a former Plan participant who received a lump sum payment in 1996, which plaintiff contends was less than the minimum required lump sum determined using the applicable 417(e) factors.

**B. Subclass B: All 1987-2002 Lump Sum Recipients, Other Than Subclass A Members**

Proposed subclass B consists of participants, not included in subclass A, who received a pre-age-65 lump sum from the Plan between October 1987 and December 31, 2002. Plaintiff alleges the Plan calculated these lump sums (a) without first indexing participants' benefits through normal retirement age (defined as age 65 under the Plan) in accordance with either (i) the Plan's nominally-stated 4% Indexing Rate or (ii) the value of the Plan's true Indexing Rate equal to the greater of 4% or 75% of the Plan's asset return for the year; and (b) without first indexing their benefit for the year in which their distribution occurred under the Plan's true Indexing Rate. Plaintiff proposes Madge English as the subclass B representative. English is a former Plan participant who received a lump sum in February 2000, which plaintiff contends was not indexed through normal requirement age and was not indexed in the year of her distribution using the Plan's true Indexing Rate.

**C.  Subclass C: Pre-2002 Terminees Paid Post-Alleged Conversion**

Proposed subclass C consists of participants similar to subclass B except that they terminated their employment before January 1, 2002, but were not paid until after January 1, 2003 (the date defendants contend the Plan was converted to a cash balance formula).   Plaintiff contends that defendants failed to honor certain contractual commitments and statutory requirements pursuant to ERISA § 204(g) (the anti-cutback provision) in calculating proposed subclass C members' benefits.   Plaintiff proposes Claudia Greco as the representative of subclass C.   Greco is a former Plan participant who received a lump sum payment in March 2003, which plaintiff contends was not indexed through normal requirement age and was not indexed in the year of her distribution using the Plan's true Indexing Rate.


**D.  Subclass D: 1987-2002 Annuitants**

Proposed subclass D consists of participants who commenced receipt of their benefit in annuity form (rather than a lump sum payment) between October 1987 and December 31, 2002, and who were age 55 or older when their benefit commenced. Plaintiff contends that defendants calculated their annuities by applying a reduction in excess of the 2% per year reduction promised in the Plan.   Plaintiff proposes Joyce Emerson as the representative of subclass D.   Emerson is a current Plan participant who commenced receipt of her benefit in annuity form at the age of 56 and has been receiving an annuity which represents more than a 2% per year reduction of the age 65 benefit.

**E. Subclass E1: Lump Sum Recipients Who Accrued Benefits Both Before And After January 1, 2003 And Who Received Lump Sum Payments Between January 1, 2003 And July 30, 2004**

Proposed subclass E1 consists of participants whose employment continued after January 1, 2003, and who were subject to the claimed conversion of the Plan to a cash balance formula. Proposed subclass E1 participants received lump sum payments more than six years before the filing of this lawsuit and are, therefore, potentially subject to defendants' statute of limitations defense. Similar to subclass C, plaintiff contends that subclass E1 participants received a lump sum without defendants: (1) indexing their benefits in accordance with the Plan's true Indexing Rate, (2) including the value of the true Indexing Rate through age 65, or (3) applying the greater of the Plan's 417(e) or 8.0 lump sum factors. Plaintiff further contends that (1) defendants failed to index subclass E1 benefits in the year of distribution using the Plan's true Indexing Rate; and (2) the Plan failed to include any additional accruals due should this court find that the Plan was not validly amended on January 1, 2003.[3] Plaintiff proposes Stephen Hansen as the representative of subclass E1. Hansen is a former Plan participant who worked for Meriter from 1986 to March 2004 and who received a lump sum in May 2004.

---

[3] Unique to Group 2 (subclasses E1, E2, F, G, H and I), plaintiff also contends that (1) the Plan was not properly converted; (2) even if it were, defendants failed to provide proper disclosures; and (3) defendants violated the anti-cutback rule and failed to protect participants' indexed-annuity formula benefits.

**F.   Subclass E2: Lump Sum Recipients Who Accrued Benefits Both Before And After January 1, 2003, And Who Received Lump Sum Payments Between July 31, 2004, and August 17, 2006**

Proposed subclass E2 consists of participants with the same claims as those of subclass E1, except that their lump sum payments fall within the six-year period leading up to the commencement of the present action, but before August 17, 2006 (the significance of which is discussed below in the description of proposed subclass F). Plaintiff Tammy Boyd is the proposed representative for subclass E2.  Boyd worked for Meriter from July 1985 to April 2006 and received a lump sum payment in June 2006.

