Exhibit A to Motion for Preliminary Approval

*Johnson, et al. v. Meriter Health Services Employee Retirement Plan, et al.*,
3:10-cv-00426-wmc (W.D. Wis.)

# Class Settlement Agreement

*Attached to Class Settlement Agreement are Exhibits 1-4*:

Exhibit 1 - Proposed Preliminary Approval Order

Exhibit 2 - Proposed Mailed Notice

Exhibit 3 - Proposed Publication Notice

Exhibit 4 - Proposed Final Approval Order

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PHYLLIS JOHNSON, *et al.*,

On behalf of themselves and on behalf of        Case No. 3:10-cv-00426-wmc
all others similarly situated,

Plaintiffs,

v.

MERITER HEALTH SERVICES
EMPLOYEE RETIREMENT PLAN, and
MERITER HEALTH SERVICES, INC.,

Defendants.

SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement" or "Settlement Agreement") is entered into by and among (i) the Named Plaintiffs in the above-captioned Lawsuit for themselves and on behalf of the Classes (Classes A through J), and (ii) Defendants Meriter Health Services, Inc. ("Meriter" or the "Company") and the Meriter Health Services Employee Retirement Plan (the "Plan") (collectively, "Defendants").

RECITALS

1.      Defendant Plan is a defined benefit pension plan made effective October 1, 1987. Meriter is the sponsor for the Plan and has been since October 1, 1987.

2.      On July 30, 2010, Tammy Boyd filed a Complaint against the Plan and Meriter under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Complaint alleged, on behalf of the named plaintiff and a proposed class, various claims against Defendants challenging the design and operation of the Plan and communications about the Plan.

3.      On April 7, 2011, an Amended Complaint was filed. The Amended Complaint alleged various claims against Defendants challenging the design and administration of the Plan and communications about the Plan, including but not limited to claims alleging that:  (a) the Plan violated ERISA Sections 3(23)(A), 203, 204, and 205 prior to 2003; (b) communications about the Plan prior to 2003 (including the SPDs) were inaccurate, incomplete and misleading; (c) the Plan was not properly amended effective January 1, 2003 and therefore that the terms of the 1987 Plan, as amended, should remain in effect; (d) that communications about the alleged January 1, 2003 amendment were misleading and did not satisfy ERISA Section 204(h), such

1

that the terms of the 1987 Plan, as amended, should remain in effect; and (e) that Defendants breached their fiduciary duties under ERISA.

4.      In August 2011, Ms. Boyd moved for class certification and to add additional proposed class representatives, seeking certification of eleven subclasses.  On February 17, 2012, the Court certified eleven subclasses.  Defendants appealed, and on December 26, 2012, the Seventh Circuit Court of Appeals affirmed the Court's decision.  Subsequently, on April 19, 2013, the Court appointed the Named Plaintiffs to represent the eleven certified subclasses.  The subclasses represented by the Named Plaintiffs are collectively referred to as "Plaintiffs." Plaintiffs and Defendants collectively are referred to as "the Parties."

5.      The Parties have engaged in substantial discovery with respect to liability, damages, class certification and Defendants' defenses.  They have also engaged in substantial motion practice and consulted with their respective consulting experts regarding liability and damages.  Plaintiffs served multiple discovery requests, and Defendants produced hundreds of thousands of pages of hard copy and electronic documents.  After approximately twenty depositions (including the class representatives, current and former Meriter employees, and third-party consultants) and the exchange of expert reports, both Parties filed motions for summary judgment.  On July 3 and July 10, 2014, the Court denied Plaintiffs' motion and granted in part Defendants' motion, and held that the majority of Plaintiffs' claims were time-barred.  The Court found that there were genuine issues of material fact as to three claims (and related issues): (1) whether Meriter breached its fiduciary duty by concealing a failure to pay actuarially equivalent lump sum distributions as required by ERISA and Section 417(e) of the Internal Revenue Code from 1987 to December 31, 2002; (2) whether Meriter breached its fiduciary duty by concealing the effect of wear-away as a result of the January 1, 2003 Plan amendment; and (3) whether the 204(h) notice published by Defendants in 2002 constituted an egregious violation of the statute.

6.      The Parties believe in the merits of their respective positions, including Plaintiffs' belief that some or all of the Court's summary judgment rulings would be reversed on appeal. However, the Parties enter into this Agreement to, among other things: eliminate the risk for Plaintiffs that they would recover nothing in the trial and on appeal, or would recover less than the Total Settlement Amount offered by Defendants; eliminate the risk for Defendants that Plaintiffs will prevail on some or all of their claims at trial and/or that the Court's summary judgment rulings will be reversed on appeal, such that Defendants would face liability for substantially more than the Total Settlement Amount; avoid the expense and risks of burdensome, protracted litigation, including Plaintiffs' appeal of the Court's summary judgment rulings and any appeal from the Court's rulings after trial on the remaining issues and remedies (if any) ordered as a result of the Court's rulings; obtain the benefits, releases, orders, and judgments contemplated by this Agreement; and resolve finally and fairly all claims, known and unknown, that have been or might be asserted by Plaintiffs against Defendants and Plaintiffs' Released Parties.

7.      Plaintiffs and their counsel extensively investigated and evaluated their claims and Defendants' available defenses and, considering the benefits promised by this Agreement and the costs, likelihood, and uncertainty of establishing a right to recovery and the amount of

that recovery, if any, have concluded, after extensive negotiations over the terms of this Agreement, that this Agreement is fair, reasonable, and adequate and in the Class Members' best interests.

8.      In consideration of the mutual promises, covenants, releases, and warranties contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which the Parties now acknowledge, the Parties agree as follows:

**Section I – Definitions and Other Basic Provisions**

**1.      Definitions.**

    **A.**      "417(e) Minimum Lump Sum Benefit With 4% Projection" means:

        (i)      If the Class Member was paid before January 1, 2002, the Age 65 Benefit With 4% Projection times the Present Value Factor Based upon PBGC Rates.

        (ii)      If the Class Member was paid on or after January 1, 2002 but before January 1, 2008, the Age 65 Benefit With 4% Projection times the Present Value Factor Based upon GATT Rates.

        (iii)      If the Class Member was paid on or after January 1, 2008, the Age 65 Benefit With 4% Projection times the Present Value Factor Based upon PPA Rates.

    **B.**      "417(e) Minimum Lump Sum Benefit With 7.5% Projection" means:

        (i)      If the Class Member was paid before January 1, 2002, the Age 65 Benefit With 7.5% Projection times the Present Value Factor Based upon PBGC Rates.

        (ii)      If the Class Member was paid on or after January 1, 2002 but before January 1, 2008, the Age 65 Benefit With 7.5% Projection times the Present Value Factor Based upon GATT Rates.

        (iii)      If the Class Member was paid on or after January 1, 2008, the Age 65 Benefit With 7.5% Projection times the Present Value Factor Based upon PPA Rates.

    **C.**      "4% Account Balance" means, as of any point in time prior to January 1, 2003, the Class Member's total Account Balance as of that point in time as maintained in the Plan's administrative records.  As of any January 1st after January 1, 2003, the 4% Account Balance means the 4% account balance as of the prior January 1 times 1.04 and increased by the Contribution for the prior plan year.

    **D.**      "7.5% Account Balance" means, as of any point in time prior to January 1, 2003, the Class Member's total Account Balance as of that point in time as maintained in the Plan's

administrative records.  As of any January 1st after January 1, 2003, the 7.5% Account Balance means the 7.5% account balance as of the prior January 1 times (1 plus the Indexing Rate for the prior plan year) and increased by the Contribution for the prior plan year.

     **E.**     "Account Balance" as of any point in time means the Class Member's total Account Balance as of that point in time as maintained in the Plan's administrative records.

     **F.**     "Age 65 Benefit With 4% Projection" means:

     (i)     If the Class Member was paid before 2003 and before age 65, (the 4% Account Balance as of the January 1st of the Year of Payment divided by 8 times (1 plus the Indexing Rate in the Year of Payment divided by 4 times the Number of Full Quarters in The Year of Payment Prior to Payment) times (1 plus .01 times (4 minus the Number of Full Quarters in The Year of Payment Prior to Payment) plus the Contribution in the Year of Payment divided by 8)) times 1.04 raised to the power of the Number of Full Years From January 1 Following Payment to The January 1 Preceding Age 65 times (1 plus .01 times the Number of Full Quarters in The Year Age 65).

     (ii)     If the Class Member was paid after 2002 and before age 65, (the 4% Account Balance as of the January 1st of the Year of Payment divided by 8 times 1.04 plus the Contribution in the Year of Payment divided by 8) times 1.04 raised to the power of the Number of Full Years From January 1 Following Payment to The January 1 Preceding Age 65 times (1 plus .01 times the Number of Full Quarters in The Year Age 65).

     (iii)     If the Class Member was paid before 2003 and on or after age 65, the 4% Account Balance as of the January 1st of the Year of Payment divided by 8 times (1 plus the Indexing Rate in the Year of Payment divided by 4 times the Number of Full Quarters in The Year of Payment Prior to Payment) plus Contribution in the Year of Payment divided by 8.

     (iv)     If the Class Member was paid after 2002 and on or after age 65, the 4% Account Balance as of the January 1st of the Year of Payment divided by 8 times (1 plus .01 times the Number of Full Quarters in The Year of Payment Prior to Payment) plus the Contribution in the Year of Payment divided by 8.

     **G.**     "Age 65 Benefit With 7.5% Projection" means:

     (i)     If the Class Member was paid before age 65, (the 7.5% Account Balance as of the January 1st of the Year of Payment divided by 8 times 1.075 plus the Contribution in the Year of Payment divided by 8) times 1.075 raised to the power of the Number of Full Years From January 1 Following Payment to The January 1 Preceding Age 65 times (1 plus .075/4 times the Number of Full Quarters in The Year Age 65).

