Exhibit 2 to Class Settlement Agreement

*Johnson, et al. v. Meriter Health Services Employee Retirement Plan, et al.*,
3:10-cv-00426-wmc (W.D. Wis.)

# Proposed Mailed Notice

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**PHYLLIS JOHNSON,** *et al.*,

**On behalf of themselves and on behalf of all others similar situated,**  Case No. 3:10-cv-00426-wmc

**Plaintiffs,**

v.

**MERITER HEALTH SERVICES
EMPLOYEE RETIREMENT PLAN, and
MERITER HEALTH SERVICES, INC.,**

**Defendants.**

## NOTICE OF CLASS ACTION SETTLEMENT AND FAIRNESS HEARING

*The United States District Court of the Western District of Wisconsin authorized this Notice to be sent to you.*

**To:**   **[Name]
[Address1]
[Address2]**

**Your Settlement ID Number: [ID]**

**Your Estimated Individual Net Settlement Amount:  $ _____** (See Item 7 below[1])

You were previously informed in a May 2013 mailed notice that you are a class member in a class action lawsuit brought under the federal pension law known as ERISA by named plaintiff Phyllis Johnson and others ("Plaintiffs") against the **Meriter Health Services Employee Retirement Plan** (the "Plan" or the "Meriter Plan") and **Meriter Health Services, Inc.** ("Meriter") (collectively, "Defendants").

This notice is being provided to you to let you know that Plaintiffs and Defendants have entered into a settlement agreement that the Court has preliminarily approved which, if finally approved, will provide you a monetary award. This notice explains the lawsuit, the proposed settlement, your rights (including your right to object to the settlement, the recommended plan of allocation,

---

[1] As explained more fully in Item 7, this amount is an estimate only, based on currently available data, of the amount you would receive under the proposed plan of allocation. That amount is not a guaranteed amount and is provided solely for informational purposes.

and/or the request for attorney's fees and expenses and request for special incentive payments for the named plaintiffs), and your obligations if the Court grants final approval of the proposed settlement.

### 1.  What is this lawsuit about?

The lawsuit challenges the way Meriter calculated and communicated pension benefits for employees who participated in the Plan from October 1987 to the present.  Plaintiffs allege that Defendants violated the federal pension law ERISA and/or the lawful terms of the Meriter Plan based on how they calculated benefits and communicated with participants about the Plan benefits.  Meriter strongly denies the Plaintiffs' allegations and asserts several defenses.  More details about the claims in this case are provided in Item 6 below.

### 2.  Why am I receiving this notice?

You are receiving this notice because you accrued a benefit under the Plan at some time between October 1, 1987 and July 22, 2014 (the "relevant time") and are a member of one of the 11 separate classes certified by the Court.  You may have already received one or more payments from the Plan (either as a lump sum or annuity payments), or you may have not yet drawn a benefit from the Plan.  Alternatively, you may be receiving this notice if you were designated by a Plan participant as a beneficiary or are an alternate payee pursuant to a Qualified Domestic Relations Order.

As a class member, you have a right to know about the proposed settlement, to know about your rights and obligations under it (if it is finally approved), and to know about your right to object to it or related aspects of it before it is submitted to the Court for final approval.  You have the right to object to the proposed settlement if you do not agree with it so long as you inform the Court and the parties of your objection in writing as described in Item 8.B.  You also have the right to do nothing if you do not wish to object to the settlement.

What follows below is only a summary of the terms of the settlement agreement.  See Item 12 to learn how to obtain a copy of the entire settlement agreement and other related filings with the Court.  If you wish to have more information or to have your questions about the settlement answered, you may contact Class Counsel, whose contact information appears in Item 8.

### 3.  What is the proposed settlement?

The parties have reached an agreement under which all of Plaintiffs' claims will be dismissed and comprehensive releases of liability provided, in exchange for a total settlement amount of $82 million inclusive of attorneys' fees and costs.  In order to be binding, the settlement agreement must be approved by the Court as fair, reasonable, adequate, and in the best interests of class members.

The settlement calls for the distribution of the total settlement amount—minus Court-approved attorneys' fees and expenses, incentive award payments to the named plaintiffs, and settlement administration costs—by means of a "plan of allocation" designed to allocate the proceeds to

class members as fairly as possible.  The plan of allocation is also subject to Court approval and may be accepted as proposed or modified by the Court without otherwise affecting the validity of the settlement agreement.