**G.   Subclass F: Lump Sum Recipients Who Accrued Benefits Both Before And After January 1, 2003, And Who Received Lump Sum Payments After August 17, 2006**

Proposed subclass F consists of participants with the same claims as those of subclasses E1 and E2, except that the members of subclass F received lump sum payments after the effective date (for relevant purposes) of the Pension Protection Act of 2006 ("PPA"), Pub. L. No. 109-280, 120 Stat. 780 (2006).  (Plaintiff anticipates defendants will argue that the PPA impacts defendants' liability for class members receiving lump sums after August 17, 2006.)  Plaintiff proposes Linda Muller as the representative of subclass F.  Muller is a former Plan participant who worked for Meriter from 1975 to November 2007 and who received a lump sum payment in December 2007.

## H. Subclass G: Annuitants Who Accrued Benefits Both Before And After January 1, 2003

Proposed subclass G consists of annuitants with the same claims as subclass D, except that they may be subject to the defense that some or all of their post-January 1, 2003 accruals were under the cash balance formula because of their post-January 1, 2003 employment. Plaintiff proposes Michele McCabe as the representative for subclass G. McCabe worked for Meriter from 1974 to 2008 and the Plan commenced payment of an annuity to McCabe in November 2008. Plaintiff alleges that McCabe's annuity was calculated by applying a reduction of the age 65 benefit in excess of the 2% per year reduction in the Plan, and, if the court finds that the Plan was not validly amended on January 1, 2003, defendants also failed to include additional accruals due to her.

## I. Subclass H: Terminated Employees With Vested Rights Who Accrued Benefits Both Before And After January 1, 2003 And Who Have Not Yet Received A Distribution

Proposed subclass H consists of participants with pre- and potentially post-January 1, 2003 service with vested rights to a Plan benefit, but who no longer work at Meriter and have not yet received a distribution of their Plan benefit. Plaintiff proposes Krystal Wages as the representative of subclass H. Wages is a Plan participant who worked for Meriter from 1970 to 2010 and has yet to select the form or timing of her Plan benefit.

10

**J.   Subclass I: Current Employees Who Accrued Benefits Both Before And After January 1, 2003**

Proposed subclass I consists of participants with pre- and post-January 1, 2003 service who are still employed by Meriter and have not received a distribution of their Plan benefit.  Plaintiff proposes Ann Marie Stephens as the representative of subclass I. Stephens is a current Meriter employee who has worked for Meriter since 1978.

**K.  Subclass J: Post January 1, 2003 Entrants**

Proposed subclass J consists of participants who entered the Plan for the first time on or after January 1, 2003 and, thus, may have indexed-annuity formula claims similar to members of the other classes depending on the date of conversion.  Plaintiff proposes Jill Anthony as the representative for subclass J.  Anthony is a current Meriter employee who has worked for Meriter since 2001 and became a participant in the Plan on January 1, 2003.

OPINION

**I.   Class Certification**

To certify a class pursuant to Federal Rule of Civil Procedure 23, plaintiff must prove that the case satisfies all of the four requirements of Rule 23(a) -- numerosity, commonality, typicality and adequacy -- and show that the class can be maintained under one of the subsections of 23(b).  "A class may only be certified if the trial court is satisfied, *after a rigorous analysis,* that the prerequisites of Rule 23(a) have been satisfied." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011)

11

(quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)) (emphasis in *CE Design*). Moreover, each *sub*class must meet each of the requirements of Rule 23 to be certified. *See Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993) ("Subclasses must satisfy the class action requirements before they may be certified."); Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").

## A. Rule 23(a) Requirements

### 1. Numerosity

To satisfy the first requirement, plaintiff must demonstrate that the class is so "numerous that joinder of all parties is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff represents, and defendants do not dispute, that the subclasses range in size from 45 (subclass E1) to 1,650 (subclass I). In their opposition to plaintiff's motion, defendants also do not dispute that the proposed subclasses satisfy the requirement of numerosity. "The rule of thumb adopted in most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement." 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:5 (8th ed. 2011) (collecting cases); *see also Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537, at *2 (E.D. Wis. Mar. 29, 2011) ("The Seventh Circuit has indicated that a group as small as forty may satisfy the numerosity requirement." (citing *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969))). The court is satisfied that plaintiff has demonstrated that each subclass is so numerous as to make joinder impracticable.