(ii)     If the Class Member was paid on or after age 65, the 7.5% Account Balance as of the January 1st of the Year of Payment divided by 8 times (1 plus the Indexing Rate in the Year of Payment divided by 4 times the Number of Full Quarters in The Year of Payment Prior to Payment) plus the Contribution in the Year of Payment divided by 8.

**H.**     "Amount Actually Paid" means:

(i)     The amount the Class Member was actually paid; or

(ii)     If the Class Member has not yet been paid their benefit, the greater of the Cash Balance Account or the Account Balance as of December 31, 2002 times 1.04 raised to the Number of Full Years From January 1, 2002 to The January 1 Preceding Age 65 times (1 plus .01 times the Number of Full Quarters in The Year Age 65) divided by 8 times the Present Value Factor Based Upon PPA Rates determined as if the Class Member were paid on December 31, 2014.

**I.**     "Assumed Payment Date" means December 31, 2014.

**J.**     "Benefit Adjustment Factor Used by the Plan to Determine the Original Annuity Benefit" means the Account Balance on the date of the first monthly annuity payment divided by 12 and divided by the first monthly annuity payment.

**K.**     "Benefit Commencement Date" means the date on which a Class Member first received or commenced receiving his or her benefit (attributable to the Benefit Accrual Period) (*i.e.*, the date the lump sum payment was made, if the benefit was paid as a lump sum; and the date the first annuity was paid as of, if the benefit was paid as an annuity).

**L.**     "Benefit Accrual Period" means a period of time during which a Class Member accrued a benefit which was then paid (or potentially remains owed in the case of the most recent Benefit Accrual Period).  Most Class Members have a single Benefit Accrual Period but a Class Member who was employed for a period of time, terminated employment, had his or her benefit distributed, and then was rehired has two Benefit Accrual Periods.

**M.**     "Cash Balance Account" means the December 31, 2008 account balance as administratively determined by the Plan times 1.04 raised to the Year of Payment minus 2009 times (1 plus .01 times the Number of Full Quarters in The Year of Payment Prior to Payment).

**N.**     "Class" means one or more or all of the 11 classes or subclasses – Classes A, B, C, D, E1, E2, F, G, H, I, and J – as defined and certified by the Court in *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 3:10-cv-00426-wmc (W.D. Wis. Feb. 17, 2012) (Doc. 186), *aff'd*, 702 F.3d 364 (7th Cir. 2012) (same), and *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 3:10-cv-00426-wmc (Doc. 245) (W.D. Wis. Apr. 25, 2013), with two exceptions.  Class G is defined for purposes of this agreement as:  All persons who accrued benefits both before and after January 1, 2003, who commenced annuity payments under the Plan on or after January 1, 2003 and who were at least age 55 but younger than 65 on the date their benefit payments commenced, as well as participants who accrued benefits under the Plan before January 1, 2003 who

5

terminated between 1/1/2002 and 12/31/2002 and who were at least age 55 but younger than 65 when they commenced annuity payments on or after January 1, 2003; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.  Class J is defined for purposes of this agreement as:  All persons who entered the Plan for the first time on or after January 1, 2003 but on or before July 22, 2014 and who were either still employed as of July 22, 2014 or were vested at the point of termination; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

**O.**     "Class Counsel" means Eli Gottesdiener or Gottesdiener Law Firm, PLLC.

**P.**     "Class Counsel's Fees" means the attorneys' fees, costs, and expenses in connection with this Lawsuit to be paid out of the Total Settlement Amount that Class Counsel will submit for consideration and approval by the Court pursuant to Fed. R. Civ. P. 23(h).  Class Counsel Fees do not include Settlement Administration Costs which, to the extent approved by the Court, are to be reimbursed to Class Counsel out of the Total Settlement Amount.

**Q.**     "Class Member" means a member of the Class.

**R.**     "Class Notice" shall have the meaning set forth in Section I.4.B.

**S.**     "Class Participant List" means the list of participant Class Members (with a separate entry for each Benefit Accrual Period for individuals with more than one Benefit Accrual Period), identified by his or her Employee Identifier ("EE ID"), setting forth for each participant Class Member the following information (to the extent this information is available):

(1)     Social Security Number;

(2)     EE ID;

(3)     First and last name and middle name or initial;

(4)     (Last known) address;

(5)     Date of birth;

(6)     Date of death (if applicable);

(7)     Date of hire (or rehire if not the first Benefit Accrual Period);

(8)     Date of entry (or re-entry if not the first Benefit Accrual Period);

(9)     Date of termination;

(10)    Benefit Commencement Date (lump sum payment date or first annuity payment date as applicable);

(11)    Payment status (either still employed ("SE"), lump sum prior to death ("LS"), annuity commenced prior to death ("A"), terminated vested (and not yet paid) ("TV"), deceased, paid a lump sum to beneficiary ("DLS"), deceased, paid

annuity to beneficiary ("DA"), or deceased, deferred payment ("DD");

(12)   Initial Underpayment or Underpaid Value of Annuity Benefit (as applicable);

(13)   Individual Gross Settlement Benefit;

(14)   Individual Net Settlement Benefit;

(15)   Original Annuity Benefit Form (if applicable);

(16)   Original Annuity Benefit (if applicable);

(17)   Beneficiary Date of Death (if applicable);

(18)   Increased Annuity Benefit (as of the Benefit Commencement Date, if applicable); and

(19)   Value of Prior Increased Annuity Benefit, With Interest (if applicable).

**T.**   "Class Participant Successors List" means the list of all successor Class Members known to Defendants to be beneficiaries, estates, or alternate payees under a QDRO of such participant Class Members identified by their EE ID, setting forth for each successor Class Member the following information (to the extent this information is available):

(1)   Social Security number (of successor);

(2)   EE ID (of successor);

(3)   First and last name and middle name or initial (of successor);

(4)   Last known mailing address (of successor);

(5)   EE ID of the Originating Participant (the Class Member through whom the successor Class Member has rights under this Agreement);

(6)   Originating Participant's Social Security Number;

(7)   Originating Participant's name;

(8)   Successor's relationship to Originating Participant (beneficiary, estate or alternate payee) (in any case of multiple beneficiaries and in the case of any alternate payee, Defendants will determine the successor Class Member's share of participant Class Member's net settlement benefit and provide Plaintiffs and the Notice Administrator with the information within their control sufficient for Plaintiffs' Enrolled Actuary to confirm the determination); and

(9)   Percentage of Originating Participant's Benefit Due.

**U.**   "Complaint" means the First Amended Complaint filed on April 7, 2011.

7

**V.**     "Contribution" for a Plan Year means:

   (i)     For Plan Years prior to 2003, the total contribution credited to the Class Member's account based upon the Plan's administrative records.

   (ii)    For Plan Years after 2002 and before 2009 in which the Class Member accrued any contribution credit credited to the Class Member's account balance as reflected in the account balance records maintained by the Plan, 6% of the Participant's Annual Earnings in that Plan Year (as defined in Section 1.4 of the February 2002 Plan Document) plus an additional 1.5% of the Participant's Annual Earnings in that Plan Year if the Class Member is credited with at least 10 years of Vesting Service (including the current year) as of the end of the Plan Year (as determined based upon the Plan's administrative records).

   (iii)   For Plan Years after 2002 in which the Class Member did not accrue any contribution credit credited to the Class Member's account balance and Plan Years after 2008, 0.

**W.**     "Court" means the United States District Court for the Western District of Wisconsin.

**X.**     "Current Annuity Benefit" means the amount of the monthly annuity payment made to the Class Member (or Class Member's beneficiary) during (or for) the month of December 2014.

**Y.**     "Defendants" means Meriter Health Services, Inc. ("Meriter" or the "Company") and/or its successor(s) and the Meriter Health Services Employee Retirement Plan (the "Plan") and/or its successor(s).

**Z.**     "Defendants' Counsel" means:

          Jeremy P. Blumenfeld
          David A. Gomez
          Morgan, Lewis & Bockius LLP
          1701 Market Street
          Philadelphia, PA 19103

          Charles C. Jackson
          Matthew A. Russell
          Jeffrey K. Kmoch
          Morgan, Lewis & Bockius LLP
          77 West Wacker Dr.
          Chicago, IL 60601

**AA.**    "Defendants' Released Parties" means Named Plaintiffs, all Class Members, and Class Counsel.

**BB.**    "Each Annuity Payment Actually Made" means the set of each actual monthly annuity payment actually made to a Class Member (by or on behalf of the Plan), reflecting any reduction in payment due to death(s).

**CC.**    "Employee Identifier" ("EE ID") means the identification number assigned to participants in Plan records by Defendants.

**DD.**    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated and case law thereunder.

**EE.**    "Effective Date" shall mean the first date after which the last of all the following events and conditions has been met or has occurred:

> a)    Named Plaintiffs, Class Counsel, Defendants, and Defendants' Counsel have executed this Agreement;
>
> b)    The Court has, by entry of a Preliminary Approval Order, (i) authorized the Mailed Notice and the Publication Notice to be sent to the Class, (ii) preliminarily found that the Settlement set forth in the Agreement is fair, reasonable, and adequate, subject to any objections that may be raised at the Fairness Hearing, and (iii) approved the method of providing Notice to the Class as set forth herein;
>
> c)    The Court has entered a Final Order and Judgment approving this Agreement; and
>
> d)    Five (5) business days have passed after the latest of the following has occurred:
>
> > (1)    The time to appeal from the Final Order and Judgment has expired and no notice of appeal has been filed;
> >
> > 2)    In the event of an appeal, any appeal from the Final Order and Judgment has been finally dismissed;
> >
> > 3)    In the event of an appeal, the Final Order and Judgment has been affirmed on appeal substantially in the form of the Final Order and Judgment entered by the Court;
> >
> > 4)    The time to petition for review with respect to any appellate decision affirming the Final Order and Judgment has expired; and

If a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in the affirmance of the Final Order and Judgment substantially in the form of the Final Order and Judgment entered by the Court.