Under the plan of allocation, no class member would receive a benefit of less than $250.  Class members previously paid a lump sum would receive an additional lump sum.  Class members who are currently receiving annuity payments would have those future payments increased, as well as receive a single lump payment attributable to prior annuity payments.  Class members who have not yet received any benefit from the Plan would be credited with an additional benefit added to their Plan account balances that would grow at the Plan's normal indexing rate until withdrawn as either a lump sum or an annuity.

Additional details of the plan of allocation are provided below in Item 7, but in summary, the plan of allocation provides that the total settlement amount (after subtracting the court-approved attorneys' fees and expenses and plaintiff incentive awards) will be distributed proportionally to class members based on each class member's relative value of recovery had the litigation continued.  This relative value is calculated using the average of three potential outcomes of the litigation, weighted to reflect the likelihood of success of each of those potential outcomes and further adjusted for some class members for the possibility that they would be excluded from receiving any award from the litigation.

As described more fully in the Settlement Agreement, the settlement will also mean class members will release all past, present, and future claims or causes of action, known or unknown, based upon or related to any facts and allegations that were or could have been raised in this Lawsuit.  The only claims not released are an individual class member's claim based on factual errors regarding that class member's salary, age, years of service, or other individualized circumstance, provided that the individual gives "Effective Notice."  Effective Notice requires providing individual written notice to Class Counsel and Defendants' Counsel of such claim before the deadline the Court establishes for objecting to the Settlement, which is described in Section 8.B below.

**4.     Who represents me in this lawsuit?**

Phyllis J. Johnson, Madge E. English, Claudia M. Greco, Joyce E. Emerson, Sue L. Hansen, Donna L. Smith, Linda L. Muller, Michele L. McCabe, Krystal J. Wages, Ann Marie Stephens, Jill E. Anthony, and Tammy J. Wetley (f/k/a Boyd) brought this case on your behalf.  Their attorney, Eli Gottesdiener of the Gottesdiener Law Firm, PLLC has been appointed by the Court as Class Counsel.  If you want to be represented by your own lawyer at this time, you are free to obtain separate counsel at your own expense.

**5.     How will Class Counsel be paid?**

Plaintiffs and Class Counsel have litigated this case on your behalf against Defendants since 2010 on a contingency basis.  As part of the settlement, Plaintiffs' counsel will seek an award of attorney's fees from the Total Settlement Amount of no more than 29% of that amount ($23.78 million), in addition to reimbursement for out-of-pocket litigation expenses and costs incurred in

settlement administration which are currently estimated to total approximately $1.8 million. Class Counsel will also request that the Court award the 12 named plaintiffs incentive awards of $5,000 each for their participation in the lawsuit, which are in addition to their Individual Net Settlements and also will be paid from the Total Settlement Amount.

**6. What is the history of this lawsuit?**

Plaintiffs first filed the lawsuit in 2010. Plaintiffs alleged seven different claims, which Plaintiffs contend entitle them to Plan benefits in excess of what Defendants had originally calculated for them (or would otherwise calculate for them, for participants not yet paid). Those seven claims can be summarized as follows:

**The Basic 417(e) Claim.** Whether the Plan was required to calculate the amount of an immediate lump sum benefit as not less than the present value of the age 65 benefit, determined using an interest rate and mortality rates required by ERISA and Internal Revenue Code § 417(e) (known as "the 417(e) rate," producing the 417(e) minimum lump sum benefit).

**The Future Indexing Claim.** Whether Defendants were required to calculate participants' age 65 benefits by including annual indexing of the benefit for all years through age 65, and whether that future indexing should have reflected the minimum 4% rate or a higher rate based on the actual indexing provided by the Plan.

**The Year-of-Distribution Claim.** Whether, in the year a benefit was paid, Defendants should have indexed the benefit at a prorated portion of the actual indexing rate that applied for that year (to the extent it was above 4%), rather than at a prorated 4% rate.

**Early Retirement Benefit Claim.** Whether Defendants should have calculated early retirement benefits by including anticipated future indexing in determining those benefits.

**No Valid Amendment Claim.** Whether Meriter properly amended the Plan document to correspond with changes in Plan operation that began on January 1, 2003 (which, if not, could result in invalidating the changes and increased benefits under the prior, more valuable formula).

**The 204(h) Claim.** Whether Meriter properly informed participants about the impact on their future benefits of the Plan changes Defendants implemented on January 1, 2003, as required by ERISA § 204(h) (which would result in participants being entitled to the greater of benefits determined with regard or without regard to the Plan change).

**Anti-Cutback Claim.** Whether when paying benefits after January 1, 2003, Defendants failed to protect Plaintiffs' previously-accrued benefits earned as of December 31, 2002.