### 2.  Commonality

Rule 23 also requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement "does not demand that every member of the class have an identical claim. It is enough that there be one or more common questions of law or fact; supplemental proceedings can then take place if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member." *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011).

Plaintiff offers one common question, presumably common across all of the subclasses, namely whether "[d]efendants alleged failures to comply with the benefit calculation requirements applicable to each of Plaintiffs' well-defined and distinctive proposed classes."  (Pl.'s Opening Br. (dkt. #83) 20-21.)  More specifically, the court is able to discern at least the following questions, which as indicated, are common to a particular subclass or across several subclasses:

- Whether the lump sum distributions were calculated in accordance with ERISA § 417(e) and § 4.3 of the Plan (the 8.0 factor) (subclass A);

- Whether benefits were properly indexed through normal retirement age (subclasses B, C, E1, E2, F, H and I);

- Whether benefits were properly indexed in the year in which distribution occurred (subclasses B, C, E1, E2, F, H and I);

- Whether participants were denied early retirement subsidies (subclasses D, G, H and I);

- Whether the Plan was properly amended and, if so, when the amendment occurred (subclasses E1, E2, F, G, H, I and J);

- Whether defendants violated ERISA by failing to provide certain disclosures concerning the amendment either dictated by the terms of the Plan itself or by statute (subclasses E1, E2, F, G, H, and I);

- Whether defendants violated the anti-cutback rule and otherwise failed to protect indexed-annuity formula benefits after the Plan converted to a cash balance formula (subclasses E1, E2, F, G, H, and I).

The court finds that these questions of law and fact satisfy the commonality requirement as to each subclass.

### 3.  Typicality

Next, plaintiff must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  This requirement is satisfied if the class representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (internal citation omitted).

Defendants do not expressly dispute that this requirement is satisfied.  In the context of opposing certification under Rule 23(b)(3), defendants instead contend that certain individual issues will undermine those claims or defenses typical of the class as a whole.  Because the court finds, as explained below, that the subclasses are properly certified under (b)(2), the court will address whether any individual issues undermine a finding of typicality as to each subclass.

*First*, defendants contend that plaintiff's anti-cutback claim presents individual issues.  In her complaint, plaintiff contends that a "pattern" of amendments to the Plan between 1988 and 2002 created a protected right to continued indexing.  Defendants

14

argue that showing such a pattern is a process unique to the circumstances of individual plaintiffs, for patterns depend on the year in which a Plan participant commenced and ceased participation in the Plan.   Defendants further argue that, under ERISA regulations, in order to create a protected right to continued indexing, the "plan amendments [must] give rise to a *reasonable expectation* that the benefit is an ongoing feature of the plan."  (Defs.' Opp'n (dkt. #106) 17 (quoting Rev. Rul. 92-66, issued August 20, 1992).)  Defendants next contend -- without citation -- that a "reasonable expectation" requires plaintiff to demonstrate "that *each participant* had an actual and reasonable expectation that the continued indexing based on the Plan's returns-based interest crediting rate was an ongoing feature of the Plan."  (Defs.' Opp'n (dkt. #106) 17 (emphasis added).)

In response, plaintiff argues that (1) whether a "reasonable expectation" exists is an objective test, not requiring individual proof; and (2) the Plan was amended to require continued indexing regardless of ERISA regulations.  The court need not fully resolve this dispute of law at this stage.  As an initial matter, defendants offer no support for their argument that proof of "reasonable expectation" must be a subjective test.  Moreover, the court is skeptical of such an approach, given the difficulty (if not impossibility) of administering a purely subjective requirement.  Finally, plaintiff's alternative argument, that the Plan itself rather than an ERISA regulation requires continued indexing, further supports a finding that this claim involves common questions of law.  Defendants may be correct that determining whether a pattern exists will require the court to examine individual years and the relevant amendments preceding those years, but this complexity

does not require individual proof of the kind that would undermine a finding of predominance (if we were proceeding under Rule 23(b)) or a finding that the proposed class representatives' claims are not typical of the class members they seek to represent.