**FF.**   "Final Approval" of this Settlement occurs when a final approval order has been issued from the Court and either (i) the time to appeal the Court's final approval order has expired, or (ii) all appellate review of the final approval order has concluded and the final approval order has been affirmed.

**GG.**   "Immediate Annuity Factor Based Upon 417(e) Rates in Effect For 2014" means the cost of an immediate annuity, commencing on January 1, 2015, based upon the Class Member's age on January 1, 2015, the Benefit Form That the Benefit is Currently Being Paid, the applicable interest rate as defined in IRC § 417(e)(3)(c) for the month of November 2013, the mortality table prescribed by the Secretary of the Treasury under IRC § 417(e)(3) for 2014 and the actuarial formulas being used by the Plan as of July 1, 2014.  Further, with the first segment rate applied through December 31, 2019 without regard to when the benefit commenced, and the second segment rate applied through December 31, 2034.

**HH.**   "Increased Annuity Benefit" means the product of:

    (i)     The Current Annuity Benefit times

    (ii)    The Underpaid Annuity Percentage times

    (iii)   The Relative Litigation Risk Factor times the Net Settlement Percentage.

**II.**   "Indexing Rate" for a particular year, for purposes of calculating the Individual Gross Settlement Benefit and Individual Net Settlement Benefit in accordance with the Plan of Allocation outlined below, means: for Plan Years prior to 2003, the actual Indexing Rate applied by the Plan; for Plan Years between 2003 and 2013, inclusive, the Indexing Rate estimated by Plaintiffs to be the greater of 4% or 75% of the actual rate of return on Plan assets.  To facilitate the settlement, the Indexing Rate for 2014 will be assumed to be 7.5%.

The Indexing Rates are:

| Plan Year | Indexing Rate |
|---|---|
| 1987 | 4.00% |
| 1988 | 8.50% |
| 1989 | 15.00% |
| 1990 | 4.00% |
| 1991 | 15.00% |
| 1992 | 4.00% |
| 1993 | 9.50% |
| 1994 | 4.00% |
| 1995 | 20.00% |
| 1996 | 12.00% |
| 1997 | 15.00% |
| 1998 | 12.00% |
| 1999 | 11.50% |
| 2000 | 4.00% |
| 2001 | 4.00% |

| | |
|---|---|
| 2002 | 4.00% |
| 2003 | 15.30% |
| 2004 | 7.13% |
| 2005 | 10.13% |
| 2006 | 7.87% |
| 2007 | 4.00% |
| 2008 | 4.00% |
| 2009 | 12.35% |
| 2010 | 10.65% |
| 2011 | 4.00% |
| 2012 | 8.78% |
| 2013 | 7.58% |
| 2014 | 7.5% |

**JJ.**     "Indexing Rate in the Year of Payment" means the Indexing Rate (from the Indexing Rates as defined here, in this Section I) in the Year of Payment.

**KK.**     "Individual Gross Settlement Benefit" means the relative weighting of the value of the Class Member's claims as determined in accordance with the Plan of Allocation.

**LL.**     "Individual Net Settlement Benefit" means the allocation of the Total Net Settlement Benefit to each Class Member under the Plan of Allocation.

**MM.**     "Interest Accumulation Factor" is 1.05 raised to the number of Years and fractional Years (measured in completed months) from the Benefit Commencement Date until January 1, 2015.

**NN.**     The "Lawsuit" means *Johnson, et al. v. Meriter Health Services Employee Retirement Plan, et al.*, 3:10-cv-00426-wmc (W.D. Wis.) commenced in 2010 and pending in the Court.

**OO.**     "Lump Sum Value of The Age 65 Benefit With 4% Projection and 1.2 Actuarial Factors" means the Age 65 Benefit With 4% Projection multiplied by the greater of the Present Value Factor Based Upon PBGC Rates and the Present Value Factor Based Upon 5%.

**PP.**     "Lump Sum Value of The Age 65 Benefit With 4% Projection Times Factor of 8" means the Age 65 Benefit With 4% Projection multiplied by 8.

**QQ.**     "Lump Sum Value of The Age 65 Benefit With 7.5% Projection and 1.2 Actuarial Factors" means the Age 65 Benefit With 7.5% Projection multiplied by the greater of the Present Value Factor Based Upon PBGC Rates and the Present Value Factor Based Upon 5%.

**RR.**     "Lump Sum Value of The No Future Indexing Benefit Times Factor of 8" means:

(i)     If the Class Member was paid before January 1, 2002, the Account Balance as of the January 1st of the Year of Payment times (1 plus the Indexing Rate in the Year of Payment divided by 4 times the Number of Full Quarters in The Year of Payment Prior to Payment) plus the

11

Contribution in the Year of Payment.

(ii)    If the Class Member was paid after January 1, 2002, the 4% Account Balance times (1 plus .01 times the Number of Full Quarters in The Year of Payment Prior to Payment) plus the Contribution in the Year of Payment.

**SS.**    "Motion for Preliminary Approval" shall have the meaning set forth in Section I.3.

**TT.**    "Named Plaintiffs" or "Plaintiffs" means the representatives of certified Classes A through J (*i.e.*, Phyllis J. Johnson, Madge E. English, Claudia M. Greco, Joyce E. Emerson, Sue L. Hansen, Donna L. Smith, Linda L. Muller, Michele L. McCabe, Krystal J. Wages, Ann Marie Stephens, Jill E. Anthony) and all of the members of the 11 classes or subclasses (including Tammy J. Wetley (f/k/a Boyd).

**UU.**    "Named Plaintiffs' Incentive Award" means the monetary amount awarded by the Court, if any, to the 12 persons individually identified in the definition of "Named Plaintiffs" above (*i.e.*, each of the 11 class representatives and Tammy J. Wetley) in recognition of their assistance in the prosecution of this Lawsuit.

**VV.**    "The Net Settlement Percentage" means the Total Net Settlement Benefit as a percentage of the Total Gross Settlement Benefit, with that percentage adjusted to accommodate that no Individual Net Settlement Benefit shall be less than $250.

**WW.**    "Notice Plan" shall have the meaning set forth in Section I.4.B.

**XX.**    "Number of Full Quarters in The Year Age 65" means:

(i)    0 if the Class Member's birthday is prior to March 1;

(ii)    1 if the birthday is on or after March 1, but before June 1;

(iii)    2 if the birthday is on or after June 1, but before September 1;

(iv)    3 if the birthday is on or after September 1 but before December 1; and

(v)    4 if the birthday is on or after December 1.

**YY.**    "Number of Full Quarters in The Year of Payment Prior to Payment" means:

(i)    0 if the Class Member was paid prior to March 31 in the Year of Payment;

(ii)    1 if paid on or after March 31, but before June 30;

(iii)    2 if paid on or after June 30, but before September 30; and

(iv)    3 if paid on or after September 30.

**ZZ.**   "Number of Full Years From January 1, 2002 to The January 1 Preceding Age 65" means the year in which the Class Member was born plus 65 minus 2002.

**AAA.**   "Number of Full Years From January 1 Following Payment to The January 1 Preceding Age 65" means the year in which the Class Member was born plus 64 minus the Year of Payment.

**BBB.**   "Number of Years From Payment to Age 65" means the greater of 0 or ((the Class Member's year of birth plus (the Class Member's month of birth divided by 12) plus 1/12) reduced by (The Year of Payment plus (the month containing the Benefit Commencement Date divided by 12) plus an additional 1/12 if the Benefit Commencement Date is after the 15th of the month)).

**CCC.**   "Parties" collectively, or "Party" in the singular, means the Named Plaintiffs and/or Defendants.

**DDD.**   "PBGC i1 Rate" means the Deferred Annuities i1 rate as of the January 1st of the Year of Payment, as published by the Pension Benefit Guaranty Corporation ("PBGC") in the "Interest Rates for Determining Lump Sums."

**EEE.**   "PBGC i2 Rate" means the Deferred Annuities i2 rate as of the January 1st of the Year of Payment, as published by the PBGC in the "Interest Rates for Determining Lump Sums."

**FFF.**   "PBGC i3 Rate" means the Deferred Annuities i3 rate as of the January 1st of the Year of Payment, as published by the PBGC in the "Interest Rates for Determining Lump Sums."

**GGG.**   "PBGC Immediate Interest Rate" means the Immediate Rate as of the January 1st of the Year of Payment, as published by the PBGC in the "Interest Rates for Determining Lump Sums."

**HHH.**   "Plan of Allocation" means the plan for distributing (or allocating) the Total Net Settlement Benefit as between Class Members.  The Individual Net Settlement Benefit is defined in Section II of this Agreement.

**III.**   "Plaintiff-Releasors" means Plaintiffs and each Class Member, together with each of their successors, assigns, beneficiaries, estates, dependents, heirs, administrators, and executors.

**JJJ.**   "Plaintiffs' Released Parties" means Defendants and UnityPoint Health, together with each of their parents, subsidiaries, and each of their affiliates, predecessors, successors, assigns, and current or former partners, principals, employees, employee benefit plans, employee benefit plan fiduciaries, employee benefit plan trustees, employee benefit plan administrators, insurers, agents, advisors, consultants, attorneys, representatives, any committees to the Plan, former committees to the Plan, or their members and former members, or any persons acting or purporting to act on their behalf.

13

**KKK.** "Plan Administration Costs" means the costs incurred by Defendants in connection with carrying out their obligations under the terms of this Agreement, including, but not limited to:  (a) the cost of distributing final Individual Net Settlement Benefits to Class Members who have previously received one or more benefit payments from the Plan; (b) the cost of providing Plaintiffs with a complete list of all known Class members including full name and most recent address available to Defendants so that Plaintiffs can provide that information to the Notice Administrator and effectuate the Notice Plan; and (c) the costs associated with compliance with the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").  Plan Administration Costs (but excluding Settlement Administration Costs) shall be Defendants' sole responsibility and shall not be deducted from the Total Settlement Amount.