Plaintiffs also allege that Meriter's disclosures or communications about the Plan (such as annual statements to participants and the Summary Plan Description) were false and misleading, both in violation of ERISA's statutory and regulatory requirements and in breach of ERISA's fiduciary duty provisions.

Defendants strongly deny these claims and assert numerous defenses. Among others,

4

Defendants argue that each of Plaintiffs' claims are barred entirely by the statute of limitations because Plaintiffs waited too long to bring their claims to Court. Defendants also maintain that Plan benefits always were paid as Meriter intended and consistent with the applicable Plan document, that the 2003 amendment to the Plan was valid and effective, and that Meriter accurately communicated the benefits owed under the Plan. Defendants also strongly deny that they breached the fiduciary duties owed to Plan participants under ERISA.

The case was actively litigated in the Court, as well as in the court of appeals, from 2010 through 2014. On July 3, 2014, the Court granted summary judgment in Defendants' favor on most of Plaintiffs' claims, finding they were barred by the applicable statute of limitations. The Court amended its order on July 10, 2014, leaving three issues for trial, which was scheduled to begin July 28, 2014. However, shortly before trial, with the assistance by Clerk of Court/Magistrate Judge Peter Oppeneer, the parties reached an agreement in principle for settling the case.

Both sides continue to believe in the merits of their respective positions. However, they want to avoid the risk and expense of continued litigation and get the benefits contemplated by this settlement. Plaintiffs' agreement to the settlement does not diminish their belief in the validity of their claims, nor does Defendants' agreement to this settlement constitute an admission of any liability or wrongdoing whatsoever. After extensive study, Plaintiffs and Class Counsel concluded that settlement on the terms set forth in the settlement agreement is fair, reasonable, adequate, and in the best interests of class members.

**7.     How does the plan of allocation work?**

There are approximately 6,000 members divided among the eleven sub-classes. If approved by the Court, the plan of allocation would distribute settlement payments from the $82 million (after reducing for attorneys' fees, expenses, costs, and plaintiff incentive awards) based on the applicability of the seven claims above to each class member, reflecting each claim's estimated likelihood of success had the litigation continued, but with each class member receiving no less than $250.

The plan of allocation uses a two-step process to divide the net settlement proceeds among class members:

In Step 1, your benefit is recalculated pursuant to the terms of the settlement. Your recalculated benefit is adjusted to account for litigation risks and the benefit you have already been paid (if applicable), with the resulting difference brought forward from the date you received your benefit to December 31, 2014 using an interest rate of 5% per year. If you have not yet drawn a benefit, your benefit is recalculated as of December 31, 2014. The resulting amount is your "Individual Gross Settlement Benefit." The Individual Gross Settlement Benefit represents your full share of a favorable outcome of the case based on assumptions selected by Class Counsel in consultation with Plaintiffs' actuarial expert.

In Step 2, your "Individual Gross Settlement Benefit" is multiplied by a "Net Settlement Percentage." This calculation allocates the settlement amount in proportion to each individual share of the total anticipated favorable outcome determined in Step 1. This also ensures that

5

each class member contributes the same proportional share of the court-approved attorney fees, expenses, costs, and named plaintiff incentive payments in proportion to the settlement amount that they would receive (with the exception that individuals receiving the $250 minimum are not charged for fees or expenses).  It also has the effect of lowering the anticipated favorable outcome from Step 1 to account for the risk that the outcome of the case, if litigated, would not be favorable (including the possibility that it could lead to no payment whatsoever).  The result of these two reductions is your "Individual Net Settlement Benefit," which is the amount you will receive in the settlement (and which cannot be less than $250).

Note that the amount shown as "Your Estimated Individual Net Settlement Amount" at the beginning of this notice is an estimate only.  It is Plaintiffs' actuarial expert's calculation based on currently available data of the amount you would receive under the proposed plan of allocation.  That amount is not a guaranteed amount and is provided solely for information purposes in order to give you a sense of what it appears your net settlement benefit would be if the settlement and proposed plan of allocation are approved.  Thus, that amount may change to reflect, without limitation, (a) correction of any errors; (b) discovery of additional data (including, for example, data corrections brought to Class Counsel's attention by individual class members); (c) the amount actually approved by the Court for plaintiffs' incentive awards, settlement administration costs, and Class Counsel's attorneys' fees, costs and expenses; and (d) any changes in information available or discovered between the time of the estimate and the time of final settlement payment calculations.  That amount may increase if the Court awards Class Counsel and/or the Plaintiffs less than the amounts they will be requesting in attorney's fees and expenses and incentive awards.  The effect of any such lesser award will vary depending on your circumstances and may or may not result in an increase in your net settlement benefit.  If you would like more information about this, you may contact Class Counsel directly.