*Second*, defendants contend that their statute of limitations defense creates individual issues, specifically that determining the date a participant's claim accrued will require individualized inquiries as to when that participant received a "clear and unequivocal repudiation of rights under the pension plan." (Defs.' Opp'n (dkt. #106) 33 (quoting *Thompson v. Ret. Plan for Emp. of S.C. Johnson & Son, Inc.*, 651 F.3d 600, 604 (7th Cir. 2011) (citation omitted)).)   In *Thompson*, the court considered the defendants' statute of limitations defense and held that the receipt of a lump sum distribution "served as an unequivocal repudiation of any entitlement to benefits beyond the account balance" so as to bar claims of class members who received such a distribution more than six years before the lawsuit commenced.  *Id.* at 606.  In so holding, the court rejected the defendants' argument that communications predating some of the distributions at issue provided notice sufficient to find an earlier accrual date than receipt of the lump sum distribution.  *Id.* at 605.

Here, even if the court were to agree with defendants that certain Plan communications provide "unequivocal repudiation of rights under the pension plan," this does not necessarily require individual proof.   Rather, the court could examine the communications and determine their impact as to the accrual date of class members' claims.   Defendants maintain that the factual inquiry cannot end there, because individual inquiries would be required as to what each class member "actually

16

understood" the communications to mean.  (Defs.' Opp'n (dkt. #106) 45.)   But this inquiry would be contrary to the treatment of accrual in *Thompson*, where the Seventh Circuit was concerned with how a *reasonable person* would interpret the communications at issue, not with the participants' actual understanding of those communications. *Thompson*, 651 F.3d at 605 ("[A] participant familiar with the right to future interest might still assume that the future interest credits would somehow be incorporated in the account balance").[4]

For all these reasons, defendants' argument that its statute of limitations defense requires individual inquiries is insufficient to undermine a finding of typicality.   *See Ruppert v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628, 634 (W.D. Wis. 2009) (rejecting similar statute of limitations defense as undermining typicality finding); *see also Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) ("Typicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members.").

### 4.  Adequacy

Finally, Rule 23(a) requires that both the class representative and class counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "adequacy" requirement is not onerous and generally is satisfied if two conditions are met: (1) the representative plaintiff must not have interests antagonistic to those of

---

[4] Plaintiff also alleges that the communications at issue actually misstate the benefits provided under the Plan and, therefore, could not provide "unequivocal repudiation of rights under the pension plan."

the other class members; and (2) class counsel must be qualified, experienced, and able to conduct the proposed litigation.  *See Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).

Nevertheless, defendants primarily focus on this requirement in opposing plaintiff's motion for class certification, positing four bases for rejecting plaintiff's motion.  First, defendants argue that certain conflicts of interest both between and within the subclasses render the proposed class representatives inappropriate.  Second, defendants contend that the proposed class representatives do not have the basic understanding of the claims needed to find the adequacy requirement satisfied.  Third, defendants argue that Tammy Boyd, currently the only named plaintiff and proposed representative for subclass E2, is inadequate because she failed to disclose this claim and the lump sum payment as an asset during her bankruptcy proceeding.  Fourth, defendants argue that proposed class counsel is inadequate because of "misrepresentations in court papers" concerning the adequacy of plaintiff Boyd to represent the entire class.

### a.  Conflicts Within Subclasses

While subclasses are an effective tool to deal with conflicts within a class, conflicts within a *sub*class could render certification of that subclass inappropriate.  Defendants contend that two such intra-subclass conflicts exist, which render the class representatives for those subclasses inadequate..

### i. Fixed Rate v. Five-Year Rolling Average

Based on their year of distribution, defendants contend that certain subclass members "will benefit from (and unquestionably want to advocate for) different methods of calculating future interest credits under the controlling Plan documents." (Defs.' Opp'n (dkt. #106) 13.) To illustrate this conflict, defendants point to the differing rates applied by the district courts in *Ruppert v. Alliant Energy Cash Balance Pension Plan*, No. 08-cv-127-bbc, 2010 WL 5464196, at *16 (W.D. Wis. Dec. 29, 2010) -- a fixed rate of 8.2% -- and in *Thompson v. Ret. Plan for Emp. of S.C. Johnson & Sons, Inc.*, Nos. 07-cv-1047, 08-cv-245, 2010 WL 3282666, at *6 (E.D. Wis. Aug. 19, 2010) -- a 5-year rolling average of actual interest credits.[5] (Defs.' Opp'n Br. (dkt. #106) 13-14.) Using these two approaches, defendants' expert then calculated and compared the different rates for each relevant year, 1987 to 2008. (Expert Report of Lawrence Sher ("Sher Report") (dkt. #130) ¶ 7.) As illustrated in defendants' brief, the proposed class representative for some of the subclasses would benefit more from one approach as compared to some of the other members of the subclass, who would benefit more from the other approach. (Defs.' Opp'n (dkt. #106) 14.)