**LLL.** "Preliminary Approval Order" means an order substantially in the form attached as **Exhibit 1**.

**MMM.** "Present Value Factor Based Upon 5%" means the cost of an immediate annuity $1 per year payable in the form of a life only annuity, payable monthly, commencing at the later of age 65 or the age the Class Member was on the Benefit Commencement Date, determined based upon an interest rate of 5%, the UP-1984 Mortality Table, and standard actuarial formulas, divided by 1.05 raised to the power of the Number of Years From Payment to Age 65.

**NNN.** "Present Value Factor Based Upon GATT Rates" means the cost of an immediate annuity $1 per year payable in the form of a life only annuity, payable monthly, commencing at the later of age 65 or the age the Class Member was on the Benefit Commencement Date, determined based upon the applicable interest rate, the mortality table prescribed by the Secretary of the Treasury under IRC § 417(e)(3) (*i.e.*, the 1994 GAR mortality table), and standard actuarial formulas, divided by (1 plus the applicable interest rate) raised to the power of the Number of Years From Payment to Age 65.  For purposes of this paragraph, the applicable interest rate means the 30-year Treasury bond rate, as promulgated by the Treasury Department for the month of December immediately preceding the Year of Payment.

**OOO.** "Present Value Factor Based Upon PBGC Rates" means the cost of an immediate annuity $1 per year payable in the form of a life only annuity, payable monthly, commencing at the later of age 65 or the age the Class Member was on the Benefit Commencement Date, determined based upon the PBGC Immediate Interest Rate, the UP-1984 Mortality Table, and standard actuarial formulas divided by (1 plus the PBGC i1 Rate) raised to the power of (the lesser of 7 or the Number of Years From Payment to Age 65) further divided by (1 plus the PBGC i2 Rate) raised to the power of (the greater of 0 or (the lesser of 8 or (the Number of Years From Payment to Age 65 minus 7))) and further divided by (1 plus the PBGC i3 Rate) raised to the power of (the greater of 0 or (the Number of Years From Payment to Age 65 minus 15.

**PPP.** "Present Value Factor Based Upon PPA Rates" means the cost of a deferred life only annuity, commencing at the later of age 65 or the age the class member was on the Benefit Commencement Date, determined based upon the applicable interest rate as defined in IRC § 417(e)(3)(c) for the month of November immediately preceding the Year of Payment, the mortality table prescribed by the Secretary of the Treasury under IRC § 417(e)(3) for the Year of

Payment adjusted to reflect no mortality prior to age 65, and the actuarial formulas being used by the Plan as of July 1, 2014.

**QQQ.** "Released Claims" means any and all past, present and future causes of action, claims, damages, awards, equitable, legal, and administrative relief, interest, demands or rights that are based upon, related to, or connected with, directly or indirectly, in whole or in part, the allegations, facts, subjects or issues that have been, could have been, may be or could be set forth or raised in the Lawsuit, including but not limited to any and all claims related to the Plan, the administration of the Plan or benefits calculated under the Plan, claims for breach of fiduciary duty, claims relating to calculation of benefits under Section 417(e) of the Internal Revenue Code, claims related to the sufficiency of any communications to Plan participants, crediting rate claims, claims seeking additional pension benefits, claims that participants are entitled to lump sum payments in excess of their communicated account balances, claims relating to the availability or unavailability of lump sum payments or other benefit distributions prior to normal retirement age, claims challenging the calculation or application of the Plan's Indexing Credit, claims relating to the 2003 Plan amendment or disclosures about the 2003 Plan amendment, claims relating to the calculation of benefits for lump sum or annuitant recipients, claims relating to disclosures or communications relating to the Plan that Class Members did or did not receive, claims related to the alleged conversion of the Plan to a cash balance plan in 2009, claims related to any amendments to the Plan prior to the Effective Date, claims relating to the content of any Mailed Notice, Publication Notice, benefit election form, or related disclosure distributed in connection with this Settlement, claims that concern or relate in any way to the sufficiency or correctness of amounts credited to participants' accounts, benefit accruals or benefit accrual rates, lump sum and annuity distributions by the Plan, or the interest rates, mortality assumptions or actuarial factors used in calculating participants' benefits, and claims relating to the administration of Settlement or the calculation of Individual Settlement Amounts.  Released Claims also includes any claim challenging or disputing the amount to which any Class Member is entitled under the Plan.  The Released Claims include claims that are known or unknown, suspected or unsuspected, discovered or undiscovered.

Notwithstanding the foregoing, Released Claims do not include any individual participant's or beneficiary's claim (an "Individual Claim") in the case of Class Members paid prior to the deadline for the distribution of the Mailed Notice based on factual errors regarding that participant's salary, age, or years of service, or other individualized circumstance, provided that Effective Notice is given by the participant.  Effective Notice means individual written notice to Class Counsel and Defendants' Counsel of such claim and the grounds therefor, received no later than the deadline set by the Court for objecting to the Settlement.  Any Individual Claim for which Effective Notice is not timely provided shall be included as a Released Claim.  Notwithstanding the foregoing, Released Claims do not include a claim that seeks to enforce the obligations imposed in this Settlement.

In the case of Class Members paid after the deadline for the distribution of the Mailed Notice, Released Claims do not include (1) any individual participant's or beneficiary's Individual Claim based on factual errors committed before distribution of the Mailed Notice regarding that participant's salary, age, or years of service, or other individualized circumstance provided that Effective Notice is given by the participant as described in the preceding paragraph or (2) any individual participant's or beneficiary's Individual Claim based on factual errors

occurring after distribution of the Mailed Notice regarding that participant's salary, age, or years of service, or other individualized circumstance.  For avoidance of doubt, to the extent a Class Member paid after the deadline for the distribution of the Mailed Notice contends that there was a factual error regarding the Class Member's salary, age, or years of service, or other individualized circumstance that affected the Class Member's account balance under the Plan, the factual error shall be deemed to have occurred when the amount was credited, or should have been credited, to the Class Member's account under the Plan.

**RRR.**  "Relative Litigation Risk Factor" equals:  50% if the Class Member's Benefit Commencement Date was before September 1, 1995; 100% if the Class Member's Benefit Commencement Date was on or after September 1, 1995 and the Class Member's date of entry is before January 1, 2003; and 20% if the Class Member's date of entry is after January 1, 2003.

**SSS.**  "Settlement" or "Settlement Agreement" or "Agreement" means the settlement embodied in this Settlement Agreement.

**TTT.**  "Settlement Administration Costs" means the costs and/or expenses incurred by Class Counsel on behalf of Plaintiffs and the Classes in connection with carrying out the terms of this Agreement, including but not limited (a) all Notice Costs; (b) the cost of designing the Plan of Allocation; and (c) the cost of calculating Class Members' estimated Individual Net Settlement Benefits (which the Parties intend will be included in the Mailed Notice to be sent to each individual Class Member) and final Individual Net Settlement Benefits in accordance with the Plan of Allocation.  Settlement Administration Costs (but excluding Plan Administration Costs) shall be Plaintiffs' sole responsibility and shall be deducted from the Total Settlement Amount.

**UUU.**  "Total Gross Settlement Benefit" means the sum of the Individual Gross Settlement Benefits for all Class Members.

**VVV.**  "Total Net Settlement Benefit" means the Total Settlement Amount less (1) the amount of Class Counsel's Fees approved by the Court; (2) the sum of Named Plaintiffs' Incentive Awards approved by the Court; and (3) the total amount of Settlement Administration Costs approved by the Court.

**WWW.**  "Total Settlement Amount" means the $82 million gross and total settlement as defined in Section I.2 under this Agreement.

**XXX.**  "Value of Prior Increased Annuity Benefit, With Interest" means Value of the Prior Annuity Underpayments (as defined in Section II.7.B.4(i)) times the Relative Litigation Risk Factor and times the Net Settlement Percentage.

**YYY.**  "Year of Payment" means the calendar year containing the Benefit Commencement Date.

**2.**   **Total Settlement Amount.**

The Total Settlement Amount is $82,000,000.00.  This is the total amount to be paid by the Plan in settlement of all claims.  Neither the Plan, nor any other Plaintiffs' Released Party,

shall have any liability or responsibility for any payment to Plaintiff-Releasors aside from the Total Settlement Amount and Plan Administration Costs.

The Parties intend and agree that all payments that will be made by the Plan from the Total Settlement Amount, other than Named Plaintiffs' Incentive Awards and Individual Net Settlement Benefits, shall constitute payment of reasonable expenses of the Plan.  The Parties intend and agree that the payment of Individual Net Settlement Benefits and Named Plaintiffs' Incentive Awards made by the Plan shall constitute payment of Plan benefits.

**3.     Motion for Preliminary Approval.**

   **A.**   The Parties agree to seek approval of this Agreement by the Court.  Class Counsel and the Named Plaintiffs agree to recommend approval of the Settlement to all Class Members.  The Parties agree to undertake their best efforts, including all steps that may become necessary by order of the Court or otherwise, to effectuate the terms and purposes of this Agreement.  Class Counsel and the Named Plaintiffs agree to undertake their efforts to secure the Court's approval, and to oppose any appeals from or challenges to a Final Order and Judgment approving this Agreement.  Defendants will not oppose Plaintiffs' requests for approval of Plaintiffs' Plan of Allocation or Named Plaintiffs' Incentive Awards.

   **B.**   Within five (5) days of the execution of this Agreement by the Parties or such other date as may be acceptable to the Court, the Plaintiffs shall submit this Agreement, including all attached Exhibits, to the Court and seek to obtain from the Court a Preliminary Approval Order substantially in the form of **Exhibit 1** to this Agreement.