When viewing your estimated Individual Net Settlement Amount, it is important to keep in mind that many class members have only minor damages under even the most optimistic view of Plaintiffs' case (for example, if they only participated in the Plan for a short time).  Other class members would have only minor damages if the litigation were to continue because they face a significant likelihood that they would be held barred by the applicable statute of limitations because they were paid too long ago or the events giving rise to their claim occurred too long ago.  Based on the plan of allocation, approximately one-third of class members are estimated to receive the $250 minimum settlement amount.

The plan of allocation is described in more detail in Section II of the parties' Settlement Agreement, available on the lawsuit website, www.meriterpensionlawsuit.com.  Any class member interested in details of how the plan of allocation personally impacts them also may contact Class Counsel directly.

**8.     What do I do now?**

     **A.     Can I be excluded from the settlement?**

No.  If the Court approves the settlement, you will be bound by it.  By the same token, you do not need to do anything now to receive your portion of an approved settlement.

6

### B. How do I tell the Court if I don't like the proposed settlement?

You can tell the Court that you object to the settlement if you do not agree with it, including the method to be used to determine the amount that will be allocated to you under the settlement (described above in Items 3 and 7) or the amounts requested for Class Counsel's attorneys' fees, costs and expenses, settlement administration costs, and plaintiffs' incentive awards (as described above in Item 5).

To object, you must send the Court no later than **December 8, 2014** a notice of your objection along with a written statement that indicates all bases for your objection, documentation in support of your objection, legal authority (if any) supporting your objection, a notice of intention to be heard (if you intend to appear at the hearing described below in Item 10), and, if you intend to appear, a list of witnesses you may call for live testimony. If you choose to object, please include your name, address, telephone number, and signature. Your objection must be sent to the following address:

> United States District Court for the Western District of Wisconsin
> Attn: Johnson v. Meriter Class Settlement – No. 3:10-cv-00426-wmc
> 120 North Henry Street
> Madison, Wisconsin 53703

Should you submit a written objection to the Court, it must also be mailed no later than December 8, 2014 to the attorneys listed below.

| **CLASS COUNSEL** | **DEFENSE COUNSEL** |
|---|---|
| Eli Gottesdiener | Charles C. Jackson |
| Gottesdiener Law Firm, PLLC | Morgan, Lewis & Bockius LLP |
| 498 7th Street | 77 West Wacker Drive, Fifth Floor |
| Brooklyn, New York 11215 | Chicago, Illinois 60601 |
| Phone: (718) 788-1500 | Phone: (312) 324-1000 |
| Fax: (718) 788-1650 | Fax: (312) 324-1001 |
| eli@gottesdienerlaw.com | charles.jackson@morganlewis.com |

### C. What happens if I do nothing?

If you do nothing and the settlement is approved by the Court, you will receive your net settlement benefit if and when the settlement becomes truly final after the Court holds the hearing described below in Item 10.

### 9. How will I receive my share of the settlement?

**A. If you have not yet received a benefit distribution** (lump sum or annuity) from the Plan, your settlement benefit will be credited to your account and indexed until you receive it

in accordance with the applicable Plan indexing rate under the current Plan terms.  The normal Plan provisions and procedures will apply when you ultimately receive benefits under the Plan.

     **B.**     **If you have already received a benefit from the Plan**, your prior distribution election (*e.g.,* lump sum, annuity) will govern the distribution of funds to you.

          **1.**     **If you previously elected to receive your benefit in the form of an annuity**, your benefit will be paid in two ways:  (i) a one-time payment to reflect alleged underpayments of the annuity benefits paid to you to date (that is, additional payments Plaintiffs contend you should have received, including interest at 5%); and (ii) increased future annuity payments in the same form as the annuity that you are currently receiving.  No election will be provided to rollover the one-time payment because it represents annuity payments, which cannot be rolled over.

          **2.**     **If you previously received your benefit in the form of a lump sum**, you will receive an additional lump sum, which you can elect to receive in one of the two available distribution options.  To make a timely election, you must fill out the form at the end of the notice and return it to the Plan postmarked by December 29, 2014.  If you do not make a timely election, or if you return an incomplete election form, the Plan will deem you to have elected a direct payment and your settlement benefit will be sent directly to you.

          **Rollover:**  You can elect a direct rollover of up to 100% of your settlement benefit to an individual retirement account ("IRA") or to another qualified plan that accepts rollovers that you designate in the form at the end of this notice.  If you select this option, a check will be made payable to the qualified plan or IRA that you identify and sent directly to you.  You must then forward the check to the appropriate plan administrator or financial institution holding the IRA.