In response, plaintiff states that she intends to pursue the fixed-rate approach in light of the concerns with the rolling 5-year average articulated by Judge Crabb in *Ruppert*. (Pl.'s Reply (dkt. #115) 36.) Plaintiff contends that such a strategic choice

---

[5] The Seventh Circuit reversed the district court's application of the five-year rolling average approach in *Thompson*, and remanded for reconsideration, finding that the court erred in deferring to the Plan on the appropriate rate. *Thompson*, 651 F.3d at 610. As of the date of this opinion, the district court in *Thompson* has yet to reconsider its application of the 5-year rolling average.

does not render class certification inappropriate, explaining "[c]ounsel and class representatives are not inadequate for failing to advance losing arguments." (*Id.* at 38 (citing *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("The class representatives cannot be branded as inadequate on account of their decision to abjure reliance on California law.")).)

There are at least two reasons to reject this purported conflict as a basis for not certifying certain subclasses. *First,* defendants fail to point to *any* case where a conflict over the preferred method in calculating damages rendered class certification inappropriate. This lack of support is particularly jarring in light of other cases such as *Thompson* and *Ruppert* where courts have certified cases despite the existence of the same purported conflict. In a footnote, defendants attempt to address this lack of supporting caselaw by distinguishing the proposed classes in this case from those in *Thompson* and *Ruppert*. Defendants explain that the classes certified in those cases "were much shorter in duration that the 23 years at issue here and had a much more uniform economic and interest rate environment." (Defs.' Opp'n (dkt. #106) 13 n.2.)

The classes in both *Thompson* and *Ruppert* roughly covered the eight years between 1998 and 2006. While this is significantly shorter than the 23-year period covering the present claims, defendants' expert opines that the 5-year average approach would produce higher rates in distribution years 1990 through 2002 except 1995, but that the 8.2% rate would be higher in 1987, 1988, 1989, 1995 and in year 2003 and after. (Sher Report (dkt. #130) ¶ 8.) Therefore, there is no real difference in the kind or uniformity of the claims at issue here and in those at issue in *Thompson* and *Ruppert*. Moreover, the

20

methodology used here has been accepted by the United States Courts of Appeals, including the Seventh Circuit, which have affirmed certification of classes requiring similar determinations of variable projection rates. *See Berger v. Zerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755 (7th Cir. 2003); *Lyons v. Ga.-Pac. Corp. Salaried Emp. Ret. Plan*, 221 F.3d 1235 (11th Cir. 2000); *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000).

*Second*, the determination of the appropriate interest rate need only be made for the purpose of determining the appropriate relief, after a finding of liability.  The Seventh Circuit has repeatedly cautioned against denying certification based on potential or hypothetical conflicts which could arise at the remedial or damages phase of a case. *See, e.g.*, *Kohen v. Pac. Inv. Mgmt Co.*, 571 F.3d 672, 680 (7th Cir. 2009) (rejecting possible conflict as to when class members would want the defendant's alleged misconduct to have occurred as an insufficient basis to deny certification).   Indeed, the court could -- although it does not believe it is warranted at this time -- certify subclasses solely for the basis of determining liability.  *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."); *see also Denberg v. U.S. R.R. Ret. Bd.*, 696 F.2d 1193, 1207 (7th Cir. 1983) ("This procedure is consistent with Rule 23(c)(4) which allows a class action to be maintained 'with respect to particular issues,' i.e., the constitutionality of the dependency requirement, and then in the same proceeding, to determine damages for the class members either individually or as sub-groups.").

If and when liability is demonstrated, the court could modify the definitions for the subclasses or certify new subclasses which would take into account this issue, and if

required, appoint separate class counsel to advocate for a 5-year rolling average or some other method for calculating the indexing rate. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues."); *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 512 (W.D. Wis. 2011) ("Should the conflict between plaintiffs and other members become more concrete as the case develops, the matter can again be addressed by creating subclasses for those members who do not enjoy floor price provisions and assigning one or more representatives for that subclass.").[6]

### ii.    Timing of Amendment

Defendants also contend that the timing of the Plan amendment -- in other words whether it happened on January 1, 2003, or on some later date -- creates a conflict within certain subclasses. (Defs.' Opp'n (dkt. #106) 15.) As plaintiff points out, this conflict only arises if the court finds that the Plan was lawfully administered before its amendment, which is contrary to plaintiff's core position. Even with such a ruling by the court, the conflict is not obvious since it would simply mean no recovery for *any* class