   **C.**   The Preliminary Approval Order, for the purposes of settlement only, would modify the definitions of:

      (i)    Class G such that it is comprised of:  All persons who accrued benefits both before and after January 1, 2003, who commenced annuity payments under the Plan on or after January 1, 2003 and who were at least age 55 but younger than 65 on the date their benefit payments commenced, as well as participants who accrued benefits under the Plan before January 1, 2003 who terminated between 1/1/2002 and 12/31/2002 and who were at least age 55 but younger than 65 when they commenced annuity payments on or after January 1, 2003; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order; and

      (ii)   Class J such that it is comprised of:  All persons who entered the Plan for the first time on or after January 1, 2003 but on or before July 22, 2014 and who were either still employed as of July 22, 2014 or were vested at the point of termination; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order;

(iii)    Approve the proposed Notice Plan and form of notice to Settlement Class Members; and CAFA Notice; and

(iv)    Schedule a Final Fairness Hearing.

**D.**    The Court's failure to approve any of Plaintiffs' proposed Plan of Allocation or Class Counsel's Fees shall not disturb the other terms of the Settlement, including the Total Settlement Amount or the Class Members' releases of Released Claims.  In such event, Plaintiffs shall propose modifications to the Plan of Allocation and/or Class Counsel's Fees to the Court's satisfaction (without prejudice to Plaintiffs' right to appeal from any such denial of approval), without altering in any way the Total Settlement Amount or other provisions of this Agreement.

**4.**    **Notice.**

The Parties will recommend to the Court that Notice to the Class Members of this Settlement be provided and funded as follows, which the Parties agree is sufficient under the Due Process Clause of the United States Constitution:

**A.**    Within five (5) business days of entry of the Preliminary Approval Order, Plaintiffs will provide the Notice Administrator with a copy of the Participant List in Excel format, together with the name, title, email address and telephone number(s) of at least one responsible official for Defendants with whom the Notice Administrator may communicate regarding the Participant List in the process of providing appropriate notice to the Class.  (Within three (3) business days of entry of the Preliminary Approval Order, Defendants shall provide Plaintiffs with the name, title, email address and telephone number(s) of at least one responsible official for Defendants with whom the Notice Administrator may communicate regarding the Participant List in the process of providing appropriate notice to the Class).

**B.**    The Mailed Notice shall be substantially in the form of **Exhibit 2**, subject to the Court's approval.

**C.**    The Notice Administrator will begin mailing the Mailed Notice no later than twenty-one (21) days after the entry of the Court's Preliminary Approval Order, and the Notice Administrator will complete such mailing no later than thirty (30) days after the entry of such Order.  Any Mailed Notice returned to the Notice Administrator by the United States Postal Service ("USPS") as undeliverable with a forwarding address will be re-mailed by the Notice Administrator.  The name and address of any Mailed Notice returned to the Notice Administrator by the USPS as undeliverable without a forwarding address will be submitted to an address search firm utilized by the Notice Administrator.  If an updated address is received from the address search firm, the Notice Administrator will re-mail the Mailed Notice and provide such information to Class Counsel and Defendants.

**D.**    The Notice Administrator will publish the Publication Notice, substantially in the form of **Exhibit 3**, in *USA Today* within thirty (30) days of the entry of the Court's Preliminary Approval Order.

**5.**     **Court Approval.**

      **A.**     Within seven (7) days of the scheduled Fairness Hearing, the Named Plaintiffs shall move for the Court's final approval of this Settlement through entry of a Order and Judgment Finally Approving the Settlement substantially in the form of **Exhibit 4** to this Agreement.  Defendants will not oppose Plaintiffs' requests for approval of Plaintiffs' Plan of Allocation or Named Plaintiffs' Incentive Awards.

      **B.**     If any person appeals from the Final Order and Judgment approving the Settlement, Plaintiffs will use their best efforts to oppose the appeal.  The terms of this Agreement are subject to the Court's approval of the Final Order and Judgment and, in the event such approval is appealed from, the termination of all such appeals with the approval of the Final Order and Judgment intact.  If the Court or any appellate court enters an order altering this Agreement in a way that would likely materially and adversely affect a Party, that Party may void the Agreement within five (5) business days from the date it receives notice of entry of the Court's or an appellate court's entry of such an order by giving written notice of intent to void the Settlement to the opposing Party's counsel.

**6.**     **Costs and Attorneys' Fees.**  All Parties will bear their own costs, expenses, and attorneys' fees associated with the Lawsuit except as otherwise expressly provided in this Settlement; the Named Plaintiffs and Class Counsel will ask the Court to award attorneys' fees and expenses, Named Plaintiffs' Incentive Awards, and Settlement Administration Costs solely out of the Total Settlement Amount.

**<u>Section II – Plan of Allocation</u>**

**7.**     The Plan of Allocation is the calculation method by which the Total Net Settlement Benefit is to be allocated among Class Members.  The Individual Net Settlement Benefit is the Class Member's share of the Total Net Settlement Benefit.  The allocation of the Total Net Settlement Benefit is in proportion to each Class Member's relative value of recovery had the litigation continued as reflected in three plaintiff-favorable scenarios weighted to reflect Class Counsel's assessment of the relative likelihood of success of Class Members' claims in light of merits and statute of limitations risks.  The Class Member's Individual Net Settlement Benefit is the greater of $250, or the Class Member's Individual Gross Settlement Benefit multiplied by the Net Settlement Percentage.  In other words, the Individual Net Settlement Benefit is equal to the Individual Gross Settlement Benefit times the Net Settlement Percentage, but not less than $250. ($250 also shall known as the "Minimum Settlement Payment.").  The Net Settlement Percentage is adjusted (through iterative approximation) until the sum of the Individual Net Settlement Benefits for all Class Members equals the Total Net Settlement Benefit.  The Court may modify the Plan of Allocation without affecting the validity of this Settlement.  Unless modified by the Court, the allocation of the Total Net Settlement Benefit to each individual in the form of the Individual Net Settlement Benefit shall be as follows:

      **A.**     **For purposes of this Plan of Allocation, Class Members are classified into one of three calculation groups:**

(1)      Originally paid a lump sum benefit;

(2)      Originally paid an annuity benefit; or

(3)      Benefit not yet paid.

**B.      Individual Gross Settlement Benefit determination for Class Members originally paid a lump sum benefit.**

(1)      For Class Members originally paid a lump sum benefit, three potential lump sum amounts will be determined as follows:

(i)      **The 4% Projection Lump Sum Benefit** which equals the greatest of:

a.      The Lump Sum Value of The Age 65 Benefit With 4% Projection and 1.2 Actuarial Factors;

b.      The Lump Sum Value of The No Future Indexing Benefit Times Factor of 8; and

c.      If the Class Member was paid after January 1, 2002, the 417(e) Minimum Lump Sum Benefit With 4% Projection.

(ii)      **The 7.5% Projection Lump Sum Benefit** which equals the greatest of:

a.      The Lump Sum Value of The Age 65 Benefit With 7.5% Projection and 1.2 Actuarial Factors;

b.      The Lump Sum Value of The No Future Indexing Benefit Times Factor of 8; and

c.      If the Class Member was paid after January 1, 2002, the 417(e) Minimum Lump Sum With 7.5% Projection.

(iii)      **The Projected 8 Lump Sum Benefit** which equals the greatest of:

a.      The Lump Sum Value of The Age 65 Benefit With 7.5% Projection and 1.2 Actuarial Factors;

b.      The Lump Sum Value of The Age 65 Benefit With 4% Projection Times Factor of 8; and

c.      If the Class Member was paid after January 1, 2002, the 417(e) Minimum Lump Sum With 7.5% Projection.

(2)      The Initial Underpayment is the excess of the following amount over the Amount Actually Paid Reflecting No Additional Accruals After January 1, 2009:

(i)      If the Class Member was paid before March 1, 1997, the sum of:

20

        a.      80% of the 4% Projection Lump Sum Benefit;

        b.      14% of the 7.5% Projection Lump Sum Benefit; and

        c.      6% of the Projected 8 Lump Sum Benefit.

    (ii)     If the Class Member was paid on or after March 1, 1997, the sum of:

        a.      20% of the 4% Projection Lump Sum Benefit;

        b.      56% of the 7.5% Projection Benefit; and

        c.      24% of the Projected 8 Lump Sum Benefit.

(3)     The Individual Gross Settlement Benefit for Class Members originally paid a lump sum is equal to the Initial Underpayment times the Interest Accumulation Factor and times the Relative Litigation Risk Factor.

**C.    Individual Gross Settlement Benefit determination for Class Members originally paid an annuity benefit.**

(1)     For Class Members originally paid an annuity benefit, two potential annuity benefits will be determined:

    (i)     **The 4% Projection Annuity Benefit** which equals the product of:

        a.      The Age 65 Benefit With 4% Projection; and

        b.      The Benefit Adjustment Factor Used by the Plan to Determine the Original Annuity Benefit.

    (ii)     **The 7.5% Projection Annuity Benefit** which equals the product of:

        a.      The Age 65 Benefit With 7.5% Projection; and

        b.      The Benefit Adjustment Factor Used by the Plan to Determine the Original Annuity Benefit.

(2)     The Underpaid Monthly Annuity is the excess of the following amount over the Original Annuity Benefit:

    (i)     If the Class Member's Benefit Commencement Date was before March 1, 1997, the sum of:

        a.      90% of the 4% Projection Annuity Benefit; and

        b.      10% of the 7.5% Projection Annuity Benefit.

    (ii)    If the Class Member's Benefit Commencement Date was on or after March 1, 1997, the sum of:

        a.    60% of the 4% Projection Annuity Benefit; and

        b.    40% of the 7.5% Projection Annuity Benefit.

(3)    The Underpaid Annuity Percentage is the Underpaid Monthly Annuity as a percentage of the Original Annuity Benefit.

(4)    The Underpaid Value of Annuity Benefit is equal to the sum of:

    (i)    The Value of the Prior Annuity Underpayments which equals the sum of, for Each Annuity Payment Actually Made, the product of::

        a.    The Annuity Payment Actually Made;

        b.    The Underpaid Annuity Percentage; and

        c.    1.05 raised to the number of Years and fractional Years (measured in completed months) from the date the Annuity Payment Actually Made was paid until January 1, 2015.