          **Direct Payment:**  You can also elect direct payment of up to 100% of your settlement benefit.  If you elect this distribution option, the funds, minus the Plan's withholding for income taxes, will be sent directly to you.  The Plan would automatically withhold applicable federal, state, and local income taxes (including 20% for federal taxes).

**10.**     **When and where will the Court approve the settlement?**

The Court will decide whether to give final approval to the settlement at a what is known as a "fairness hearing" to be held at _____ _.m. on Monday, January 5, 2015, at the United States District Court for the Western District of Wisconsin, 120 North Henry Street, Madison, Wisconsin 53703, in courtroom 250.

At the fairness hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections from class members, the judge will consider them at that time.  You are welcome to attend the hearing (at your own expense) and may speak if you file a written objection as described in Item 8.B above.  At or after the hearing, the Court will decide whether to approve the settlement and decide the motion for plaintiffs' incentive awards, settlement administration costs, and Class Counsel's attorneys' fees, costs and expenses.  If you do not

8

object, you are not required to attend the hearing, but you are welcome to attend.

**11. When will I receive my share of the settlement?**

The timing of the distribution of the net settlement fund to class members will depend on when, if approved, the settlement becomes truly final under the law. If the settlement is finally approved by the Court and there are no appeals, distributions should be issued within 30 days after the Court's approval of the settlement.

**12. How do I get more information?**

More detailed information about the lawsuit and proposed settlement may be obtained from www.meriterpensionlawsuit.com or by requesting information directly from Class Counsel (whose contact information is listed in Item 8.B above). Case filings, including the key pleadings and filings of the parties, the orders and rulings entered by the Court, and the settlement agreement may be obtained from either of those two sources or from the Office of the Clerk, United States District Court for the Western District of Wisconsin, 120 North Henry Street, Room 320, Madison, Wisconsin 53703, (608) 264-5156, during regular business hours (see www.wiwd.uscourts.gov) or by registering and paying a modest fee to the PACER service, http://pacer.psc.uscourts.gov/, which permits online inspection of the papers filed in the case.

**ALL INQUIRIES CONCERNING THIS NOTICE SHALL BE DIRECTED TO CLASS COUNSEL, NOT THE COURT.**

Dated: _____, 2014.      Approved by the Honorable William M. Conley
                                   of the United States District Court
                                   for the Western District of Wisconsin

9

If any of the preprinted information on the left is incorrect, please make changes here:

Settlement ID # *XXXX*  
*Firstname Lastname*  
*Address1*  
*Address2*  
*City, State Zip*

_____  
_____  
_____  
_____  
_____

## ELECTION OF ROLLOVER / DIRECT PAYMENT

**Please place a check below next to either the rollover or direct payment of your benefit. If you do not return this form to the address listed below by December 29, 2014, you will automatically receive a direct payment (Option 2) of your Individual Net Settlement Benefit, net of withheld taxes, at the address above. Please complete this form even if you wish to receive a direct payment so that there is no question regarding your election (or address).**

☐ **OPTION 1 – ROLLOVER**

I elect a direct rollover of up to ____% (maximum of 100%) of my tax-qualified Individual Net Settlement Benefit, paid to the following account (either an IRA or another qualified plan):

| | | |
|---|---|---|
| Name of Your Account: | _____ | (ex. John Doe IRA) |
| Account Number: | _____ | (ex. 123456789) |
| Institution Holding Your Account: | _____ | (ex. Fidelity Investments FBO) |
| Address of Institution: | _____ | |
| Phone Number of Institution: | _____ | |

(If you elect to rollover less than 100% of your tax-qualified Individual Net Settlement Benefit, the balance will be paid directly to you as a distribution, less withheld taxes as required by law. This payment will be sent to your address listed above.)

☐ **OPTION 2 – DIRECT PAYMENT**

I elect a direct payment of 100% of my tax-qualified Individual Net Settlement Benefit, which should be sent by check to the address listed above. I understand that the Individual Net Settlement Benefit, less tax withholding, will be paid directly to me.

To make a timely election, you **must** sign below and return a **completed** copy of this page postmarked no later than 5 business days before the Fairness Hearing (*i.e.,* **postmarked no later than December 29, 2014**) to the address below. Incomplete forms will be automatically processed as direct payments.

Meriter Health Services  
Human Resources – Retirement Plans  
202 South Park Street  
Madison, WI 53517

_____          _____  
Contact Phone Number                                         Signature

_____          _____  
Date of Birth                                                           Print Name

_____          _____  
Social Security Number                                          Date