---

[6] The court could also appoint its own expert to assist the court in weighing the index rate options, which could ameliorate any prejudice to the class members who would benefit from an interest rate other than that advocated by class counsel and their respective subclass representative. Fed. R. Evid. 706; *see also ATA Airlines, Inc. v. Fed. Express Corp.*, Nos. 11-1382, 1492, 2011 WL 6762865, at *7 (7th Cir. Dec. 27, 2011) ("[A] judge can always appoint his own expert to assist him in understanding and evaluating the proposed testimony of a party's expert.").

member for events pre-dating the amendment.  As such, the conflict is too hypothetical to warrant concern or even any discussion.  *See Kohen*, 571 F.3d at 680.

### b.  Proposed Class Representatives' Understanding of Claims

Defendants next argue that a number of the proposed class representatives are inadequate because they fail to understand their claims and rely too heavily on class counsel.  (Defs.' Sur-Reply (dkt. #117) 19-29.)

Courts routinely reject challenges to the adequacy of class representatives based on their relatively limited understanding of legal claims involved in complex cases, such as the one before this court.  1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4.29 n.14 (8th ed. 2011) (citing several cases where courts have rejected challenges to adequacy of class representatives based on lack of knowledge); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) ("It is hornbook law . . . that in a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." (internal citation and quotation marks omitted)).

In *Ruppert*, this court rejected the same argument.  While acknowledging that "[t]he average plan participant cannot be expected to have even a working understanding about how his pension benefits were calculated or how the law requires them to be calculated," the court concluded "plaintiffs' lack of vigor or information is not so

problematic that, with help from their counsel, they could not fairly or adequately represent the class as required by Rule 23(c)(4)." 255 F.R.D. at 636. Indeed, it is quite possible, even likely, that most members of each subclass will lack even a good working knowledge of the issues, but their interests still align. In that way, the representative is almost certainly typical of most subclass members and indeed most clients. Counsel's role is to assist the class representatives in choosing actions in their (and other members') interest, as they would any other client.

In some instances, of course, lack of knowledge might signify a general lack of interest in litigating the matter and conscientiously representing other class members. But this is not so in this case, where a lack of knowledge is to be expected. Not only are the beneficiary rights complicated, but the proposed class representatives responded to discovery requests and sat for depositions within a very compressed period of time. In any event, defendants fail to offer any direct evidence, or develop any argument, that the proposed class representatives are disinterested or unwilling to participate in discovery matters. Indeed, with the exception of Boyd's bankruptcy proceeding discussed below, defendants have raised no concerns about possible defenses unique to specific, proposed class representatives despite being given an opportunity to conduct discovery on each. In light of this, concerns about some of the class representatives' grasp of the Plan and of the legal claims asserted by plaintiff is insufficient to undermine a finding of adequacy.

### c. Impact of Boyd's Bankruptcy Proceeding

Next, defendants contend that Boyd is not an adequate class representative because her claims are subject to two unique defenses.  The court need not decide whether these defenses are valid; rather the court's focus at this time is whether defendants have posited "an arguable defense peculiar to" Boyd which may "bring into question the adequacy of the named plaintiff's representation."  *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." (quotation marks and citation omitted)).

First, with respect to defendants' challenge to Boyd's standing to sue, defendants contend that property acquired during the pendency of a bankruptcy proceeding becomes property of the bankruptcy estate and, therefore, any claim against defendants properly belongs to Boyd's bankruptcy estate, not to Boyd personally.  (Defs.' Opp'n (dkt. #106) 30 (citing *In re* Willet, 544 F.3d 787, 791 n.3 (7th Cir. 2008)).)  Boyd's bankruptcy proceeding closed on March 24, 2010, and this lawsuit was filed four months later.  Defendants contend, however, that her claim accrued no later than June 2006, when Boyd received a lump sum distribution of her pension benefits.  Second, defendants allege that Boyd should be judicially estopped from serving as a class representative because of her failure during bankruptcy proceedings to disclose (1) this cause of action, (2) her interest in the Plan, or (3) the lump sum distribution she received in June 2006.

Plaintiff responds by arguing that (1) her claims are "excluded from the bankruptcy estate as a non-forfeitable asset arising out of her inalienable and non-forfeitable right to pension benefits" (Pl.'s Reply (dkt. #115) 59); and (2) any failure to disclose a claim or asset was due to her reliance on her bankruptcy attorney, which precludes a finding of bad faith on her part (*id.* at 62).