    (ii)    The Value of the Future Annuity Underpayments which equals the product of:

        a.    The Immediate Annuity Factor Based Upon 417(e) Rates in Effect For 2014, the participant's (and beneficiary's, if applicable) age(s) on January 1, 2015 (measured in Years and Fractional Years based upon age in rounded months), and the Benefit Form That the Benefit is Currently Being Paid in (for example, if the benefit was originally in the form of a 50% QJSA, but the participant has died, then the current benefit form would be a life only annuity payable to the beneficiary);

        b.    The Current Annuity Benefit; and

        c.    The Underpaid Annuity Percentage.

(5)    The Individual Gross Settlement Benefit for Class Members originally paid an annuity benefit is equal to the Underpaid Value of Annuity Benefit times the Relative Litigation Risk Factor.

**D.** **Individual Gross Settlement Benefit determination for Class Members who have not yet been paid.** For Class Members not yet paid, the Individual Gross Settlement Benefit is equal to what the Individual Gross Settlement Benefit would be if the Class Member were paid a lump sum on December 31, 2014.

**E.     Treatment of Rehires.**  The Individual Gross Settlement Benefit for any Class Member who has more than one Benefit Accrual Period (*i.e.*, the Class Member was employed for a period of time, terminated, had his or her benefit distributed, and then was re-employed) will equal the sum of the Individual Gross Settlement Benefits, independently determined, for each Benefit Accrual Period.  The distribution of the Net Settlement Benefit is based upon the status of the benefit attributable to the most recent Benefit Accrual Period.

**F.     Determination of Individual Gross Settlement Benefit for deceased Class Members.**  Any lump sum benefit that was paid to a Class Member who has since died will be calculated as if the Class Member were still alive.  Any distribution to a Class Member who has died will be distributed to the Class Member's beneficiary based upon the beneficiary at the time of death (if the Benefit Commencement Date is after the date of death or if the benefit was paid in the form of an annuity with a survivor benefit), or to the Class Member's estate (if the Benefit Commencement Date precedes the date of death and the benefit was not paid in the form of an annuity with a survivor benefit).  If the Individual Net Settlement Benefit is owed to the Class Member's beneficiary and the Class Member's beneficiary has died, then the Individual Net Settlement Benefit shall be paid to the Class Member's beneficiary's estate.

**G.     Treatment of Qualified Domestic Relationship Orders (QDROs).**  If a Class Member's benefit is or was subject to a QDRO, then any benefit payment to an alternate payee will be treated as a payment to the Class Member for purposes of determining the Individual Gross Settlement Benefit, but any distribution of the Individual Net Settlement Benefit will be made pursuant to the terms of the QDRO.

## Section III - Distribution of the Individual Net Settlement Benefits

**8.**     The Individual Net Settlement for each individual Class Member will be distributed as follows:

**A.**     The Individual Net Settlement Benefit due Class Members who previously received a lump sum shall be paid as an additional lump sum as either a direct payment or a rollover to an IRA or another qualified plan that accepts rollovers as directed by the Class Member in his or her response to the Mailed Notice.

(1)     If a Class Member elects to rollover less than 100% of his or her tax-qualified Individual Net Settlement Benefit, the balance will be paid directly to the Class Member as a distribution, net of Defendants' Withholding for Income Tax.  If a Class Member does not affirmatively and timely elect within five (5) business days prior to the Fairness Hearing either the rollover or direct payment option, he or she will be deemed to have elected the direct payment option.  However, nothing prevents Defendants from exercising their discretion to honor election forms received or perfected on an untimely basis, although Defendants have no obligation to do so.

(2)     Defendants shall use best efforts to make the required payments under this Agreement within 30 days of the Effective Date.  Mailing a check to the address on the Participant List as modified by the information provided by the Notice

Administrator or on a timely election form, or making a transfer to a rollover institution according to the information provided to Defendants, shall constitute the making of the required payment. Defendants shall make their proofs of mailings and transfers available to Class Counsel upon demand within 5 calendar days of such written demand. To the extent that such payment is not timely made or such credits are not timely applied in accordance with the 30-day deadline, then Defendants will pay/credit each affected Member, in addition to the Individual Net Settlement Benefit, interest from the Effective Date on any amount that was not timely paid/credited, such interest to be calculated at the federal post-judgment interest rate in effect on the Effective Date. Defendants shall make proofs of all interest payments/credits available to Class Counsel upon demand within 5 calendar days of such written demand.

**B.** The Individual Net Settlement Benefit due Class Members who commenced their benefit in the form of an annuity shall be paid in two ways: (i) a catch-up lump sum payment equal to the Value of Prior Increased Annuity Benefit, With Interest; and (ii) increased future annuity payments in the same form as the annuity currently being paid equal to Increased Annuity Benefit. The timing of the payment of the catch-up lump sum, which will be made in the form of a direct payment (not available for rollover), shall be governed by Section III.8.A.2.

**C.** For each Class Member who has not elected to receive a distribution from the Plan, the Class Member's Individual Settlement Amount shall be recognized in the form of an increase to the Class Member's account balance in the Plan as of January 1, 2015. Indexing after December 31, 2014 shall be done at the Plan's regular indexing rate as set forth in the Plan. A Class Member's future accruals under the Plan or any other plan maintained by the plan sponsor of the Plan must be the same for a Class Member as it would be for an individual with the identical age, service, compensation, and hours history, but who was not a Class Member.

## Section IV - Payment of the Total Settlement Amount

**9.** On or after the Effective Date and in accordance with III.8.A, Defendants shall pay or credit the Total Settlement Amount (except for future annuity payments) as follows:

(1) Defendants shall distribute the required additional lump sum payments to all Class Members who previously received a lump sum benefit in accordance with Section III.8.A;

(2) Defendants shall distribute a single sum payout representing missed prior annuity payments and commence future payments (effective January 1, 2015) of any Class Member who previously commenced benefit payments in the form of an annuity in accordance with Section III.8.B;

(3) Defendants shall credit the Plan accounts of all Class Members who have not yet commenced their benefits under the Plan in accordance with Section III.8.C;

(3) Defendants shall wire Class Counsel's Fee as Class Counsel's court-approved attorneys' fees and expenses, plus all court-approved Settlement Administration Costs; and

(4)      Defendants shall wire or send by check the Named Plaintiffs' Incentive Awards.

If Defendants fail to distribute any of the above funds in accordance with this Section, Defendants shall pay, in addition to the Total Settlement Amount, interest on any amounts that are not paid during the period that such amounts are past due at the federal post-judgment interest rate in effect on the Effective Date.

## Section V – Additional Provisions

**10.      Cooperation to Secure Final Approval and Actions Required to Implement this Agreement.**

**A.**      Named Plaintiffs, Class Counsel, and Defendants agree to recommend approval of and support this Agreement to the Court and to the Class Members and undertake good faith efforts to perform any and all of that Party's obligations under this Agreement.  The Parties covenant and agree that they will take all reasonable steps, reasonably cooperate with one another, and fully support one another in obtaining Final Approval, including all steps that may become necessary by order of the Court or otherwise, to effectuate the terms and purposes of this Agreement, to secure the Court's approval, and to oppose any appeals from or challenges to a Final Order and Judgment approving this Agreement.  Further, the Parties shall cooperate to effectuate the dismissal of the Lawsuit with prejudice upon Final Approval of the Settlement. For the avoidance of doubt, any order of the Court conditioning Final Approval of the Settlement on a change in the terms of the Settlement that would impose additional material obligations on Defendants or Plaintiffs and Class Members shall be deemed a denial of Final Approval.

**B.**      Meriter shall amend the Plan consistent with this Settlement upon Final Approval of the Settlement.

**C.**      The Parties will work in good faith to resolve any disputes or disagreements concerning the determination of the amount of any final Individual Gross Settlement Benefit or final Individual Net Settlement Benefit.  Plaintiffs will determine the amounts of the Individual Gross Settlement Benefits, the Individual Net Settlement Benefits, and all other amounts on the Class Participant List and Class Participant Successors List.  Defendants shall provide Plaintiffs' Enrolled Actuary and Class Counsel with sufficient information (including providing live spreadsheets) to allow Plaintiffs' Enrolled Actuary to complete such calculations.  Defendants shall timely respond to questions regarding the data or calculations.

**11.      Maintenance of Funded Status.**  Meriter shall be responsible for funding the Plan to pay the monies due under this Settlement Agreement.  Meriter shall contribute to the Plan such funds as determined by the Plan's Enrolled Actuary to maintain the Plan at an Adjusted Funded Target Attainment Percentage (AFTAP) (as defined in IRC § 436) of at least 80%, such that neither any lump sum distributions or the required amendment under Section V.10 is restricted in any manner due to the impact of an AFTAP being below 80%.  Meriter and/or the Plan may take any legally allowable measure (*e.g.*, the reduction of a Prefunding Balance) to maintain an AFTAP of at least 80%.  Meriter will maintain the Plan's AFTAP at least at 80% until the later of:  (1) the date the amendment under Section V.10 has taken force (and is thus no longer in danger of being restricted due to an AFTAP at below 80%); or (2) after all payments under Section III.8 that

could be restricted by an AFTAP below 80% have been paid.  Payments required by Section III.8, shall, solely for purposes of determining the date upon which all payments have been made for purposes of this section, be considered made, at the latest, 30 days after the Effective Date.  Further, payments made after the Effective Date to Class Members who had not yet been paid any of their benefit as of the Effective Date will not be considered payments required by Section III.8 for purposes of this section.  For example, assuming that all lump sum and single sum payment required by Section III.8 are made during 2015, and the amendment required by Section V.10 is timely made during 2015, then if the Plan's Enrolled Actuary certifies the AFTAP for 2015, both before and after the amendment to be at least 80%, the requirements of this section will be satisfied.