The court finds that defendants have presented at least an "arguable" defense to Boyd's claim, and, therefore, the court is compelled to conclude that Boyd is an inadequate representative of subclass E2.  *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) ("[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives.").

As for subclass E2, the court will provide plaintiff an opportunity to address denial of certification in one of two ways.  First, plaintiff may propose a new representative for the E2 subclass and seek certification as to that subclass.  *See CE Design Ltd.*, 637 F.3d at 728 ("Should the court decide that CE is not a proper class representative, that would not conclude the question whether the suit should be allowed to proceed as a class action. CE's law firm might be able to find a class member who would substitute for CE -- a member less vulnerable to the defense of invitation or permission.").  Second, plaintiff may propose to consolidate a certified subclass with members of the proposed subclass E2.

While the use of subclasses is well-established to address a statute of limitations defense, *see Ruppert*, 255 F.R.D. at 633-34, or to isolate certain members required to prove additional elements of a claim, *see Culver v. City of Milwaukee*, 277 F.3d 908, 911

26

(7th Cir. 2002), plaintiff's efforts here may have gone too far. "[A] class need not be subdivided merely because different groups within it have alternative legal theories for recovery or because they have different factual bases for seeking relief." 7AA Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1790 (3d ed. 2011).[7]

With the exception of subclass E2, the court finds plaintiff's proposed subclasses and their representatives meet the requirements of Rule 23 and will allow the class action to proceed.

### d.  Proposed Class Counsel

Lastly, defendants challenge the adequacy of proposed class counsel based on their earlier representations to this court in the complaint and amended complaint that Boyd was an adequate representative for the entire class. The court rejects this challenge for two reasons. First, by pursuing multiple subclasses, plaintiff does not now concede, and need not concede, that the lawsuit could not be certified as one class. In seeking subclass representatives, plaintiff's counsel described how Boyd's claims fall within the statute of limitations, whereas other participants' claims may not. While Boyd might not have an *interest* in defeating a statute of limitations defense, this is not the same as saying that her claim somehow *conflicts* with the claims of participants to whom the defense might apply. Moreover, since Boyd is not subject to the statute of limitations defense (as compared to Stephen Hansen, the subclass E1 representative), any merit to this defense (namely, that

---

[7]  The court considered consolidating subclasses in an attempt to absorb proposed subclass E2 into a larger subclass and to otherwise reduce the number of subclasses, but has decided instead to leave any consolidation for plaintiff to propose.

premised on accrual of a claim at the time of receipt of lump sum distribution) would not tank the claims of all members. *See Randall*, 637 F.3d at 820-24 (describing the risks of class certification under Rule 23(b)(2) when the class representative's claim is weaker than those of unnamed class members).

Second, even if the court were to view plaintiff's counsel's earlier representations that Boyd could represent the entire class as inaccurate, these representations alone do not constitute "misconduct by class counsel that creates a serious doubt that counsel will represent the class loyally." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011). While gamesmanship was likely in play in plaintiff's counsel's shifting so late from one class and one class representative to multiple subclasses and multiple class representatives, such maneuvering does not reflect such a "lack of integrity" to cause this court to question counsel's ability to "act as conscientious fiduciaries of the class." *Id.*[8]

Plaintiff's counsel have provided sufficient support to demonstrate that they are qualified, experienced, and able to conduct this litigation, and defendants do not challenge this fundamental finding. Accordingly, the court finds plaintiff's counsel adequate under Rule 23(a)(4) and will appoint them as class counsel pursuant to Rule 23(g).

---

[8] Having said that, the court will nevertheless expect better of plaintiff's counsel going forward should it wish to remain class counsel.

## B.  Rule 23(b) Requirements

Plaintiff contends that each of the subclasses could be certified under any of the three 23(b) subsections.  The court need not address most of plaintiff's arguments, finding certification under 23(b)(2) appropriate.  Rule 23(b)(2) provides for class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  "When the main relief sought is injunctive or declaratory, and the damages are only 'incidental,' the suit can be maintained under Rule 23(b)(2)."  *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005).  In this context, incidental damages are ones where "the computation of damages is mechanical, 'without the need for individual calculation.'"  *Id.* (quoting *Manual for Complex Litigation (Fourth)* § 21.221 (2004)).