**12.     If Final Approval Is Denied.**  In the event that Final Approval is not obtained, this Settlement shall be void *ab initio*, shall have no force or effect, and shall impose no obligations on the Parties except that the Parties (i) will be prohibited from using this Settlement as evidence in the Lawsuit and (ii) agree to cooperate in asking the Court to set a reasonable schedule for the resumption of the Lawsuit.  The intent of the previous sentence is that, in the event Final Approval is not obtained, the Parties will revert to their positions immediately before the execution of this Settlement and that the Lawsuit will resume without prejudice to any party.

**13.     Not An Admission of Liability or Lack Thereof.**  The Settlement reached in this Agreement is made only to compromise and settle the Lawsuit between Plaintiffs, the Class Members and Defendants without further litigation and should in no way be construed as an admission of liability or wrongdoing of any kind by Defendants nor evidence of Plaintiffs' lack of conviction in the validity or strength of their claims.

None of the Plaintiffs, Class Members, and Class Counsel, and no one in privity with any such person, may argue before any court, agency, or other forum that the Settlement shows or evidences in any way that Defendants violated any law or legal obligation.  Neither this Agreement nor any of the negotiations or proceedings connected with this Settlement and the Lawsuit may be offered or received in evidence in any proceedings between the Parties for any purpose other than for purposes of the proceedings to approve this Agreement, to obtain dismissal of the Lawsuit, or otherwise to enforce this Agreement, including, but not limited to, the "Class Members' Releases" provisions therein.

**14.     Releases and Exclusions.**

    **A.**     As of the Effective Date, each of the Plaintiff-Releasors release, acquit and forever discharge each of the Plaintiffs' Released Parties from the Released Claims.  This release is intended to be construed broadly.

    **B.**     Plaintiff-Releasors, without limitation, are precluded and estopped from bringing in the future any claim or cause of action released in the preceding subparagraph and are permanently enjoined from bringing any such claim or cause of action.

    **C.**     Plaintiff-Releasors acknowledge that in accordance with the definition of "Released Claims," they are releasing both known and unknown and suspected and unsuspected claims and causes of action, and are aware that they may hereafter discover legal or equitable

claims or remedies presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, including those with respect to the allegations and subject matters in the Lawsuit, or that concern or relate in any way to the sufficiency or correctness of distributions from the Plan, the calculation of their benefits from the Plan, any Plan communications whether received or not, and the 2003 Plan amendment.  It is the intention of Plaintiff-Releasors to fully, finally, and forever settle and release all such matters and all claims and causes of action relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in this Lawsuit).

     **D.**     Plaintiff-Releasors expressly acknowledge certain principles of law applicable in some states, such as Section 1542 of the Civil Code of the State of California, which provide that a general release does not extend to claims that a creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.  Plaintiff-Releasors expressly waive all rights related to the Plan or their benefits under the Plan under Section 1542 of the Civil Code of the State of California, which reads as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  Plaintiff-Releasors acknowledge that they may have claims that are covered by the terms of this Agreement that they have not yet discovered.  Plaintiff-Releasors acknowledge that they intend to release any and all such unknown or unsuspected claims arising out of Plaintiff-Releasors' participation in the Plan or benefits under the Plan.  Notwithstanding the choice of law provision in the Agreement, to the extent that California or other law may be applicable and enforceable, Plaintiff-Releasors hereby agree that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable here, are hereby knowingly and voluntarily waived and relinquished by Plaintiff-Releasors, and Plaintiff-Releasors agree and acknowledge that this provision is an essential term of the Agreement and this Release.

     **E.**     Plaintiff-Releasors further agree that no third-party shall bring any Released Claims on behalf of any Plaintiff-Releasors against any Plaintiffs' Released Party.  Should any third-party do so, Plaintiff-Releasors shall take all necessary action to immediately secure the dismissal with prejudice of any such claim and will not seek or accept any monetary relief on any such claim.

     **F.**     Nothing in this Release shall preclude any action to enforce the terms of this Agreement.

     **G.**     This Release may be raised as a complete defense to and will preclude any action or proceeding that is encompassed by this Release.  The Parties intend that the terms of the release provided by this Agreement are to be broadly construed in favor of the Plaintiffs' Released Parties and in favor of the complete resolution of all Released Claims.

     **H.**     The provisions of this Release constitute an essential and material term of the Agreement to be included in the Final Order and Judgment entered by the Court.

**I.**     Defendants, Class Counsel and Plaintiffs represent that they intend that all Class Members be reflected on the Participant List.

**J.**     Class Counsel represents that he does not presently represent any other individual with respect to any claims against Defendants except for the Named Plaintiffs and Class Members and that he has no current intention of representing any individual in any action against Defendants.

**15.     Modifications.**  The Parties may jointly agree by written amendment to modify the provisions of this Agreement as they in concert deem necessary to effectuate the intent of this Agreement.  However, no agreement may be made that reduces or impairs any Individual Net Lump Sum of any Class Member without approval of the Court.

**16.     Binding Effect of the Agreement.**  The terms and provisions of this Agreement shall be binding upon and inure to the benefit of each of the Parties and each of their respective predecessors, successors, heirs, and assigns.

**17.     Multiple Originals/Counterparts.**  This Agreement may be executed by exchange of executed signature pages by facsimile or Portable Document Format ("PDF") as an electronic mail attachment, and any signature transmitted by facsimile or PDF via electronic mail for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which, taken together, shall constitute one and the same instrument.

**18.     Authority of Persons Signing the Agreement.**  The individuals executing this Agreement for the Parties represent and warrant that they do so with full authority to bind each such party to the terms and provisions in this Agreement.

**19.      Entire Agreement.**  This Agreement, including referenced and incorporated attachments, is the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of this Agreement has been made or relied upon except to the extent expressly set forth in this Agreement.

**20.     Heading Titles.**  The headings and section titles in this Agreement are inserted as a matter of convenience only and do not define, limit, or describe the scope of this Agreement or the intent of the provisions.

**21.     No Presumption Against Drafter.**  None of the Parties shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

**22.     Confidentiality.**  The addresses, social security numbers, and other personal data concerning the Class Members shall remain confidential (except as to Class Counsel and their

experts, Defendants, and Defendants' Counsel) and not released outside the Court.  Apart from Class Counsel's privileged communications with Plaintiffs and Class Members, the Parties' oral or written communications with anyone else (*e.g.*, the press or members of the public not seeking legal advice with respect to the Lawsuit or this Agreement) inquiring about the Lawsuit or this Agreement shall be limited to providing factual responses to specific questions about the Lawsuit or this Agreement that do not disclose information protected by the attorney-client privilege or work product exception and that do not disclose any information concerning the discussions, communications, and negotiations concerning this Agreement.  Nothing herein prohibits Class Counsel from describing the allegations made on behalf of the Class or Defendants from describing their defenses; however, in no event, whether to clients, prospective clients, or anyone else, shall any communication concerning the Lawsuit, the conduct of the Lawsuit, or this Agreement disparage, demean, or criticize the Settlement, the Agreement, any of the Parties, or any representative, attorney, or agent of the Parties.

**23.    Waivers.**  The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous to this Agreement.

**24.    Extensions of Time.**  The Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Agreement, subject to approval by the Court.

**25.    Severability.**  In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall in no way affect any other provision if the Parties mutually elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.

**26.    Tax Consequences.**  No opinion concerning the tax consequences of the Settlement to individual Class Members is being given or will be given by Defendants, Defendants' Counsel, or Class Counsel, nor is any representation or warranty in this regard made by virtue of this Agreement.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending upon the particular circumstances of each individual Class Member.

**27.    This Agreement Governs.**  To the extent there is any inconsistency between this Agreement and any Notice, this Agreement shall govern and operate to define the rights and obligations of the Parties.

**28.    Choice of Law.**  The Parties understand and agree that this Agreement, and any disputes arising out of this Agreement, shall be governed by and construed in accordance with the laws of the State of Wisconsin, without reference to choice of law principles.

**29.    Court's Continuing Jurisdiction.**  Without altering the finality of any of the Court's Orders and Judgments, the Court shall retain exclusive jurisdiction over Plaintiffs, Defendants, Class Members, and the Lawsuit with respect to matters arising out of or connected with the Settlement and may issue such orders as necessary to enforce or implement the terms of the Settlement.

**30.**  **Meaning of Terms.**  Capitalized terms used in this Settlement Agreement shall have the meaning ascribed to them in this Agreement, in the Plan, in the Court's class certification orders, or in the Lawsuit, except as otherwise expressly stated herein.

*NAMED PLAINTIFFS:*

By: _____    Dated: _____
    Phyllis J. Johnson

By: _____    Dated: _____
    Madge E. English

By: _____    Dated: _____
    Claudia M. Greco

By: _____    Dated: _____
    Joyce E. Emerson

By: _____    Dated: _____
    Sue L. Hansen

By: _____    Dated: _____
    Donna L. Smith

By: _____    Dated: _____
    Linda L. Muller

By: _____    Dated: _____
    Michele L. McCabe

By: _____    Dated: _____
    Krystal J. Wages

By: _____    Dated: _____
    Ann Marie Stephens

By: _____    Dated: _____
    Jill E. Anthony

By: _____    Dated: _____
    Tammy J. Wetley

*CLASS COUNSEL:*

By: _____    Dated: 9/15/2014
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY  11215