In *Berger v. Zerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755 (7th Cir. 2003), the Seventh Circuit considered whether a claim alleging that a plan failed to accurately calculate lump sum distributions should have been certified as a class action, pursuant to Rule 23(b)(2).  In affirming the district court's certification, the Circuit Court made two important observations.  First, monetary relief does not necessarily render a 23(b)(2) class inappropriate.  The court explained that the plan participants sought a declaration that the defendant's "method of computing the lump sums to which withdrawing employees are entitled is unlawful."  338 F.3d at 763.  The fact that such a declaration is "merely a prelude to a request for damages" does not turn the class's claim into a claim for damages.  *Id.*  "[A] declaratory judgment is *normally* a prelude to a request for other

29

relief, whether injunctive or monetary; so there is nothing suspicious about the characterization of the suit as one for declaratory relief." *Id.* (emphasis in original).

Second, the court explained why a 23(b)(3) class with the attendant notice requirements and right to opt-out was not required given the class's claims.

> The reason for allowing opting out in other types of class action is that even though one class member's claims may overlap another's (common issues), it may be different in respects that make him want to bring his own suit. There is nothing like that here. The declaration established the right of each of the class members, and the computation of the damages due each followed mechanically.

*Id.* at 764; *see also Allstate Ins. Co.*, 400 F.3d at 507-08 (describing incidental damages as those which "will simply be read off from the plan" if plaintiffs receive the declaration they are seeking, as compared to cases where "the effect of the declaration on individual class members will vary with their particular circumstances").

Following the Seventh Circuit's decision in *Berger*, other district courts -- including this court -- have certified under Rule 23(b)(2) class actions seeking a declaration that the plan failed to compute lump sum distributions and other benefits correctly as Rule 23(b)(2) classes. *See Ruppert*, 255 F.R.D. at 636 (relying on *Berger* to find certification of a (b)(2) class appropriate); *Thompson*, 265 F.R.D. at 412 (same). Accordingly, the court finds that the subclasses are maintainable under subsection (b)(2).

## ORDER

IT IS ORDERED that:

1) Defendants' motion for leave to file a sur-reply regarding the suitability of plaintiff Tammy Boyd as a class representative (dkt. #119) is GRANTED IN PART AND DENIED IN PART. The court allows the sur-reply to the extent

that it responds to Boyd's statements that she relied on advice of counsel in failing to make certain disclosures in her bankruptcy proceeding and has only considered those parts in ruling on the class certification motion.

2) Plaintiff's motion to strike defendants' sur-reply brief concerning the adequacy of the other class representatives and an expert report of Lawrence Sher (dkt. #131) is DENIED.

3) Plaintiff's motion for leave to amend her complaint to add additional named plaintiffs (dkt. #82) is GRANTED.

4) With the exception of subclass E2, plaintiff's motion for class certification (dkt. #83) is GRANTED.

5) On or before March 8, 2012, plaintiff may file a motion for a new proposed class representative as to subclass E2 *or* to certify a consolidated subclass which includes members of E2. Failure to timely file such a motion will result in the case proceeding without members of the E2 subclass. If plaintiff moves for class certification or to consolidate certain subclasses, defendants' opposition to such motion is due on or before March 22, 2012. Plaintiff's reply, if any, is due on or before March 29, 2012.

6) The court will wait to enter a final order defining the specific subclasses certified and appointing class counsel until resolution of the issue set forth in paragraph 5 of this order.

Entered this 17th day of February, 2012.


BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

31

**Appendix: Table of Subclasses by Time Frame and Issue**

| Subclasses / Issues | Before January 1, 2003 | | | | Before and After January 1, 2003 | | | | | | After January 1, 2003 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **A** | **B** | **C** | **D** | **E1** | **E2** | **F** | **G** | **H** | **I** | **J** |
| Failed to calculate lump sum using the greater of 8.0 or 417(e) factors | X | | | | | | | | | | |
| Failed to properly index through age 65 | | X | X | | X | X | X | | X | X | |
| Failed to index in the year of distribution | | X | X | | X | X | X | | X | X | |
| Denied early retirement benefit | | | | X | | | | X | X | X | |
| Failed to properly convert the Plan to a cash-balance formula | | | | | X | X | X | X | X | X | X |
| Failed to provide ERISA-mandated disclosures of the conversion | | | | | X | X | X | X | X | X | |
| Violated anti-cutback rule; failed to protect indexed-annuity formula benefits | | | X | | X | X | X | X | X | X | |