**NAMED PLAINTIFFS:**

By: _Phyllis J. Johnson_          Date 7-08-2014
      Phyllis J. Johnson

By: _____          Date
      Madge E. English

By: _____          Date
      Claudia M. Greco

By: _____          Date
      Joyce E. Emerson

By: _____          Date
      Sue L. Hansen

By: _____          Date
      Donna L. Smith

By: _____          Date
      Linda L. Muller

By: _____          Date
      Michele L. McCabe

By: _____          Date
      Krystal J. Wages

By: _____          Date
      Ann Marie Stephens

*NAMED PLAINTIFFS:*

By: _____     Dated: _____
    Phyllis J. Johnson

By: _Madge E. English_     Dated: Sept. 8, 2014
    Madge E. English

By: _____     Dated: _____
    Claudia M. Greco

By: _____     Dated: _____
    Joyce E. Emerson

By: _____     Dated: _____
    Sue L. Hansen

By: _____     Dated: _____
    Donna L. Smith

By: _____     Dated: _____
    Linda L. Muller

By: _____     Dated: _____
    Michele L. McCabe

By: _____     Dated: _____
    Krystal J. Wages

By: _____     Dated: _____
    Ann Marie Stephens

By: _____     Dated: _____
    Jill E. Anthony

By: _____     Dated: _____
    Tammy J. Wetley

*CLASS COUNSEL:*

By: _____     Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY  11215

**NAMED PLAINTIFFS:**

By: _____        Dated: _____
    Phyllis J. Johnson

By: _____        Dated: _____
    Madge E. English

By: _____        Dated: _9/7/14_____
    Claudia M. Greco

By: _____        Dated: _____
    Joyce E. Emerson

By: _____        Dated: _____
    Sue L. Hansen

By: _____        Dated: _____
    Donna L. Smith

By: _____        Dated: _____
    Linda L. Muller

By: _____        Dated: _____
    Michele L. McCabe

By: _____        Dated: _____
    Krystal J. Wages

By: _____        Dated: _____
    Ann Marie Stephens

By: _____        Dated: _____
    Jill E. Anthony

By: _____        Dated: _____
    Tammy J. Wetley

**CLASS COUNSEL:**

By: _____        Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215

**NAMED PLAINTIFFS:**

By: _____          Dated: _____
    Phyllis J. Johnson

By: _____          Dated: _____
    Madge E. English

By: _____          Dated: _____
    Claudia M. Greco

By: _Jayce C. Emerson_                  Dated: _9-8-14_
    Joyce E. Emerson

By: _____          Dated: _____
    Sue L. Hansen

By: _____          Dated: _____
    Donna L. Smith

By: _____          Dated: _____
    Linda L. Muller

By: _____          Dated: _____
    Michele L. McCabe

By: _____          Dated: _____
    Krystal J. Wages

By: _____          Dated: _____
    Ann Marie Stephens

By: _____          Dated: _____
    Jill E. Anthony

By: _____          Dated: _____
    Tammy J. Wetley

**CLASS COUNSEL:**

By: _____          Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215

*NAMED PLAINTIFFS:*

By: _____  Dated: _____
     Phyllis J. Johnson

By: _____  Dated: _____
     Madge E. English

By: _____  Dated: _____
     Claudia M. Greco

By: _____  Dated: _____
     Joyce E. Emerson

By: _Sue L. Hansen_____  Dated: _9/8/2014_____
     Sue L. Hansen

By: _____  Dated: _____
     Donna L. Smith

By: _____  Dated: _____
     Linda L. Muller

By: _____  Dated: _____
     Michele L. McCabe

By: _____  Dated: _____
     Krystal J. Wages

By: _____  Dated: _____
     Ann Marie Stephens

By: _____  Dated: _____
     Jill E. Anthony

By: _____  Dated: _____
     Tammy J. Wetley

*CLASS COUNSEL:*

By: _____  Dated: _____
     Eli Gottesdiener
     Gottesdiener Law Firm, PLLC
     498 7th Street
     Brooklyn, NY 11215

***NAMED PLAINTIFFS:***

By: _____      Dated: _____
     Phyllis J. Johnson

By: _____      Dated: _____
     Madge E. English

By: _____      Dated: _____
     Claudia M. Greco

By: _____      Dated: _____
     Joyce E. Emerson

By: _____      Dated: _____
     Sue L. Hansen

By: *Donna L. Smith*      Dated: *9-8-14*
     Donna L. Smith   Donna L. Smith

By: _____      Dated: _____
     Linda L. Muller

By: _____      Dated: _____
     Michele L. McCabe

By: _____      Dated: _____
     Krystal J. Wages

By: _____      Dated: _____
     Ann Marie Stephens

By: _____      Dated: _____
     Jill E. Anthony

By: _____      Dated: _____
     Tammy J. Wetley

***CLASS COUNSEL:***

By: _____      Dated: _____
     Eli Gottesdiener
     Gottesdiener Law Firm, PLLC
     498 7th Street
     Brooklyn, NY  11215

***NAMED PLAINTIFFS:***

By: _____     Dated: _____
      Phyllis J. Johnson

By: _____     Dated: _____
      Madge E. English

By: _____     Dated: _____
      Claudia M. Greco

By: _____     Dated: _____
      Joyce E. Emerson

By: _____     Dated: _____
      Sue L. Hansen

By: _____     Dated: _____
      Donna L. Smith

By: *Linda L. Muller*              Dated: 9/8/14
      Linda L. Muller

By: _____     Dated: _____
      Michele L. McCabe

By: _____     Dated: _____
      Krystal J. Wages

By: _____     Dated: _____
      Ann Marie Stephens

By: _____     Dated: _____
      Jill E. Anthony

By: _____     Dated: _____
      Tammy J. Wetley

***CLASS COUNSEL:***

By: _____     Dated: _____
      Eli Gottesdiener
      Gottesdiener Law Firm, PLLC
      498 7th Street
      Brooklyn, NY 11215

**_NAMED PLAINTIFFS:_**

By: _____     Dated: _____
    Phyllis J. Johnson

By: _____     Dated: _____
    Madge E. English

By: _____     Dated: _____
    Claudia M. Greco

By: _____     Dated: _____
    Joyce E. Emerson

By: _____     Dated: _____
    Sue L. Hansen

By: _____     Dated: _____
    Donna L. Smith

By: _____     Dated: _____
    Linda L. Muller

By: _Michele McCabe_     Dated: _Sept 8/ 2014_
    Michele L. McCabe

By: _____     Dated: _____
    Krystal J. Wages

By: _____     Dated: _____
    Ann Marie Stephens

By: _____     Dated: _____
    Jill E. Anthony

By: _____     Dated: _____
    Tammy J. Wetley

**_CLASS COUNSEL:_**

By: _____     Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215

**NAMED PLAINTIFFS:**

By: _____     Dated: _____
     Phyllis J. Johnson

By: _____     Dated: _____
     Madge E. English

By: _____     Dated: _____
     Claudia M. Greco

By: _____     Dated: _____
     Joyce E. Emerson

By: _____     Dated: _____
     Sue L. Hansen

By: _____     Dated: _____
     Donna L. Smith

By: _____     Dated: _____
     Linda L. Muller

By: _____     Dated: _____
     Michele L. McCabe

By: _Krystal J. Wages (signature)_     Dated: _Sept. 8, 2014_
     Krystal J. Wages

By: _____     Dated: _____
     Ann Marie Stephens

By: _____     Dated: _____
     Jill E. Anthony

By: _____     Dated: _____
     Tammy J. Wetley

**CLASS COUNSEL:**

By: _____     Dated: _____
     Eli Gottesdiener
     Gottesdiener Law Firm, PLLC
     498 7th Street
     Brooklyn, NY 11215

**NAMED PLAINTIFFS:**

By: _____   Dated: _____
     Phyllis J. Johnson

By: _____   Dated: _____
     Madge E. English

By: _____   Dated: _____
     Claudia M. Greco

By: _____   Dated: _____
     Joyce E. Emerson

By: _____   Dated: _____
     Sue L. Hansen

By: _____   Dated: _____
     Donna L. Smith

By: _____   Dated: _____
     Linda L. Muller

By: _____   Dated: _____
     Michele L. McCabe

By: _____   Dated: _____
     Krystal L. Wages

By: _____   Dated: 9-8-2014
     Ann Marie Stephens

By: _____   Dated: _____
     Jill E. Anthony

By: _____   Dated: _____
     Tammy J. Wetley

**CLASS COUNSEL:**

By: _____   Dated: _____
     Eli Gottesdiener
     Gottesdiener Law Firm, PLLC
     498 7th Street
     Brooklyn, NY 11215

*NAMED PLAINTIFFS:*

By: _____          Dated: _____
    Phyllis J. Johnson

By: _____          Dated: _____
    Madge E. English

By: _____          Dated: _____
    Claudia M. Greco

By: _____          Dated: _____
    Joyce E. Emerson

By: _____          Dated: _____
    Sue L. Hansen

By: _____          Dated: _____
    Donna L. Smith

By: _____          Dated: _____
    Linda L. Muller

By: _____          Dated: _____
    Michele L. McCabe

By: _____          Dated: _____
    Krystal J. Wages

By: _____          Dated: _____
    Ann Marie Stephens

By: _____          Dated: 9-8-14
    Jill E. Anthony

By: _____          Dated: _____
    Tammy J. Wetley

*CLASS COUNSEL:*

By: _____          Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215

**NAMED PLAINTIFFS:**

By: _____          Dated: _____
Phyllis J. Johnson

By: _____          Dated: _____
Madge E. English

By: _____          Dated: _____
Claudia M. Greco

By: _____          Dated: _____
Joyce E. Emerson

By: _____          Dated: _____
Sue L. Hansen

By: _____          Dated: _____
Donna L. Smith

By: _____          Dated: _____
Linda L. Muller

By: _____          Dated: _____
Michele L. McCabe

By: _____          Dated: _____
Krystal J. Wages

By: _____          Dated: _____
Ann Marie Stephens

By: _____          Dated: _____
Jill E. Anthony

By: *Tammy J Wetley*                    Dated: 9-8-14
Tammy J. Wetley

**CLASS COUNSEL:**

By: _____          Dated: _____
Eli Gottesdiener
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY  11215

**FOR DEFENDANTS:**

By: _____   Dated: 9/15/14

Name: James C. Arnett

Title: VP of Human Resources

**APPROVED AS TO FORM FOR DEFENDANTS:**

By: _____   Dated: _____

Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

32

**FOR DEFENDANTS:**

By: _____     Dated: _____

      Name:_____

      Title:_____

**APPROVED AS TO FORM FOR DEFENDANTS:**

By: _____     Dated: 9/15/14 _____

Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103